EXHIBIT B



# ANNUITY CONTRACT

## Barbara Jean Brown

9   60

## New York Life Insurance and Annuity Corporation

A Stock Company Incorporated in Delaware.

Home Office – Newark, Delaware

Executive Office – 51 Madison Avenue
New York, NY 10010

**The Company** New York Life Insurance and Annuity Corporation will pay the benefits of this policy in accordance with its provisions. The following pages are also a part of this policy.

**Annuity Benefit** We will make annuity payments to you or the payee(s) designated by you, as stated in the Annuity Benefit Section.

**Right To Return Policy** Please examine your policy. Within 10 days (or longer if required by state law), you may ~~return it to the Company or to the agent through whom it was purchased, with a written request for a~~ cancellation. Upon receipt of this request, we will promptly cancel this policy and refund the Premium Payment.

THIS PROVISION
DOES NOT APPLY

The Issue Date is shown on the Policy Data Page.

Chairman and CEO

Secretary

**INDIVIDUAL RETIREMENT ANNUITY - SEE ENDORSEMENT ATTACHED**

**Lifetime Income Annuity**
**Immediate Life Annuity With Guaranteed Period**
Single Premium Payable As Shown On The Policy Data Page

Policy Is Not Eligible For Dividends

203-173

**READ THIS POLICY CAREFULLY**

**Note: This is a legal contract between the Owner and the Company**

New York Life Insurance and Annuity Corporation

Home Office – Newark Delaware

Executive Office - 51 Madison Avenue
New York, NY 10010

POLICY DATA PAGE

**Annuitant(s):**     Barbara Jean Brown                                    **Age:**     9    FEMALE

**Policy Number:**     ███ 9  60
**Policy Date:**        SEPTEMBER  21, 2010
**Owner(s):**           Barbara Jean Brown

**Payee(s):**           THE ANNUITANT
**Beneficiary:**        Primary Beneficiary- Barbara Brown  Family Trust   ~-10-10, Trust

**Plan:**             LIFE ANNUITY WITH  1  YEARS,  0 MONTHS GUARANTEED

**Premium:**          $  1,  95.69

**Annuity Commencement Date:**     October 1, 2010

**Annuity Benefit:**    $266.09 monthly, payable while the Annuitant is living or for 1  years,  0 months,
whichever is later.

Upon the death of the Annuitant, if any guaranteed Annuity Income Payments are paid in one sum, the
present value of those payments will be calculated based on the following schedule of interest rates:

| | |
|---|---|
| Policy Years 1 - 5 | 1.80% |
| Policy Years 6 - 10 | 1.80% |
| Policy Years 11 - 20 | .05% |

**30% WITHDRAWAL RIDER**
*(See next page for rider information)*

**Issue Date:**     SEPTEMBER 22, 2010

**203-173 (01/2007)**                                                                  **Page 2**

POLICY DATA PAGE
(Page 2 Continued)

**30% WITHDRAWAL RIDER**

The following information is used to calculate the Withdrawal Benefit available under this rider:

Available Withdrawal Effective Dates:   October 1, 2015, October 1, 2020 or October 1, 2025

Life Expectancy on the Policy Date:

| Annuitant(s) | Years | Months |
|---|---|---|
| Barbara Jean Brown | 11 | 2 |

Interest rates for discounting payments:
These rates will be adjusted by the Interest Rate Change Adjustment (as defined in the rider) prior to discounting.

| | |
|---|---|
| Payments in Policy Years 1 through 5 | 5.25% |
| Payments in Policy Years 6 through 10 | 5.25% |
| Payments in Policy Years 11 through 20 | 5.25% |

**Issue Date:**        SEPTEMBER 22, 2010

**203-173 (01/2007)**                                                                                  **Page 2**

**WE & YOU**

In this policy, the words "we", "our", "us", "Company" and "NYLIAC" refer to New York Life Insurance and Annuity Corporation, and the words "you" and "your" refer to the Owner of this policy.

When you write to us, please include the policy number, your full name and your current address.

# CONTENTS

**DEFINITIONS**.................................................................................................................4

**SECTION ONE -  ANNUITY BENEFIT**.................................................................5
1.1 When Will Annuity Income Payments Begin?...............................................5

**SECTION TWO -  POLICY OWNERSHIP**............................................................5
2.1 What Are The Rights Of Ownership Of This Policy?....................................5
2.2 Can You Name a Successor Owner?............................................................5
2.3 Can You Change The Ownership of This Policy?.........................................5

**SECTION THREE -  BENEFICIARY**.....................................................................5
3.1 May More Than One Beneficiary Be Named?..............................................5
3.2 What Happens If The Beneficiary(s) Dies?..................................................5
3.3 May You Change A Beneficiary?..................................................................6
3.4 May The Beneficiary Request A Change of Payment?................................6

**SECTION FOUR- ANNUITY INCOME PAYMENT ADVANCE**.............................6
4.1 Can Annuity Income Payments Be Advanced?...........................................6
4.2 How Can I Exercise This Option?................................................................6

**SECTION FIVE -  GENERAL PROVISIONS**.........................................................6
5.1 What Constitutes the Entire Contract?........................................................6
5.2 How Important Is The Information You Provide For This Policy?..................6
5.3 Will We Be Able To Contest This Policy?....................................................6
5.4 May We Require Proof That The Annuitant(s) Is Living?.............................6
5.5 How Is An Annuitant's Age Calculated For The Purpose Of This Policy?....6
5.6 What Happens If In This Policy A Persons Age Or Sex Is Stated Incorrectly?....................6
5.7 May You Assign Or Transfer Your Policy?...................................................7
5.8 How Do You Assign This Policy?.................................................................7
5.9 Are The Payments Made Under The Terms Of This Policy Protected Against Creditors?...................7
5.10 Are Loans Permitted From This Policy?......................................................7
5.11 Is This Policy Subject To Any Law?............................................................7
5.12 May The Guaranteed Annuity Income Payments Be Taken As A Single Sum After The Death Of the Annuitant or Annuitants?............................................................................7
5.13 Are Any Dividends Payable Under This Policy?.........................................7

# DEFINITIONS

These terms are capitalized when used throughout this policy.

**ANNUITANT(S):** The person(s) named on the Policy Data Page and whose life determines the Annuity Income Payments.

**ANNUITY COMMENCEMENT DATE:** The date on which the first Annuity Income Payment under this policy is to be made.

**ANNUITY INCOME PAYMENTS:** Periodic payments NYLIAC makes to the named Payee after the Annuity Commencement Date.

**ANNUITY PAYMENT DATE:** The date upon which NYLIAC has agreed to make each Annuity Income Payment.

**BENEFICIARY:** The person or an entity having the right to receive the death benefit set forth in the policy.

**BUSINESS DAY:** Any day on which New York Life Insurance and Annuity Corporation is open for business.

**ISSUE DATE:** The date this policy is produced.

**NYLIAC ("Company, We, Us, Our"):** New York Life Insurance and Annuity Corporation.

**OWNER ("You, Your"):** The person(s) or entity designated as the Owner of this policy displayed on the Policy Data Page, or as subsequently changed.

**PAYEE:** A recipient of Payments under this policy, generally the Owner.

**POLICY ANNIVERSARY:** An anniversary of the Policy Date displayed on the Policy Data Page.

**POLICY DATA PAGE:** Page (2) of this policy, containing the policy specifications.

**POLICY DATE:** The date from which Policy Years and Policy Anniversaries are measured. It is shown on the Policy Data Page.

**POLICY YEAR:** A year starting on the Policy Date. Subsequent Policy Years begin on each Policy Anniversary unless otherwise indicated.

**PREMIUM PAYMENT:** An amount paid to the Company as consideration for the benefits provided by this policy.

**QUALIFIED PLAN:** An Employee retirement plan under the Internal Revenue Code, including Sections 219, 401(a), 403(b) or 408 that qualifies for special federal income tax treatment.

# SECTION ONE -  ANNUITY BENEFIT

**1.1 When Will Annuity Income Payments Begin?**

We will make Annuity Income Payments to you or to the Payee(s) designated by you, if the Premium for this policy has been paid. Payments will be made in the amount(s) and for the period(s) of time shown on the Policy Data Page.

Annuity Income Payments will begin as shown on the Policy Data Page and will continue until the last Payment due before the death of the Annuitant. If the Annuitant dies before all Payments for the guaranteed number of years shown on the Policy Data Page have been paid, we will continue to make Annuity Income Payments until all Payments have been made for

the guaranteed number of years. Any Annuity Income Payments made after the death of the Annuitant will be made to the Beneficiary.

If this Annuity is based on the life of two Annuitants, Payments will continue as long as either Annuitant is living. Payments continuing while the surviving Annuitant is alive may be reduced as shown on the Policy Data Page.  If both Annuitants should die before all Annuity Income Payments for the guaranteed number of years have been made, the remaining Payments will be made to the Beneficiary.

Please read this policy for full details.

# SECTION TWO -  POLICY OWNERSHIP

**2.1 What Are The Rights Of Ownership Of This Policy?**

As the Owner, you have all rights of ownership in this policy while the Annuitant is living. These rights include the right to receive the Payments or to name one or more Payees to receive these payments. You cannot lose these rights. However, all rights of ownership end at your death. To exercise these rights, you do not need the consent of any Successor Owner.

**2.2 Can You Name a Successor Owner?**

Yes, a Successor Owner can be named in the application, or in a signed notice that is satisfactory to us. The Successor Owner will become the new Owner, if you die while the Annuitant is living. If no Successor Owner survives you and you die while the Annuitant is living, your estate becomes the new Owner.

**2.3 Can You Change The Ownership of This Policy?**

You may change the Owner of this policy, from yourself to a new Owner, in a notice that you sign and submit to us which gives us the facts that we need. When we record a change, it will take effect as of the date you signed the notice, subject to any action we took before recording the change. When this change takes effect, all rights of ownership in this policy will pass to the new Owner. Changing the Owner does not change the Annuitant. Changing the Owner or naming a new successor Owner cancels any prior choice of successor Owner.

# SECTION THREE -  BENEFICIARY

**3.1 May More Than One Beneficiary Be Named?**

Yes. You may name more than one Beneficiary. Multiple Beneficiaries may be classified as first, second, and so on. If two or more Beneficiaries are named in a class, their shares in any amount payable may be stated. Any amounts payable to a Beneficiary will be applied to any Beneficiary classified as first who survives the Annuitant or Annuitants. If no Beneficiary classified as first survives the Annuitant or Annuitants, Payments

will be made to any surviving in the second class, and so on. Those who survive in the same class have an equal share to the extent possible in any amount payable, unless the shares are stated otherwise.

**3.2 What Happens If The Beneficiary(s) Dies?**

If the last surviving Beneficiary in a classification dies while receiving Annuity Income Payments, any remaining Payments will be paid to the surviving Beneficiaries in the next class, and so

on. If the last surviving Beneficiary to receive Annuity Income Payments dies before the total amount of Annuity Income Payments for the guaranteed number of years has been paid, the right to the remaining Annuity Income Payments will pass to that Beneficiary's estate. If no Beneficiary survives the Annuitant or Annuitants, the right to the Annuity Income Payments will pass to you as Owner or, if you were an Annuitant, to your estate.

### 3.3 May You Change A Beneficiary?

Yes. You may change a Beneficiary designation, while an Annuitant is living, in a notice that you sign and submit to us which gives us the facts that we need.   When we record a change, it will take effect as of the date you signed the notice, subject to any Payment we made or action we took before recording the change.

### 3.4 May The Beneficiary Request A Change of Payment?

Unless otherwise directed in writing by you and agreed to by us, a Beneficiary may not advance or assign Payments, receive Payments in one sum, or make any other change in the remaining Annuity Payments.

## SECTION FOUR-  ANNUITY INCOME PAYMENT ADVANCE

### 4.1 Can Annuity Income Payments Be Advanced?

Yes. If you are receiving Annuity Payments on a monthly basis, you can elect to have six months of Annuity Income Payments "accelerated". If you elect this feature you will receive a lump sum Payment equal to the  Value of your next scheduled monthly Payment and the next five scheduled monthly Payments. Accelerated Payments are fully taxable. This feature can only be elected twice during the life of the annuity policy. This feature is not available if you are under age 59½ or if the annuity policy is a Qualified Plan.

### 4.2 How Can I Exercise This Option?

You can exercise this option in a notice you sign which gives us the facts that we need.

## SECTION FIVE -  GENERAL PROVISIONS

### 5.1 What Constitutes the Entire Contract?

This entire contract consists of this policy, any attached riders, endorsements, and a copy of the application, if attached. Only our Chairman, President, Secretary, or one of our Executive Officers may change the policy, when not prohibited by the laws of the state in which this policy is issued, and then only in writing. No change will be made in the contract unless you agree. No Agent is authorized to change this contract or waive any provisions of this contract.

### 5.2 How Important Is The Information You Provide For This Policy?

In issuing this policy, we have relied on the information you provided. If you signed an application for this policy, we have relied on the statements made on the application in issuing this policy. In the absence of fraud, all such statements are deemed to be representations and not warranties. We assume these statements are true and complete to the best of the knowledge and belief of those who made them.  No such statement will be used by us to contest this policy unless that statement is a material misrepresentation.

### 5.3 Will We Be Able To Contest This Policy?

We will not contest this policy after the policy has been in force, during the lifetime of the Annuitant(s), for two (2) years from the Issue Date.

### 5.4 May We Require Proof That The Annuitant(s) Is Living?

NYLIAC may require satisfactory proof that an Annuitant is living on any Annuity Payment Date.

### 5.5 How Is An Annuitant's Age Calculated For The Purpose Of This Policy?

The age of an Annuitant, as shown on the Policy Data Page, is the age as of the Policy Date. We count 1/12 of a year for each full month from the Annuitant's last birthday to the Policy Date.

### 5.6 What Happens If In This Policy A Persons Age Or Sex Is Stated Incorrectly?

If the age or sex of an Annuitant is not correct as stated, any amounts payable under this policy based on the life of the Annuitant will be what the single Premium paid would have purchased at the correct age and sex. If Payments were made based on an incorrect age or sex, we will

increase or reduce a later Payment or Payments to adjust for the error. Any adjustment will include interest, at three and one-half percent ( ½%) per year, from the date of the wrong payment to the date the adjustment is made.

### 5.7 May You Assign Or Transfer Your Policy?
While the Annuitant is alive, you may assign this policy (non-Qualified Plan Policies only) or any interest in it. If you do this, your interest, and anyone else's is subject to that of the assignee. As Owner, you still have the rights of Ownership that have not been assigned. An assignee may not change the Owner or the Payee.
**(SEE ENDORSEMENT ATTACHED)**

### 5.8 How Do You Assign This Policy?
You must provide us with a copy of the assignment. We are not responsible for the validity of any assignment. When we record the assignment, it will take effect as of the date you signed the notice, subject to any Payment previously made by us or any other action we took before recording the assignment.

### 5.9 Are The Payments Made Under The Terms Of This Policy Protected Against Creditors?
Payments we make under the terms of this policy are to the extent the law permits, exempt from the claims, attachments or levies of any creditor.

### 5.10 Are Loans Permitted From This Policy?
This policy does not have cash values or loan values.

### 5.11 Is This Policy Subject To Any Law?
Yes. This policy is subject to all laws that apply. Benefits available under this policy are not less than those required by any regulation or statute of the state for which this policy is issued.

### 5.12 May The Guaranteed Annuity Income Payments Be Taken As A Single Sum After The Death Of the Annuitant or Annuitants?
If the right to any guaranteed Annuity Income Payments remaining after the death of the Annuitant or both Annuitants passes to an assignee, or to a Beneficiary other than an individual receiving Payment in his or her behalf (such as a Trust or Corporation), Payment will be made in one sum. The amount of this Payment will be the present value of the guaranteed Annuity Income Payments remaining at that time. This Payment will be calculated using the interest rate shown on the Policy Data Page. The present value of any remaining guaranteed Annuity Income Payments is always less than the sum of those Payments.

### 5.13 Are Any Dividends Payable Under This Policy?
No. This policy is not eligible for dividends.

# ENDORSEMENTS

# ENDORSEMENT

THIS POLICY IS ISSUED IN PLACE OF POLICY 74 739 460   ISSUED ON SEPTEMBER 22, 2010

**NEW YORK LIFE INSURANCE
AND ANNUITY CORPORATION**

_____
                                                                        Secretary

NEW YORK 03/24/2021 1074-40

**Individual Retirement Annuity Endorsement**

As of the date this Contract is issued, this Endorsement is attached to and made a part of the Contract. The provisions of this Endorsement will supersede any conflicting provisions in the Contract. These tax qualified plan provisions are being added to your Contract to comply with the requirements of the tax code. You, the Owner, must comply with these provisions to prevent loss of the advantages of tax deferral and to prevent tax penalties.

1. This Individual Retirement Annuity (IRA) is intended to qualify as an individual retirement annuity under Section 08 of the Internal Revenue Code (Code). References throughout the Contract to "IRA" or "Individual Retirement Annuity" shall refer to this IRA unless the context, taken in light of this Endorsement, otherwise requires.

2. **Contract**: The Contract is established for you and your beneficiaries' exclusive benefit. If this is an inherited IRA within the meaning of Code § 08(d)( )(C) maintained for the benefit of a designated beneficiary of a deceased individual, references in this document to the "individual" or "you" are to the deceased individual.

. **Ownership**: You, the Owner, are also the Annuitant. You may not transfer ownership of the Contract, sell the Contract, or assign or pledge the Contract as collateral for a loan or as security for the performance of an obligation or for any other purpose, to any other person other than the Company or your former spouse under a divorce decree or under a written instrument incident to that divorce. Your interest in this Contract is nonforfeitable.

. **Contributions**: Except in the case of a rollover contribution (as permitted in Code § 02(c), 02(e)(6), 0 (a)( ), 0 (b)(8), 0 (b)(10), 08(d)( ) and 5 (e)(16)), or as a contribution made in accordance with the terms of a Simplified Employee Pension (SEP) plan as described in Code § 08(k), no contribution will be accepted unless it is in cash.

5. **Limitation on Contributions**: Except in the case of a rollover or SEP contribution, the total of all contributions, or single premium, should this be a single premium Contract, shall not exceed $5,000 for any taxable year beginning in 2008 and years thereafter.

After 2008, the limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code § 219(b)(5)(D). Such adjustments will be in multiples of $500. In the case of an individual who is 50 or older, the annual cash contribution limit is increased by $1,000 for any taxable year beginning in 2006 and years thereafter.

In addition to the amount described above, you may make additional contributions specifically authorized by statute and should the Contract allow – such as repayments of qualified reservist distributions, repayments of certain plan distributions made on account of a federally declared disaster, certain amounts received in connection with the Exxon Valdez litigation, and certain airline payments.

No contributions will be accepted under a SIMPLE IRA plan established by any employer pursuant to Code § 08(p). Also, no transfer or rollover of funds attributable to contributions made by a particular employer under its SIMPLE IRA plan will be accepted from a SIMPLE IRA, that is, an IRA used in conjunction with a SIMPLE IRA plan, prior to the expiration of the 2-year period beginning on the date the individual first participated in that employer's SIMPLE IRA plan.

If this is an inherited IRA within the meaning of Code § 08(d)( )(C), no contributions will be accepted.

6. **Surrender**: If surrender proceeds are available under the terms of your Contract, then surrender proceeds may be paid either in one sum, or:

A. as an annuity to you for life; or

B. as an annuity for the joint lives of you and your spouse or designated beneficiary and to the survivor for his or her life.

In each case, and should they relate to the terms of your particular Contract, payments start at the time of surrender and will be made at least once each year. Annuity payments are guaranteed for 10 years, if that is less than your life expectancy, or that of you and your spouse or designated beneficiary.

Once annuity payments have begun, the annuity cannot be surrendered or assigned and payments cannot be made in one sum.

. **Distribution Upon Death**:

A. <u>Death On or After Required Distributions Commence</u>. If you die on or after required distributions commence, the remaining portion of your interest will continue to be distributed under the Contract option chosen.

B. <u>Death Before Required Distributions Commence</u>. If you die before required distributions commence, your entire interest will be distributed at least as rapidly as follows:

ICC1 -E115

(1) If your designated beneficiary is someone other than your surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of your death, over the remaining life expectancy of your designated beneficiary, with such life expectancy determined using the age of the beneficiary as of his or her birthday in the year following the year of your death, or, if elected, in accordance with paragraph B( ) below. If this is an inherited IRA within the meaning of Code § 08(d)( )(C) established for the benefit of a nonspouse designated beneficiary by a direct trustee-to-trustee transfer from a retirement plan of a deceased individual under Code § 02(c)(11), then, notwithstanding any election made by the deceased individual pursuant to the preceding sentence, the nonspouse designated beneficiary may elect to have distributions made under this paragraph B(1) if the transfer is made no later than the end of the year following the year of death.

(2) If your sole designated beneficiary is your surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of your death (or by the end of the calendar year in which you would have attained age 0½, if later), over such spouse's life expectancy, or, if elected, in accordance with paragraph B( ) below. If your surviving spouse dies before required distributions commence to him or her, the remaining interest will be distributed, starting by the end of the calendar year following the calendar year of your spouse's death, over your spouse's designated beneficiary's remaining life expectancy determined using such beneficiary's age as of his or her birthday in the year following the death of your spouse, or, if elected, will be distributed in accordance with paragraph B( ) below. If your surviving spouse dies after required distributions commence to him or her, any remaining interest will continue to be distributed under the Contract option chosen.

( ) If there is no designated beneficiary, or if applicable by operation of paragraph B(1) or B(2) above, the entire interest will be distributed by the end of the calendar year containing the fifth anniversary of your death (or of your spouse's death in the case of the surviving spouse's death before distributions are required to begin under paragraph B(2) above).

( ) Life expectancy is determined using the Single Life Table in Q&A-1 of § 1. 01(a)(9)-9 of the Income Tax Regulations. If distributions are being made to a surviving spouse as the sole designated beneficiary, such spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to such spouse's age in the year. In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the beneficiary's age in the year specified in paragraph B(1) or (2) and reduced by 1 for each subsequent year.

C. The "interest" in the IRA includes the amount of any outstanding rollover, transfer and recharacterization under Q&As- and –8 of § 1. 08-8 of the Income Tax Regulations and the actuarial value of any other benefits provided under the IRA, such as guaranteed death benefits.

D. For purposes of paragraphs A and B above, required distributions are considered to commence on your required beginning date or, if applicable, on the date distributions are required to begin to your surviving spouse under paragraph B(2) above. However, if distributions start prior to the applicable date in the preceding sentence, on an irrevocable basis (except for acceleration) under an annuity Contract meeting the requirements of § 1. 01(a)(9)-6 of the Income Tax Regulations, then required distributions are considered to commence on the annuity starting date.

E. If your sole designated beneficiary is your surviving spouse, and should the terms under your Contract allow, your spouse may elect to treat the IRA as his or her own IRA. Where applicable, this election will be deemed to have been made if such surviving spouse makes a contribution to the IRA or fails to take required distributions as a beneficiary.

F. The required minimum distributions payable to a designated beneficiary from this IRA may be withdrawn from another IRA the beneficiary holds from the same decedent in accordance with Q&A-9 of § 1. 08-8 of the Income Tax Regulations.

8. **Commencement of Annuity Distributions**:

   A. The annuity will be paid under the terms of your Contract.

   B. <u>Required Minimum Distribution</u>. Your entire interest under this Contract will be distributed or commence to be distributed, no later than the first day of April following the calendar year in which you attain age 70½ (the "required beginning date"), over (a) your life, or your life and that of your designated beneficiary, or (b) a period certain not extending beyond your life expectancy, or the joint and last survivor expectancy of you and your designated beneficiary. Payments must be made in periodic payments at intervals of no longer than one year. In addition, payments must be either nonincreasing or they may increase only as provided in Q&A-1 of § 1.401(a)(9)-6 of the Income Tax Regulations. In addition, any distribution must satisfy the incidental benefit requirements specified in Q&A-2 of § 1.401(a)(9)-6. If this is an inherited IRA within the meaning of § 408(d)(3)(C), this paragraph and paragraphs (D) and (E) below do not apply.

   C. All distributions made hereunder shall be made in accordance with the requirements of Code § 408(b)(3) and the regulations thereunder, the provisions of which are herein incorporated by reference. If distributions are not made in the form of an annuity on an irrevocable basis (except for acceleration), then distributions of the interest in the IRA (as determined under section C) must satisfy the requirements of Code section 408(a)(6) and the regulations thereunder, rather than paragraphs B, D and E, and section C.

   D. The distribution periods described above cannot exceed the periods specified in § 1.401(a)(9)-6 of the Income Tax Regulations.

   E. The first required payment can be made as late as April 1 of the year following the year you attain age 70½ and must be the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval.

9. **No Premium Refunds**: No premium refunds (other than those attributable to excess contributions) will be paid from the Contract.

10. **Annual Reports**: New York Life Insurance and Annuity Corporation will furnish annual calendar year reports concerning the status of the annuity and such information concerning required minimum distributions as is prescribed by the Commissioner of Internal Revenue.

11. **Compensation**: For purposes of this Endorsement, Compensation means wages, salaries, professional fees, or other amounts derived from or received for personal services actually rendered (including, but not limited to commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, and bonuses) and includes earned income, as defined in Code § 401(c)(2) (reduced by the deduction the self-employed individual takes for contributions made to a self-employed retirement plan). For purposes of this definition, Code § 401(c)(2) shall be applied as if the term trade or business for purposes of Code § 1.402 included service described in subsection (c)(6). Compensation does not include amounts derived from or received as earnings or profits from property (including but not limited to interest and dividends) or amounts not includible in gross income (determined without regard to Code § 112). Compensation also does not include any amount received as a pension or annuity or as deferred compensation. The term "compensation" shall include any amount includible in the individual's gross income under Code § 71 with respect to a divorce or separation instrument described in subparagraph (A) of Code § 71(b)(2). The term "compensation" also includes any differential wage payments as defined in Code § 3401(h)(2).

12. **New York Life Insurance and Annuity Corporation (NYLIAC)**:
You herby agree to, understand and acknowledge the following:

   A. NYLIAC shall be an agent for you to receive and invest contributions as authorized by you, hold and distribute such investments, and keep adequate records and reports thereon, all in accordance with this Endorsement.

   B. NYLIAC (and/or its affiliates) shall not be liable (and assumes no responsibility) for any contributions or the propriety of any distribution ordered in accordance with this Endorsement. Such matters are your sole responsibility.

1 ᵎ. **Amendment**: We may have to change this Contract and/or Endorsement from time to time to comply with the Code and with Regulations issued pursuant to the Code in order to maintain the tax-favored status of the IRA. New York Life Insurance and Annuity Corporation has the right to make these changes. We will notify you in writing if we do so. However, you may request in writing that we not make such changes. Your written request must be received in our Home Office within 0 days of our notice being sent to you. If you do, the Contract will then not be continued as a qualified IRA under the prototype to which the Internal Revenue Service determination letter applies, and this Endorsement shall terminate.

NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION

_____
Chairman and CEO

_____
Secretary

# 30% WITHDRAWAL RIDER

This rider is attached to, and made a part of, your Lifetime Income Annuity policy ("Policy").

## DEFINITIONS

**ANNUITY BENEFIT:** The periodic income benefit payable under the terms of this Policy, as shown on the Policy Data Page.

**FINANCIAL LOSS:** A loss, incurred subsequent to the issuance of this Policy, resulting from damage to your residence that
is caused by a natural event or accident such as a hurricane, tornado, flood, earthquake or fire. The damage must be (1) equal to, or greater than, (i) the Premium paid for this Policy, as shown on the Policy Data Page, or (ii) $20,000, whichever is less; or (2) a loss for which you have qualified for Federal Emergency Management Agency ("FEMA") assistance.

**WITHDRAWAL EFFECTIVE DATE:** The date on which the Withdrawal Benefit is determined. This date is either the 5th, 10th or 15th anniversary from the Annuity Commencement Date shown on the Policy Data Page, unless the withdrawal is the result of an approved Financial Loss. If the withdrawal is the result of an approved Financial Loss, the Withdrawal Effective Date will be within 15 Business Days following approval.

**LIFE EXPECTANCY AS OF THE POLICY DATE:** The average number of years remaining to live, as of the Policy Date shown on the Policy Data Page, for a person of the same age and gender as the Annuitant, as shown on the Policy Data Page.

**FUTURE EXPECTED PAYMENTS:** Annuity Benefit payments expected to be made for the period of time immediately following the Withdrawal Effective Date to the date determined by adding the Life Expectancy As Of The Policy Date to the Policy Date.

**INTEREST RATE CHANGE   ADJUSTMENT:**

1.25 x (A minus B)    If A is greater than B
1.00 x (A minus B)    If A is less than B

A = 10-Year Treasury Constant Maturity Rate as published by the Federal Reserve in effect 5 Business Days prior to the Withdrawal Effective Date.
B = 10-Year Treasury Constant Maturity Rate as published by the Federal Reserve on the Policy Date.

**PRESENT VALUE OF FUTURE EXPECTED PAYMENTS:** Future Expected Payments discounted to the Withdrawal Effective Date using discount rates equal to the interest rates shown on the Policy Data Page plus an Interest Rate Change Adjustment.

**WITHDRAWAL BENEFIT:** The amount equal to 30% of the Present Value Of Future Expected Payments. If this Policy is issued as an Individual Retirement Annuity under section 408(b) of the Internal Revenue Code, then the Withdrawal Benefit may be capped to comply with the Internal Revenue Service's required minimum distribution rules that apply to Individual Retirement Annuities.

**REPLACEMENT RATIO:** The Replacement Ratio is C divided by D where:

C = The Withdrawal Benefit and
D =   The current price of new contracts, issued on the Withdrawal Effective Date, that provide Annuity Benefit payments equal to those you elect to withdraw.

206-308

If new contracts that provide the same Annuity Benefit payments are not being issued on the Withdrawal Effective Date, then:

D = The calculated price of a new contract that provides Annuity Benefit payments equal to those you elect to withdraw, based on the price of contracts being issued on the Withdrawal Effective Date.

**PROOF OF FINANCIAL LOSS:** For an insured loss, a copy of your insurance claim settlement document(s); for other loss, either (1) A FEMA Disaster Assistance Registration that indicates you have been approved by FEMA for Individual Financial Assistance, or (2) an appraisal prepared by a duly licensed person or entity.

**1. What Benefit Does This Rider Provide?**
This rider allows you to receive the Withdrawal Benefit in a single lump sum only.

**2. What Is The Purpose Of Disclosure Of The Replacement Ratio?**
Reviewing the Replacement Ratio may help you decide if withdrawing this money is the right decision for you. A Replacement Ratio greater than 1.00 indicates that the Withdrawal Benefit is more than enough to purchase Annuity Benefit payments equal to those being withdrawn, based on prices in effect at the time of the withdrawal. A Replacement Ratio less than 1.00 indicates that the Withdrawal Benefit is not enough to purchase Annuity Benefit payments equal to those being withdrawn, based on prices in effect at the time of the withdrawal.

**3. Does This Rider Affect Future Annuity Benefits?**
Following the Withdrawal Effective Date, Future Expected Payments will be reduced by 30%. Your right to receive the remaining 70% of Future Expected Payments shall not be affected by the payment of the Withdrawal Benefit.

**4. When Can I Exercise This Rider?**
You must submit your request to exercise this

rider at least 15 Business Days prior to your Policy's 5th, 10th or 15th anniversary based on the Annuity Commencement Date. These dates are shown on the Policy Data Page. You may also exercise this rider upon submission to us of your Proof Of Financial Loss with your request to exercise this rider.

**5. How Can I Determine The Withdrawal Benefit?**
You may, at any time, request information on the Withdrawal Benefit. Within 15 Business Days of receipt of your request, we will provide you the information described in items (i), (ii) and (iii) of question 6 below. This information will be based on applicable interest rates, the then current Interest Rate Change Adjustment, and subject to any limitations in this rider, a Withdrawal Effective Date of your choosing.

**6. How Can I Exercise This Rider?**
To receive the Withdrawal Benefit, you must submit a written and signed request for payment, and if applicable, Proof Of Financial Loss. Within 15 Business Days of receipt of your request, we shall provide you, if not previously provided, notification of:

(i)   the amount of the Withdrawal Benefit payable and the Withdrawal Effective Date;
(ii)  the amount of the future Annuity Benefit payments following the Withdrawal Effective Date; and
(iii) the current Replacement Ratio.

Once we have provided you with the information in (i), (ii) and (iii) above, and you submit a written and signed request for payment, we will pay the Withdrawal Benefit within 15 Business Days of receipt of such request. The Withdrawal Benefit paid will be adjusted to reflect any Annuity Benefit payments, and any change in the 10-Year Treasury Constant Maturity Rate, made subsequent to our providing you with the information in (i), (ii) and (iii) above. The Interest Rate Change Adjustment applied will be determined based on the 10-Year Treasury Constant Maturity Rate as published

by the Federal Reserve in effect 5 Business Days prior to the actual Withdrawal Effective Date.

## 7.   How Often Can I Exercise This Rider?

This rider can be exercised only once while it is in effect.

## 8.   Are There Any Limitations On Exercising This Rider?

Yes. This rider may not be exercised if:

(i)     you are under age 59 ½; or
(ii)    the Withdrawal Benefit is determined to be less than $2,500; or
(iii)   the rider has ended as explained in question 12.

## 9.   What Is The Effective Date Of This Rider?

The rider is effective on the effective date of the Policy.

## 10.  What If I Assign My Policy?

If you assign your Policy, you must provide us with written consent from the assignee for you to receive any benefit under the terms of this rider. Your Policy may not be assigned if it is issued as an Individual Retirement Annuity

under section 408(b) of the Internal Revenue Code.

## 11. Is There An Additional Charge For This Rider?

There is no additional charge for this rider.

## 12. When Does This Rider End?

This rider ends upon the occurrence of any of the following:

(i)     the death of the Annuitant; or
(ii)    the payment of the Withdrawal Benefit under the terms of this rider; or
(iii)   the date on which the Policy has been in effect for a period equal to the Annuitant's Life Expectancy As Of The Policy Date, as shown on the Policy Data Page.

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION**

_____
Chairman and CEO

_____
Secretary

New York Life Insurance and Annuity Corporation
(A Delaware Corporation)
PO Box 130539
Dallas, TX 75313-0539
(800) 695-1314
www.newyorklife.com

NEW YORK LIFE

June 1, 2015

MRS BARBARA JEAN BROWN
118 RIDGEWOOD RD
PRESCOTT, AR  71857-2803

Agent/Representative
GINA CROMWELL ARPC
(501) 529-1460

MN84

**Your new IRA endorsement and disclosure statement are enclosed**

Annuitant: Mrs Barbara Jean Brown
Policy No: 74 739 460

Dear Mrs Barbara Jean Brown:

Enclosed you will find a new endorsement and associated disclosure statement for your individual retirement annuity (IRA).  This new endorsement replaces the one previously placed with your policy.  Please file these documents with your contract.

**No further action is required.**

The new endorsement and disclosure statement reflect recent changes to the tax laws applicable to IRAs, including those changes reflected in the 2010 IRS Listing of Required Modifications.

We want to emphasize that neither the new endorsement, nor the new disclosure statement, affects the benefits that your policy provides, the status of your policy as an IRA, how your policy is administered, your rights under your policy, or our obligations with respect to your policy.

Please take a moment to review the enclosed endorsement and disclosure statement.  If you have any questions about these forms or your IRA, please call one of our customer service representatives at (800) 695-1314, or call your Agent.  For tax advice, please contact your professional tax advisor.

Thank you for trusting us with your business and for choosing New York Life Insurance and Annuity Corporation as your annuity provider for your IRA.

On behalf of New York Life,

Mitchell Ascione
Vice President

### Individual Retirement Annuity Endorsement

As of the date this Contract is issued, this Endorsement is attached to and made a part of the Contract. The provisions of this Endorsement will supersede any conflicting provisions in the Contract. These tax qualified plan provisions are being added to your Contract to comply with the requirements of the tax code. You, the Owner, must comply with these provisions to prevent loss of the advantages of tax deferral and to prevent tax penalties.

1. This Individual Retirement Annuity (IRA) is intended to qualify as an individual retirement annuity under Section 408 of the Internal Revenue Code (Code). References throughout the Contract to "IRA" or "Individual Retirement Annuity" shall refer to this IRA unless the context, taken in light of this Endorsement, otherwise requires.

2. **Contract**:  The Contract is established for you and your beneficiaries' exclusive benefit.  If this is an inherited IRA within the meaning of Code § 408(d)(3)(C) maintained for the benefit of a designated beneficiary of a deceased individual, references in this document to the "individual" or "you" are to the deceased individual.

3. **Ownership**: You, the Owner, are also the Annuitant. You may not transfer ownership of the Contract, sell the Contract, or assign or pledge the Contract as collateral for a loan or as security for the performance of an obligation or for any other purpose, to any other person other than the Company or your former spouse under a divorce decree or under a written instrument incident to that divorce. Your interest in this Contract is nonforfeitable.

4. **Contributions**: Except in the case of a rollover contribution (as permitted in Code § 402(c), 402(e)(6), 403(a)(4), 403(b)(8), 403(b)(10), 408(d)(3) and 457(e)(16)), or as a contribution made in accordance with the terms of a Simplified Employee Pension (SEP) plan as described in Code § 408(k), no contribution will be accepted unless it is in cash.

5. **Limitation on Contributions**: Except in the case of a rollover or SEP contribution, the total of all contributions, or single premium, should this be a single premium Contract, shall not exceed $5,000 for any taxable year beginning in 2008 and years thereafter.

After 2008, the limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code § 219(b)(5)(D).  Such adjustments will be in multiples of $500. In the case of an individual who is 50 or older, the annual cash contribution limit is increased by $1,000 for any taxable year beginning in 2006 and years thereafter.

In addition to the amount described above, you may make additional contributions specifically authorized by statute and should the Contract allow – such as repayments of qualified reservist distributions, repayments of certain plan distributions made on account of a federally declared disaster, certain amounts received in connection with the Exxon Valdez litigation, and certain airline payments.

No contributions will be accepted under a SIMPLE IRA plan established by any employer pursuant to Code §408(p).  Also, no transfer or rollover of funds attributable to contributions made by a particular employer under its SIMPLE IRA plan will be accepted from a SIMPLE IRA, that is, an IRA used in conjunction with a SIMPLE IRA plan, prior to the expiration of the 2-year period beginning on the date the individual first participated in that employer's SIMPLE IRA plan.

If this is an inherited IRA within the meaning of Code § 408(d)(3)(C), no contributions will be accepted.

6. **Surrender**: If surrender proceeds are available under the terms of your Contract, then surrender proceeds may be paid either in one sum, or:

    A.   as an annuity to you for life; or

    B.   as an annuity for the joint lives of you and your spouse or designated beneficiary and to the survivor for his or her life.

In each case, and should they relate to the terms of your particular Contract,  payments start at the time of surrender and will be made at least once each year. Annuity payments are guaranteed for 10 years, if that is less than your life expectancy, or that of you and your spouse or designated beneficiary.

Once annuity payments have begun, the annuity cannot be surrendered or assigned and payments cannot be made in one sum.

7. **Distribution Upon Death**:

    A.   <u>Death On or After Required Distributions Commence</u>. If you die on or after required distributions commence, the remaining portion of your interest will continue to be distributed under the Contract option chosen.

    B.   <u>Death Before Required Distributions Commence</u>. If you die before required distributions commence, your entire interest will be distributed at least as rapidly as follows:

        (1) If your designated beneficiary is someone other than your surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of your death, over the remaining life expectancy of your

ICC14-E115

designated beneficiary, with such life expectancy determined using the age of the beneficiary as of his or her birthday in the year following the year of your death, or, if elected, in accordance with paragraph B(3) below. If this is an inherited IRA within the meaning of Code § 408(d)(3)(C) established for the benefit of a nonspouse designated beneficiary by a direct trustee-to-trustee transfer from a retirement plan of a deceased individual under Code § 402(c)(11), then, notwithstanding any election made by the deceased individual pursuant to the preceding sentence, the nonspouse designated beneficiary may elect to have distributions made under this paragraph B(1) if the transfer is made no later than the end of the year following the year of death.

(2) If your sole designated beneficiary is your surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of your death (or by the end of the calendar year in which you would have attained age 70½, if later), over such spouse's life expectancy, or, if elected, in accordance with paragraph B(3) below. If your surviving spouse dies before required distributions commence to him or her, the remaining interest will be distributed, starting by the end of the calendar year following the calendar year of your spouse's death, over your spouse's designated beneficiary's remaining life expectancy determined using such beneficiary's age as of his or her birthday in the year following the death of your spouse, or, if elected, will be distributed in accordance with paragraph B(3) below. If your surviving spouse dies after required distributions commence to him or her, any remaining interest will continue to be distributed under the Contract option chosen.

(3) If there is no designated beneficiary, or if applicable by operation of paragraph B(1) or B(2) above, the entire interest will be distributed by the end of the calendar year containing the fifth anniversary of your death (or of your spouse's death in the case of the surviving spouse's death before distributions are required to begin under paragraph B(2) above).

(4) Life expectancy is determined using the Single Life Table in Q&A-1 of § 1.401(a)(9)-9 of the Income Tax Regulations. If distributions are being made to a surviving spouse as the sole designated beneficiary, such spouse's remaining life expectancy

for a year is the number in the Single Life Table corresponding to such spouse's age in the year. In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the beneficiary's age in the year specified in paragraph B(1) or (2) and reduced by 1 for each subsequent year.

C. The "interest" in the IRA includes the amount of any outstanding rollover, transfer and recharacterization under Q&As-7 and –8 of § 1.408-8 of the Income Tax Regulations and the actuarial value of any other benefits provided under the IRA, such as guaranteed death benefits.

D. For purposes of paragraphs A and B above, required distributions are considered to commence on your required beginning date or, if applicable, on the date distributions are required to begin to your surviving spouse under paragraph B(2) above. However, if distributions start prior to the applicable date in the preceding sentence, on an irrevocable basis (except for acceleration) under an annuity Contract meeting the requirements of § 1.401(a)(9)-6 of the Income Tax Regulations, then required distributions are considered to commence on the annuity starting date.

E. If your sole designated beneficiary is your surviving spouse, and should the terms under your Contract allow, your spouse may elect to treat the IRA as his or her own IRA.  Where applicable, this election will be deemed to have been made if such surviving spouse makes a contribution to the IRA or fails to take required distributions as a beneficiary.

F. The required minimum distributions payable to a designated beneficiary from this IRA may be withdrawn from another IRA the beneficiary holds from the same decedent in accordance with Q&A-9 of § 1.408-8 of the Income Tax Regulations.

8. **Commencement of Annuity Distributions**:

A. The annuity will be paid under the terms of your Contract.

B. Required Minimum Distribution. Your entire interest under this Contract will be distributed or commence to be distributed, no later than the first day of April following the calendar year in which you attain age 70½ (the "required beginning date"), over (a) your life, or your life and that of your designated beneficiary, or (b) a period certain not extending beyond your life expectancy, or the joint and last survivor expectancy of you and your designated

beneficiary.  Payments must be made in periodic payments at intervals of no longer than one year.  In addition, payments must be either nonincreasing or they may increase only as provided in Q&A-14 of § 1.401(a)(9)-6 of the Income Tax Regulations.  In addition, any distribution must satisfy the incidental benefit requirements specified in Q&A-2 of § 1.401(a)(9)-6. If this is an inherited IRA within the meaning of § 408(d)(3)(C), this paragraph and paragraphs (D) and (E) below do not apply.

C.  All distributions made hereunder shall be made in accordance with the requirements of Code § 408(b)(3) and the regulations thereunder, the provisions of which are herein incorporated by reference.  If distributions are not made in the form of an annuity on an irrevocable basis (except for acceleration), then distributions of the interest in the IRA (as determined under section 7C) must satisfy the requirements of Code section 408(a)(6) and the regulations thereunder, rather than paragraphs B, D and E, and section 7.

D.  The distribution periods described above cannot exceed the periods specified in § 1.401(a)(9)-6 of the Income Tax Regulations.

E.  The first required payment can be made as late as April 1 of the year following the year you attain age 70½ and must be the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval.

9. **No Premium Refunds**:  No premium refunds (other than those attributable to excess contributions) will be paid from the Contract.

10. **Annual Reports**: New York Life Insurance and Annuity Corporation will furnish annual calendar year reports concerning the status of the annuity and such information concerning required minimum distributions as is prescribed by the Commissioner of Internal Revenue.

11. **Compensation**: For purposes of this Endorsement, Compensation means wages, salaries, professional fees, or other amounts derived from or received for personal services actually rendered (including, but not limited to commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, and bonuses) and includes earned income, as defined in Code § 401(c)(2) (reduced by the deduction the self-employed individual takes for contributions made to a self-employed retirement plan). For purposes of this definition, Code § 401(c)(2) shall be applied as if the term trade or business for purposes of Code § 1402 included service described in subsection (c)(6). Compensation does not include amounts derived from

or received as earnings or profits from property (including but not limited to interest and dividends) or amounts not includible in gross income (determined without regard to Code § 112). Compensation also does not include any amount received as a pension or annuity or as deferred compensation. The term "compensation" shall include any amount includible in the individual's gross income under Code § 71 with respect to a divorce or separation instrument described in subparagraph (A) of Code § 71(b)(2). The term "compensation" also includes any differential wage payments as defined in Code § 3401(h)(2).

12. **New York Life Insurance and Annuity Corporation (NYLIAC)**:
You herby agree to, understand and acknowledge the following:

A.  NYLIAC shall be an agent for you to receive and invest contributions as authorized by you, hold and distribute such investments, and keep adequate records and reports thereon, all in accordance with this Endorsement.

B.  NYLIAC (and/or its affiliates) shall not be liable (and assumes no responsibility) for any contributions or the propriety of any distribution ordered in accordance with this Endorsement. Such matters are your sole responsibility.

13. **Amendment**: We may have to change this Contract and/or Endorsement from time to time to comply with the Code and with Regulations issued pursuant to the Code in order to maintain the tax-favored status of the IRA.  New York Life Insurance and Annuity Corporation has the right to make these changes.  We will notify you in writing if we do so.  However, you may request in writing that we not make such changes.  Your written request must be received in our Home Office within 30 days of our notice being sent to you. If you do, the Contract will then not be continued as a qualified IRA under the prototype to which the Internal Revenue Service determination letter applies, and this Endorsement shall terminate.

NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION

_____
President

_____
Secretary

ICC14-E115

# New York Life Insurance and Annuity Corporation
# Individual Retirement Annuity

## DISCLOSURE STATEMENT

The following information is being provided to you, the policyowner, in accordance with the requirements of the Internal Revenue Service. It includes a non-technical explanation of some of the requirements applicable to Individual Retirement Annuities (IRAs). The information provided applies to contributions made and distributions received on and after January 1, 2014. You should consult your tax adviser about the specifics of these rules, and remember that the terms of your actual contract and any endorsements will control your rights and obligations.

### 1. *Revocation of Your IRA*

If you have not received this Disclosure Statement at least seven calendar days before the establishment of your IRA, you have the right to revoke your IRA at any time during the seven calendar day period following its establishment. In order to revoke your IRA, you must notify us in writing and you must mail or deliver your revocation to NYLIAC 51 Madison Avenue, Room 251, New York, NY 10010 (phone: 212-576-7000). If your revocation is mailed properly, the date of the postmark (or the date of certification or registration if sent by certified or registered mail) will be considered your revocation date. If you revoke your IRA during the seven day period, the entire amount of your account without any adjustments (for items such as administrative expenses, fees, or fluctuation in market value) will be returned to you.

### 2. *Contributions*

(a) *Regular IRA*. You may make periodic contributions to a regular IRA (if permitted under the annuity contract) in any amount up to the combined tax deductible and non-tax deductible contribution limit described in Section 3 of this Disclosure Statement. All such contributions must be in cash. This IRA cannot be issued as a SIMPLE IRA.

(b) *Spousal IRA*. If you and your spouse file a joint federal income tax return for the taxable year and if your spouse's compensation, if any, includable in gross income for the year is less than the compensation includable in the gross income of the policyowner for the year, you and your spouse may each establish his or her own individual IRA and may make periodic contributions to your IRAs (if permitted under the annuity contract) in accordance with the rules and limits for tax deductible and non-tax deductible contributions contained in Sections 219(c) and 408(o) of the Internal Revenue Code (Code). Such contributions shall be in cash and shall be invested in accordance with this Disclosure Statement.

(c) *Rollover IRA*. A rollover contribution is a nonperiodic deposit in cash with respect to which contribution you warrant that (1) the entire amount rolled over is attributable to a distribution from an employees trust, an employee's annuity, an annuity contract or another individual retirement account or annuity, which meets the requirements of Code section 402(c), 402(e)(6), 403(a)(4), 403(b)(8), 403(b)(10), 408(d)(3) or 457(e)(16); (2) within one (1) year of receiving such distribution, you did not receive another distribution which constituted a rollover referred to in Code section 408(d)(3)(B); and (3) the contribution as made satisfies all the requirements for rollover contributions as set forth under the Code. A rollover contribution attributable to contributions made by an employer to an individual's SIMPLE IRA cannot be made prior to the expiration of the 2-year period beginning on the date the individual first participated in that employer's SIMPLE plan.

Beginning January 1, 2015, you can make only one rollover from an IRA to another (or the same) IRA in any 12-month period, regardless of the number or types of IRAs you own (see IRS Announcement 2014-32). Generally, a rollover is a tax-free withdrawal of all or part of the assets from one IRA that you contribute (roll over) within 60 days to another (or the same) IRA. You can, however, continue to make an unlimited number of trustee-to-trustee transfers (transfers directly between IRAs). You can also make an unlimited number of rollovers from traditional IRAs to Roth IRAs ("conversions"). If you are considering requesting a distribution from your IRA for rollover to another IRA, you should strongly consider a trustee-to-trustee transfer instead. Please consult your tax advisor prior to effecting a rollover.

Strict limitations apply to rollovers, and you should seek competent tax advice in order to comply with all the rules governing rollovers.

(d)  *Transfers*.  You may make an initial or subsequent contribution hereunder by directing a Custodian or Trustee of an existing IRA to transfer an amount in cash to the IRA.

(e)  *Time to Make Contributions*.  You may make regular IRA contributions (if permitted under the annuity contract) at any time for a taxable year beginning on the first day of that year and ending on the date that your income tax return for that year is due (without regard to any extensions).

(f)  *Responsibility of the Policyowner*.  If you contemplate making future periodic contributions (if permitted under the annuity contract), rollovers, or transfers to the IRA, such contributions, rollovers or transfers must be made in accordance with the appropriate sections of the Code.  It is your full and sole responsibility to determine the tax deductibility of all contributions, and to make such contributions in accordance with the Code.  Neither the Custodian nor New York Life Insurance and Annuity Corporation are permitted to provide tax advice, and will assume no liability for the tax consequences of any contribution to the IRA.

### 3. *Deductibility of Contributions*

(a)  *Eligibility*.  Under the Internal Revenue Code, if neither you nor your spouse is an active participant (see (b) below), you and your spouse may contribute up to $11,000 together (but no more than $5,500 to each individual account if your combined compensation is at least equal to that amount and take a deduction for the entire amount contributed.  If you are an active participant, but have an adjusted gross income (AGI) below a certain level (see (c) below), you may make a deductible contribution.  If you are an active participant and you have AGI above that level (see (c) below), the amount of the deductible contribution you may make is phased down and eventually eliminated.  If you are not an active participant, but your spouse is an active participant, you may make a $5,500.00 deductible contribution provided that if your combined AGI is above the specified level, (see (c) below) the amount of the deductible contribution you may make to an IRA is phased down and eventually eliminated.  Additional annual contributions (if permitted under the annuity contract) of up to $1,000.00 can be made in any year you are age 50 or over ($2,000 on a combined basis if both you and your spouse are age 50 or over).  Also, you may make additional contributions (if permitted under the annuity contract) specifically authorized by the Code, such as repayments of qualified reservist distributions, repayments of certain plan distributions made on account of a federally declared disaster, certain amounts received in connection with the Exxon Valdez litigation, and certain airline payments.

(b)  *Active Participant*.  You are an "active participant" for a year if you are covered by a retirement plan.  You are "covered by a retirement plan" for a year if your employer or union has a retirement plan under which money is added to your benefit or you are eligible to earn retirement credits. For example, if you are covered under a pension plan, profit-sharing plan, a 403(b) annuity, certain government plans, a salary reduction arrangement (such as a Tax Sheltered Annuity 403(b) arrangement or a 401(k) plan), a Simplified Employee Pension Plan (SEP), a SIMPLE retirement account or a plan which promises you a retirement benefit which is based upon the number of years of service you have with the employer, you are likely to be an active participant.  Box 13 of your Form W-2 for the year should be checked if you are an active participant.

(c)  *Adjusted Gross Income*.  If you or your spouse is an active participant, you must look at your AGI for the year (if you and your spouse file a joint tax return, you use your combined AGI) to determine whether you can make a deductible IRA contribution, Your tax return will show you how to calculate your AGI for this purpose. If you are at or below a certain AGI level, called the threshold level, you are treated as if you were not an active participant and can make a deductible contribution under the same rules as a person who is not an active participant.

If you are single or a head of household, your threshold AGI level is $60,000 (for 2014). The threshold level if you are married and file a joint tax return is $96,000.00 (for 2014), and if you are married, but file a separate tax return, the threshold level is $0.  However, if only your spouse is an active participant and you file a joint tax return, the threshold level is $181,000.00 phased out at $191,000.00.

Active Participant in Retirement Plan

Single Taxpayers

$60,000 or less----------------------------------------Full Deduction
More than $60,000 but less than $70, 000----Partial Deduction
More than $70,000------------------------------------No Deduction

Married Taxpayers

$96,000 or less----------------------------------------Full Deduction
More than $96,000 but less than $116,000------Partial Deduction
More than $116,000 ----------------------------------No Deduction

If your AGI is less than $10,000 ($20,000 in the case of a joint return) above your threshold level, you will still be able to make a deductible contribution, but it will be limited in amount. The amount by which your AGI exceeds your threshold level (AGI-threshold level) is called your Excess AGI.  The Maximum Allowable Deduction is $5,500 (and an additional $5,500 for a Spousal IRA).  You can calculate your Deduction Limit as follows:

Single Returns (and joint returns where only your spouse is an active participant)

$$\frac{10,000 - \text{Excess AGI}}{10,000} \text{ X Maximum Allowable Deduction} = \text{Deduction Limit}$$

Joint Returns (deduction limit for spouses who are active participant)

$$\frac{20,000 - \text{Excess AGI}}{20,000} \text{ X Maximum Allowable Deduction} = \text{Deduction Limit}$$

You must round up the result to the next highest $10 level (the next highest number which ends in zero). For example, if the result is $1,525, you must round it up to $1,530.  If the final result is below $200 but above zero, your Deduction Limit is $200.  Your Deduction Limit cannot, in any event, exceed 100% of your compensation.

(d)  *Restrictions*.  No deduction is allowed for (a) contributions other than in cash, (b) contributions (other than those by an employer to a Simplified Employee Pension Plan) made during your calendar year in which you attain age 70½ or thereafter; or (c) for any amount you contribute which was a distribution from another retirement plan (i.e., a rollover contribution).  However, the limitations in paragraphs (a) and (b) of this Section 3 do not apply to rollover contributions.

(e)  *Compensation*.  For purposes of determining allowable contributions, the term "compensation" includes all earned income, including net earnings from self employment and alimony or separate maintenance payments received and includable in your gross income and differential wage payments (Code section 3401(h)(2)), but does not include deferred compensation or any amount received as a pension or annuity.

### 4.  *Nondeductible Contributions to IRAs*

Even if you are above the threshold level and, thus, may not make a deductible contribution of $5,500 (and an additional $5,500 for a Spousal IRA) plus any additional age 50 contribution (if applicable), you may still contribute up to the lesser of that amount or 100% of compensation as a nondeductible contribution to the IRA. You may also choose to make a contribution nondeductible even if you could have deducted part or all of the contribution.  Interest or other earnings on your IRA contribution, whether from deductible or nondeductible contributions, will not be taxed until taken out of your IRA and distributed to you.

If you make a nondeductible contribution to an IRA you must report the amount of the nondeductible contribution to the IRS as a part of your tax return for the year. (Form 8606)

**5. *Distributions***

(a)  *Required Distributions.*  Distribution of your IRA must be made or begin no later than April 1 of the calendar year following the calendar year in which you attain age 70½.   A distribution may be made at once in a lump sum, or it may be made in installments. Installment payments must be made over your life (or a period not exceeding your life expectancy), or the joint lives of you and your designated beneficiary (or a period not exceeding the joint life expectancies of you and the beneficiary you designate). Generally, life expectancy is determined under the IRS Uniform Lifetime Table, or, if your spouse is your sole designated beneficiary and is more than 10 years younger than you, the joint life and  the last survivor expectancy of you and your spouse.

If you die before the entire interest is distributed to you but after distribution to you has begun, the remaining portion of your annuity must be distributed to your beneficiary at least as rapidly as your annuity was being distributed prior to your death. If you die before you begin to receive distributions from your annuity and if you have a designated beneficiary, distribution to your beneficiary must be made over a period not exceeding the greater of the beneficiary's life expectancy or by December 31st of the calendar year which contains the fifth anniversary of your death; if you have no designated beneficiary, distribution must be completed by December 31st of the calendar year which contains the fifth anniversary of your death. Distributions upon your death must begin by December 31st of the year immediately following the year of your death or, if your beneficiary is your spouse, no later than December 31st of the year in which you would have attained age 70½ (if later).  If following your death before distributions have begun, your spouse also dies, immediate distribution must begin to be made to your spouse's beneficiary, if any, over a period no longer than that person's life expectancy, or if your spouse has not designated a beneficiary, full payment must be made to your spouse's estate by December 31st of the year which contains the fifth anniversary of your spouse's death.  Notwithstanding the foregoing, there were no required distributions for 2009.

(b)  *Nondeductible IRA Distributions.*  Because nondeductible IRA contributions are made using income which has already been taxed (that is, they are not deductible contributions), the portion of the IRA distributions consisting of nondeductible contributions will not be taxed again when received by you.  If you make any nondeductible IRA contributions, each distribution from your IRAs will consist of a nontaxable portion (return of nondeductible contributions) and a taxable portion (return of deductible contributions, if any, and account earnings).

Thus, you may not take a distribution which is entirely tax-free. The following formula is used to determine the nontaxable portion of your distributions for a taxable year:

Remaining nondeductible contributions        X     Total distributions      =     Nontaxable distributions
Year-end total IRA balances                                  (for the year)                  (for the year)

To figure the year-end total IRA balance, you must treat all of your IRAs as a single IRA (other than Roth IRAs).  This includes all regular IRAs, as well as Simplified Employee Pension (SEP) IRAs, SIMPLE IRAs, and Rollover IRAs. You also add back the distributions taken during the year.

Distributions from a traditional IRA are taxable in the year you receive them. Exceptions to the general rule include rollovers, tax- free withdrawals of contributions, and the return of nondeductible contributions. Distributions from traditional IRA's that are includable in income are taxed as ordinary income.

Even if you withdrew all of the money in your IRA in a lump sum, you will not be entitled to use any form of income averaging to reduce the federal income tax on your distribution. Also, no portion of your distribution is taxable as a capital gain.

(c)  *Withholding.*  Unless you elect not to have withholding apply, a 10% federal income tax will be withheld from your non periodic IRA distributions. The amount of tax withheld from an annuity or similar period payment is based on your marital status and the number of withholding of allowances you claim on your withholding certification (W-4P). If you have not filed a certificate, tax will be withheld as if you are a married

individual claiming three withholding allowances. If payments are delivered to foreign countries, however, tax will, generally, be withheld unless you certify to the Custodian that you are not a U.S. citizen residing abroad or a "tax avoidance expatriate" (as defined in Code section 877).

### 6. *Penalties*

(a) *Excess Contributions*.  If at the end of any taxable year your IRA contributions (other than rollovers or transfers) exceed the maximum allowable (deductible and nondeductible) amount for that year, this excess contribution amount will be subject to a nondeductible 6% excise tax.  However, if you withdraw the excess contribution, plus any earnings on it, before the due date for filing your federal income tax return for the year (including extensions), the excess contribution will not be subject to the 6% excise tax.  The amount of the excess contribution withdrawn will not be considered a premature distribution, but the earnings withdrawn will be taxable income to you and may be subject to an additional 10% tax on premature distributions.  Alternatively, excess contributions for one year may be carried forward as IRA contributions in the next year to the extent that the excess, when aggregated with your IRA contribution (if any) for the subsequent year, does not exceed the maximum allowable (deductible and nondeductible) amount for that year.  The 6% excise tax will be imposed on excess contributions in each year they are neither returned nor applied as contributions.

(b) *Early Distributions*.  Since the purpose of an IRA is to accumulate funds for retirement, your receipt or use of any portion of your IRA before you attain age 59½ constitutes an early distribution unless the distribution: (i) occurs in the event of your death or disability; (ii) is part of a series of substantially equal periodic payments made over your life (or life expectancy) (as determined from tables in the income tax regulations) or the joint lives (or joint life expectancies) of you and your beneficiary (iii) is used to pay certain medical expenses; (iv) is used for certain qualified first-time homebuyer expenses (v) is used for certain qualified higher education expenses (vi) is a qualified reservist contribution, or (vii) is made on account of an IRS tax levy. The amount of an early distribution (excluding the nondeductible contribution included therein) is includable in your gross income and is subject to a 10% additional tax on the amount of the early distribution unless you transfer it to another IRA or qualified retirement plan as a qualifying rollover contribution.  If you transfer, rollover or convert a regular IRA into a Roth IRA, the 10% additional tax will not apply, but the distribution is taxable income.

(c) *Minimum Distributions*.  If the minimum distribution rules described in paragraph 5(a) apply to a recipient of distributions and if the amount distributed during a calendar year is less than the minimum amount required to be distributed, the recipient will be subject to a penalty tax equal to 50% of the difference between the amount required to be distributed and the amount actually distributed.

(d) *Prohibited Transactions and Loans*.  If you or your beneficiary engage in any prohibited transaction (such as any sale, exchange or leasing of any property between you and the annuity, or any interference with the independent status of the annuity) or if you borrow from the annuity, the annuity will lose its tax exemption and be treated as having been distributed to you.  The value of the entire annuity (excluding the nondeductible contribution included therein) will be includable in your gross income. If you pledge your annuity as security for a loan, the portion pledged is considered to be distributed to you and the taxable portion is includable in your gross income.  If at the time of the prohibited transaction you are under age 59½, you will also be subject to the 10% excise tax on early distributions.

(e) *Overstatement of Nondeductible Contributions*.  If you overstate your nondeductible IRA contributions on your federal income tax return (without reasonable cause) you may be subject to a $100 penalty and a $50 penalty for failure to file any form required by the IRS to report nondeductible contributions (in addition to any generally applicable tax, interest, and penalties to which you may be liable if you understate income upon receiving a distribution from your account.  See paragraph 5(b) of this Disclosure Statement and IRS Form 8606.)

### 7. *Federal Estate and Gift Taxes*

Any amount distributed from your IRA upon your death may be subject to federal estate and gift taxes.

### 8. *Other Information*

(a) *Tax Reporting*.  You need not file Treasury Form 5329 with the Internal Revenue Service unless during the taxable year there is an excess contribution to, premature distribution from, or insufficient distribution from your IRA.  You must report contributions to, and distributions from your IRA (including the year end aggregate account balance of all IRAs) on your federal income tax return for the year.  You must designate on the return how much of your annual contribution is deductible and how much is nondeductible.

(b) *IRS Approval*.  This Individual Retirement Annuity has been approved as to form by the Internal Revenue Service. Such approval is a determination only as to the form of the annuity and does not represent a determination of the merits of such annuity.

(c) *Vesting*.  Your interest in your IRA must be nonforfeitable at all times.

(d) *State Tax Law*.  You should consult your tax adviser about any state tax consequences of your IRA; you should be aware that some of these laws may differ from Federal tax law governing IRAs.

(e) *Further Information and Updates*.  The legal requirements for IRAs described above may change from time to time.  Further information or updated information on IRAs may be obtained from the Internal Revenue Service and in Internal Revenue Service Publication 590, which is available on the internet at www.irs.gov.

(f) Subject to the terms of your contract, this IRA product may not have a cash value and withdrawals may not be permitted at any time. To the extent your IRA does not have a cash value, we have not included data on amounts available at various ages, as otherwise would be required by the IRS regulations.  For certain annuity contracts, your monthly payments under the IRA are described on the policy data page of the contract. The policy data page also discloses the policy service charge, if applicable, that is deducted from your premium payment.

(g) Special rules apply if this is an inherited IRA, such as you cannot make any contributions, the 10% additional tax in paragraph 6(b) does not apply, and the "you" reference in the required distribution rules in paragraph 5(a) refers to the original IRA owner.

**New York Life Insurance and Annuity Corporation**

A Stock Company Incorporated in Delaware.

Home Office - Newark, Delaware

Executive Office - 51 Madison Avenue
New York, NY 10010

**Immediate Life Annuity With Guaranteed Period**

Single Premium Payable As Shown On The Policy Data Page

Policy Is Not Eligible For Dividends

**203-173**