EXHIBIT C

QW6281717



**APPLICATION FOR**
## Single Premium Immediate Annuities
## Lifetime Income or Fixed Period Annuity
**To New York Life Insurance and Annuity Corporation (NYLIAC) (A Delaware Corporation)**

New York Life Annuities

Executive Office: 51 Madison Avenue, New York, NY 10010 • Home Office: 200 Continental Drive, Suite 306, Newark, DE 19713

**1 OWNER**

*BARBARA JEAN BROWN LIVING TRUST*     ☐ Male ☐ Female
▲ *Name (First, Middle Initial, Last)*                        *Check One*

*118 RIDGEWOOD RD*
▲ *Residence — Street Address*

*PRESCOTT*          *ARKANSAS*    *71857*     *USA*
▲ *City*                *State*        *Zip Code*    *Country of Citizenship*

*870 887 5085*
▲ *Home Telephone Number*                   *Business Telephone Number*

*03/12/2010  TRUST DATE*                 ▆▆▆▆▆*2683*
▲ *Date of Birth (MM/DD/YYYY)*               *Social Security or Tax I.D. Number*

Relationship to the Annuitant:   ☐ Self   ☐ Spouse   ☑ Other   *TRUST*

**2 JOINT OWNER** *(If applicable — Non-qualified only)*

_____   ☐ Male ☐ Female
▲ *Name (First, Middle Initial, Last)*                        *Check One*

_____
▲ *Residence — Street Address*

_____
▲ *City*                *State*        *Zip Code*    *Country of Citizenship*

_____
▲ *Home Telephone Number*                   *Business Telephone Number*

_____
▲ *Date of Birth (MM/DD/YYYY)*               *Social Security or Tax I.D. Number*

Relationship to the Annuitant:   ☐ Self   ☐ Spouse   ☐ Other _____

**3 ANNUITANT**

Check One:   ☐ Owner   ☐ Joint Owner   ☑ Other, complete below.

*BARBARA JEAN BROWN*                    ☐ Male ☑ Female
▲ *Name (First, Middle Initial, Last)*                        *Check One*

*118 RIDGEWOOD RD*
▲ *Residence — Street Address*

*PRESCOTT*          *AR*       *71857*     *USA*
▲ *City*                *State*        *Zip Code*    *Country of Citizenship*

*870 887 5085*    ▆▆▆▆*1931*           ▆▆▆▆*2683*
▲ *Home Telephone Number*   *Date of Birth (MM/DD/YYYY)*   *Social Security or Tax I.D. Number*

**PROOF OF AGE REQUIRED FOR LIFETIME INCOME ANNUITY**

**4 JOINT ANNUITANT** *(Complete for Joint-Life Lifetime Income annuities only.)*

Check One:   ☐ Owner   ☐ Joint Owner   ☐ Other, complete below.

_____   ☐ Male ☐ Female
▲ *Name (First, Middle Initial, Last)*                        *Check One*

_____
▲ *Residence — Street Address*

_____
▲ *City*                *State*        *Zip Code*    *Country of Citizenship*

_____
▲ *Home Telephone Number*   *Date of Birth (MM/DD/YYYY)*   *Social Security or Tax I.D. Number*

**PROOF OF AGE REQUIRED FOR LIFETIME INCOME ANNUITY**

Relationship to the Annuitant:   ☐ Spouse   ☐ Non-Spouse

**5** **REDUCTION OF INCOME FOR JOINT LIFE PLANS** — If a Joint Annuitant is named, payments will continue upon the death of one of the Annuitants as indicated below.

**Note: Reduction of income not available on Life With Cash Refund Plans.**

**For Qualified Joint Life Plans where the Joint Annuitant is a Non-Spouse*.** Generally, IRS regulations require a reduction to survivor income if the IRA Owner's age exceeds that of a non-spousal Joint Annuitant by more than 10 years. The IRA Owner must be the Primary Annuitant and the reduction is available only upon the death of the IRA Owner. See table in instructions section for maximum allowable survivor percentage.

**Please select one of the following. If no selection is made, the default survivor income is 100% subject to limitations noted above. For Plans with Guaranteed Period, any reduction in Income Payments, if applicable, applies after the end of the Guaranteed Period if the policy is in effect.**

☐ No reduction of income at first death (100% to survivor)

☐ Income reduced to _____% (40% to 99%) of income at the death of either Annuitant

☐ Income reduced to _____% (40% to 99%) of income at the death of Primary Annuitant*

*Primary Annuitant is the Annuitant named in Section 3. **Note:** Available on IRAs only — the applicable Primary and Secondary Joint Life Plan will be issued if this box is checked.

**6** **PAYEE** *(Designated to receive Annuity Income Payments.)*
Check One: ☑ Owner   ☐ Joint Owner   ☒ Annuitant   ☐ Other, complete below.

**BARBARA JEAN BROWN LIVING TRUST**
▲ Name (First, Middle Initial, Last)

**118 RIDGEWOOD RD**
▲ Residence — Street Address

**PRESCOTT**          **ARKANSAS**    **71857**    **USA**
▲ City                  State              Zip Code      Country of Citizenship

**870 887 5085**        ████████ 1931 ████████ -2683
▲ Home Telephone Number    Date of Birth (MM/DD/YYYY)        Tax I.D. Number

**7** **BENEFICIARY** *(Leave Blank for Life Only Plans) (Note: Primary and Contingent Beneficiary designations must each total 100%.) Please use Section 18 for additional Beneficiary information.*

| | | | |
|---|---|---|---|
| **Primary** | **BARBARA JEAN BROWN LIVING TRUST**  ▲ Name (First, Middle Initial, Last) | **TRUST**  Relationship to Owner | **\|1\|0\|0\|%**  Percentage |
| ☐ **Primary** ☐ **Contingent** | ▲ Name (First, Middle Initial, Last) | Relationship to Owner | \|_\|_\|_\|%  Percentage |
| ☐ **Primary** ☐ **Contingent** | ▲ Name (First, Middle Initial, Last) | Relationship to Owner | \|_\|_\|_\|%  Percentage |
| ☐ **Primary** ☐ **Contingent** | ▲ Name (First, Middle Initial, Last) | Relationship to Owner | \|_\|_\|_\|%  Percentage |

**8** **PREMIUM AMOUNT** *(Attach check payable to NYLIAC, unless instructed otherwise.)* $ **95,696.78**

**9** **ANNUITY INCOME PAYMENTS**
Frequency of Annuity Income Payments:   ☑ Monthly   ☐ Quarterly   ☐ Semi-annually   ☐ Annually

**10** **ANNUITY COMMENCEMENT DATE**
Payments will begin one payment period after the Policy Date, unless otherwise indicated. **Only** if you would like the payments to begin on another date, please specify that date: __**11**__ / __**01**__ / __**2010**__
                                                                    MM    DD    YYYY
**Note:** *Payments* **must** *begin within one year of the Policy Date. Changing the Annuity Commencement Date will change the Income Payment Amount.*

**11** **PRODUCT SELECTION** *(Choose ONE annuity product below.)*

☑ **LIFETIME INCOME ANNUITY:**  Complete Sections 12 and 13 for Non-Qualified Plans or Sections 14 and 15 for Qualified Plans. For all plans, complete Sections 16 to 20 as applicable.

☐ **FIXED PERIOD ANNUITY:**
**Benefit Period:** _____ Years and _____ Months
(Minimum of 5 Years and Maximum of 40 Years)*

*For **Qualified Plans** please refer to the instructions page to determine the Maximum Allowable IRS Guaranteed Period based on the age of the IRA Owner.

**Plan Type:**   ☐ **Non-Qualified**   ☐ **IRA**   ☐ **Inherited IRA**   ☐ **Roth IRA**   ☐ **Inherited Roth IRA**

**OPTIONAL FEATURE –** (Not available if the owner is under the age of 59½ when the Income Payments begin.)
**Payment to increase Annually by _____% (Select whole number percentage up to a maximum of 15%)**
This Option cannot be cancelled or modified after issue.
**Skip to Section 16 and complete Sections 16 to 20 as applicable.**

**12** **NON-QUALIFIED ANNUITY PLANS** *(Choose ONE Payment Plan below. For **Qualified Plans**, skip to Section 14.)*

| Single Life Plans | Joint Life Plans |
|---|---|
| ☐ Life Only | ☐ Life Only |
| ☐ Life With Cash Refund | ☐ Life With Cash Refund |
| ☐ Life With 25% of Premium Death Benefit | ☐ Life With 25% of Premium Death Benefit |
| ☐ Life With 50% of Premium Death Benefit | ☐ Life With 50% of Premium Death Benefit |
| ☑ Life With _13_ years guaranteed | ☐ Life With _____ years guaranteed |
| *(Enter number of whole years between 5 and 30)* | *(Enter number of whole years between 5 and 30)* |

**13** **OPTIONAL FEATURES FOR NON-QUALIFIED ANNUITIES** *(Only ONE option may be selected. For **Qualified Plan** Optional Feature, skip to Section 15.)*
**(Not available if the Owner is under age 59½ when the Income Payments begin. These options cannot be cancelled or modified after issue.)**
☐ Annual Increase Option (Inflation Adjustment) –
Payments will increase by: *(Select One)* ☐ 1%   ☐ 2%   ☐ 3%   ☐ 4%   ☐ 5%

☐ Income Enhancement Option – Under this option, no reduction to survivor income is allowed for Joint-Life plans.

☐ Changing Needs Option – Under this option, no reduction to survivor income is allowed for Joint-Life plans.
   ☐ Income increased by _____% (1% to 400%) of original amount on ____/____/____ (Income Adjustment Date)**
                                                                                                  *MM/DD/YYYY*
   ☐ Income reduced by _____% (1% to 50%) of original amount on ____/____/____ (Income Adjustment Date)**
                                                                                            *MM/DD/YYYY*

**\*\*Note:** The Income Adjustment Date may NOT change after the policy has been issued and must be at least three years after the Annuity Commencement Date.

**14** **QUALIFIED ANNUITY PLAN**
**Plan Type:**   ☐ IRA   ☐ Inherited IRA   ☐ Roth IRA   ☐ Inherited Roth IRA
*Choose ONE Payment Plan below.*

**Single Life Plans**

☐ Life Only
☐ Life With Cash Refund
☐ Life With _____ years guaranteed
   *(Enter number of whole years between 5 and 30)\**

**Joint Life Plans** *(Not available for Inherited IRA and Inherited Roth IRA)*

☐ Life Only
☐ Life With Cash Refund
☐ Life With _____ years guaranteed
   *(Enter number of whole years between 5 and 30)\**

***Single-Life or Joint-Life Plan with Guaranteed Period.** Please refer to the instructions page to determine the Maximum Allowable IRS Guaranteed Period based on the age of the IRA Owner.*

**15** **OPTIONAL FEATURE FOR QUALIFIED ANNUITIES**
**(Not available if the Owner is under age 59½ when the Income Payments begin. This option cannot be cancelled or modified after issue.)**
☐ Annual Increase Option (Inflation Adjustment) -
Payments will increase by: *(Select One)*   ☐ 1%   ☐ 2%   ☐ 3%   ☐ 4%   ☐ 5%

**16** **Please check here ☑ if you have selected a Life with Guaranteed Period Plan or Fixed Period Annuity and give permission to your Beneficiary(ies) to receive, in one sum, the present value of any Income Payments remaining after the Annuitant's death. (The Owner may change this election.)**

**17** **SUCCESSOR OWNER**
For **Non-Qualified** Plans, if the Owner and Annuitant are different, the Owner's estate is the default Successor Owner. If you wish to name the Annuitant as the Successor Owner, please check here ☐.

If you wish to choose a different Successor Owner, please use Section 18 to identify the Successor Owner, including name and Social Security or Tax I.D. number.

**Note:** For a Lifetime Income Annuity issued as a **Qualified Plan** with a Joint Annuitant, the Joint Annuitant, if living, will be the Successor Owner at the death of the IRA Owner.

**18** **ADDITIONAL INFORMATION:**

*10 DAY FREE LOOKED CONTRACT # 58 417 638*
*IN ORDER TO GUARANTEE LIFETIME INCOME FOR*
*Annuitant.*

**19 FRAUD AND DISCLOSURE STATEMENTS**

**Residents of jurisdictions other than the District of Columbia and Oregon:**
**Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. Penalties may include imprisonment, fines, or a denial of insurance benefits if a person provides false information.**

**Residents of the District of Columbia:**
**WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.**

**20 SIGNATURES (Read statement and sign below)**
**I/We agree that:**
(1) All of the answers to questions and statements in this application are true to the best of the knowledge and belief of those who made and recorded them. **(2) This contract will not become effective unless it is delivered to the Owner while the Annuitant(s) is/are living.** (3) Unless otherwise indicated below, the Owner of this contract is the Applicant. (4) Under penalties of perjury, the Taxpayer Identification Numbers provided on this application are certified to be correct.

Signed at _PRESCOTT_ _ARKANSAS_ _71857_ Date _2-23-2010_
▲ City                    State          Zip Code        (MM/DD/YYYY)

X _Barbara J. Brown Trustee_ X                    X
▲ Owner (Applicant)        Applicant (if other than Owner)        Joint Owner (if applicable)

X _Barbara J. Brown_                    X
▲ Annuitant Signature (if other than Owner)        Joint Annuitant (if applicable)

X _Lisa M. Cromwell_ X
▲ Agent's Signature        Countersigned by Licensed Resident Agent (if required)

_051051_        _267423_        _AR D13_
▲ Agent's Code Number    Agent's State License Number    General Office Name and Code Number

**THIS PAGE INTENTIONALLY LEFT BLANK**



**REQUIRED FORM**

## IMPORTANT NOTICE: REPLACEMENT OF LIFE INSURANCE OR ANNUITIES

**This document must be signed by the Applicant and the Producer, and a copy left with the Applicant.**

You are contemplating the purchase of a life insurance policy or annuity contract. In some cases the purchase may involve discontinuing or changing an existing policy or annuity contract. If so, a replacement is occurring. Financed purchases are also considered replacements.

A replacement occurs when a new policy or annuity contract is purchased and, in connection with the sale, you discontinue making premium payments on the existing policy or annuity contract, or an existing policy or annuity contract is surrendered, forfeited, assigned to the replacing insurer, or otherwise terminated or used in a financed purchase.

A financed purchase occurs when the purchase of a new life insurance policy involves the use of funds obtained by the withdrawal or surrender of or by borrowing some or all of the policy values, including accumulated dividends, of an existing policy, to pay all or part of any premium or payment due on the new policy. A financed purchase is a replacement.

You should carefully consider whether a replacement is in your best interest. You will pay acquisition costs and there may be surrender costs deducted from your policy or annuity contract. You may be able to make changes to your existing policy or annuity contract to meet your insurance needs at less cost. A financed purchase will reduce the value of your existing policy and may reduce the amount paid upon the death of the insured.

We want you to understand the effects of replacement before you make your purchase decision and ask that you answer the following questions and consider the questions on the reverse side of this form.

1. Do you own any existing life insurance policies or annuity contracts? (*If "Yes", complete questions 2, 3 and 4 below.* ☑ yes  ☐ no
*If "No", do not answer questions 2, 3 and 4.*)

2. Are you considering discontinuing making premium payments, surrendering, forfeiting, assigning to the insurer, ☐ yes  ☑ no
or otherwise terminating your existing policy or annuity contract?

3. Are you considering using funds from your existing policies or annuity contracts to pay premiums due on the new ☐ yes  ☑ no
policy or annuity contract?

4. Is the life insurance policy or annuity contract for which you are applying, to be the result of a 1035 exchange? ☐ yes  ☑ no

If you answered "Yes" to questions 2, 3, or 4, list each existing policy or annuity contract you are contemplating replacing. Also identify for each policy whether it will be replaced, used as a source of financing or replaced in conjunction with a 1035 exchange. (*If additional space is required, complete another form.*)

| Name of Insurance Company _____ | Policy or Annuity Contract #_____ |
| Name of Insured or Annuitant _____ | ☐ Replaced    ☐ 1035 Exchange<br>☐ Financed |

| Name of Insurance Company _____ | Policy or Annuity Contract #_____ |
| Name of Insured or Annuitant _____ | ☐ Replaced    ☐ 1035 Exchange<br>☐ Financed |

| Name of Insurance Company _____ | Policy or Annuity Contract #_____ |
| Name of Insured or Annuitant _____ | ☐ Replaced    ☐ 1035 Exchange<br>☐ Financed |

| Name of Insurance Company _____ | Policy or Annuity Contract #_____ |
| Name of Insured or Annuitant _____ | ☐ Replaced    ☐ 1035 Exchange<br>☐ Financed |

Make sure you know the facts. Contact your existing company or its producer for information about the old policy or annuity contract. At your request, the existing insurer must send you an in-force illustration, policy summary or available disclosure documents. Ask for and retain all sales material used by the producer in the sales presentation. Be sure that you are making an informed decision.

The existing policy(ies) or annuity contract(s) is/are being considered for replacement because_____

_____

_____

I do not want this notice read aloud to me. **B.B.** __ (*Applicant must initial only if they do not want the notice read aloud.*)

**I certify that the responses herein are, to the best of my knowledge, accurate:**

| Applicant's Signature | Applicant's Name (Printed) | Date |
| x _Barbara J. Brown_ Trustee | X _BARBARA J. Brown_ | _9/23/2010_ |

Producer Acknowledgement: By reason of this transaction, is replacement involved? ☐ yes  ☑ no

| Producer's Signature | Producer's Name (Printed) | Date |
| x _Gina M. Cromwell_ | x _GINA M. CROMWELL_ | _9/23/10_ |

"OFFICE"<br>Stamp Date<br>Received Here

22190.100

---

## IMPORTANT NOTICE: REPLACEMENT OF LIFE INSURANCE OR ANNUITIES
### Important considerations if you are contemplating replacing your existing policy or annuity contract

A replacement may not be in your best interest, or your decision could be a good one. You should make a careful comparison of the costs and benefits of your existing policy or annuity contract and the proposed policy or annuity contract. One way to do this is to ask the company or producer that sold you your existing policy or annuity contract to provide you with information concerning your existing policy or annuity contract.

This may include an illustration of how your existing policy or annuity contract is working now and how it would perform in the future based on certain assumptions. Illustrations should not, however, be used as a sole basis to compare policies or annuity contracts. You should discuss the following with your producer to determine whether replacement or financing your purchase makes sense:

| Premiums | Policy Values |
|---|---|
| • Are they affordable? <br><br> • Could they change? <br><br> • You're older—are premiums higher for the proposed new policy? <br><br> • How long will you have to pay premiums on the new policy? On the old policy? | • New policies usually take longer to build cash values and to pay dividends. <br><br> • Acquisition costs for the old policy may have been paid, you will incur costs for the new one. <br><br> • What surrender charges do the policies have? <br><br> • What expense and sales charges will you pay on the new policy? <br><br> • Does the new policy provide more insurance coverage? |

| Insurability | If you are keeping the old policy as well as the new policy |
|---|---|
| • If your health has changed since you bought your old policy, the new one could cost you more, or you could be turned down. <br><br> • You may need a medical exam for a new policy. <br><br> • Claims on most new policies for up to the first two years can be denied based on inaccurate statements. <br><br> • Suicide limitations may begin anew on the new coverage. | • How are premiums for both policies being paid? <br><br> • How will the premiums on your existing policy be affected? <br><br> • Will a loan be deducted from death benefits? <br><br> • What values from the old policy are being used to pay premiums? |

| If you are surrendering an annuity or interest sensitive life product | Other issues to consider for all transactions |
|---|---|
| • Will you pay surrender charges on your old annuity contract? <br><br> • What are the interest rate guarantees for the new annuity contract? <br><br> • Have you compared the contract charges or other policy expenses? | • What are the tax consequences of buying the new policy? <br><br> • Is this a tax-free exchange? (See your tax advisor) <br><br> • Is there a benefit from favorable "grandfathered" treatment of the old policy under the federal tax code? <br><br> • Will the existing insurer be willing to modify the old policy? <br><br> • How does the quality and financial stability of the new company compare with your existing company? |

New York Life Insurance Company • 51 Madison Avenue • New York, NY 10010
New York Life Insurance and Annuity Corporation (A Delaware Corporation) • 51 Madison Avenue • New York, NY 10010
NYLIFE Insurance Company of Arizona (a subsidiary of New York Life) 4343 North Scottsdale Rd., Suite 220, Scottsdale, AZ 85251 • (not licensed in every state)

22190.100


**Annuities**

## IDENTIFICATION AND VERIFICATION FORM

(To be completed only by the Agent or Registered Representative*)
**Please read the instructions on page 2 before completing this form.**

Under the regulations set forth in the USA PATRIOT Act, the Company is required to affirm that the Proposed Owner presented acceptable proof of identification at the time of the application. Similarly, we are required to identify a third party payer. **You must complete a separate form for each Proposed Owner.**

**Is the payment for this contract coming from the owner, insured, or annuitant?** ☑Yes   ☐ No

**If Yes, please complete Sections 1, 3 and 4.**

**If No, please complete Sections 1 – 4. Third party payer information must be entered in Section 2.**

### 1. PROPOSED OWNER IDENTIFICATION

Proposed Owner Name: _BARBARA JEAN BROWN_   Date of Birth: (if applicable _8/13/2010 TRUST_
_LIVING TRUST_

Address: _118 RIDGEWOOD RD_   City: _PRESCOTT_

State: _ARKANSAS_   Zip: _71857_   Country: _USA_

Social Security Number or Taxpayer Identification Number (TIN): ▮▮▮▮-_2683_

Check here if TIN pending at time of application ☐ **   If yes, date applied for _____

**For Individuals** (i.e. natural persons): The Agent/Registered Representative* **_must_** verify the identity of the Proposed Owner by reviewing and inspecting **_one_** of the following <u>original</u> (not a photocopy) documents:

1) Valid Driver's License or State Issued Photo ID Number:_____ State:_____

   Expiration Date: _____ Circle Country of Issuance:  US   Canada   Mexico

2) Passport Number:_____ Country of Issuance: _____

   Expiration Date: _____

**For Corporations, Businesses, Partnerships and Trusts:** The Agent/Registered Representative* **_must_** verify the identity of the Proposed Owner by reviewing and inspecting the <u>original</u> (not a photocopy) certified articles of incorporation, a government-issued business license, a partnership agreement or trust agreement.

Document reviewed: _TRUST_   Date on Document: _3/12/2010_

### 2. 3ʳᵈ PARTY PAYER INFORMATION

A 3ʳᵈ party payer is someone other than the designated owner, insured, or annuitant of the policy. If payment is coming from a 3ʳᵈ party, complete the information below. If this information is not provided, the application cannot be processed.

Name:_____
|        First Name        |        Middle Initial        |        Last Name        |

Address (Street, City, State, and Zip Code REQUIRED. **P.O. Box not acceptable**):_____

_____

Relationship to Policyowner: _____   Date of Birth: _____

### 3. MILITARY SERVICE NOTIFICATION

Is the Applicant (or Owner, if other than Applicant) an active duty Service Member of the United States Armed Forces or a dependent family member of a Service Member? ☐ Yes   ☑No  **(In FL, NV, VA, or VT, answer "Yes" even if a Service Member is not on active duty. If "Yes", Notice to Military Service Members, form # 22774, is required.)**

### 4. SIGNATURE

My signature below attests to the fact that: (i) all information provided on this form is true and correct to the best of my knowledge and belief; (ii) I have reviewed the identifying document(s) described above, that the document(s) appeared to be genuine and original, and that the Proposed Owner described above appears to be the person or entity described in the identifying document(s).

_05105_   _D13_   x _Lisa M. Cromwell_   _9/23/10_
Agent Code   G.O. Code   Agent/Registered Representative Signature*   Date

**\* The Licensed Service Associate (LSA) may complete and sign this document in place of the Agent or Registered Representative.**
**\*\* NYLIFE Securities will not accept an application without a Social Security Number or Taxpayer Identification Number (TIN).**

# INSTRUCTIONS

Please read the following Instructions before completing the Identification and Verification Form (22502).
**Return the original, completed form with the application.**
Retain a copy of this form in your Client folder for possible future business opportunities.
You must submit a separate form for each Proposed Owner.

### Section 1. Proposed Owner Identification

1. Provide the name, date of birth and address of the Proposed Owner. Please keep in mind,

   - **The Proposed Owner's name and date of birth must be entered on this form**. If you have already supplied the Proposed Owner's address and/or TIN on the application, you may write "See App." next to these items.
   - If neither a business nor residential address is available, provide an Army P.O. or Fleet P.O. Box. **All other Post Office Boxes are not acceptable**. Otherwise, provide residential or business street address of a next of kin or another contract individual.
   - For corporations, businesses, partnerships and trusts, (persons other than individuals), provide the street address of a principal place of business, or other physical location.

2. Provide the Social Security Number or Taxpayer Identification Number (TIN) of the Proposed Owner. If at the time of the application the Proposed Owner has applied for but not yet received a TIN, please indicate the date on which Proposed Owner applied for TIN.

   For non-U.S. persons (an individual who is not a U.S. citizen) where a TIN is not available, an original, unexpired passport number, country of issuance and expiration date is acceptable.

   For citizens of Canada and Mexico, an original, unexpired government-issued photo identification may also be accepted where a TIN is not available.

   **A Driver's License is NOT an acceptable substitute for the TIN identification requirement.**

3. For citizens of the United States, Canada and Mexico: You **_must_** verify the identity of the Proposed Owner by reviewing and inspecting one of the following original (not a photocopy) documents:

   a) unexpired passport

   b) unexpired Driver's License

   c) government-issued photo identification

   For all other citizens: You **_must_** verify the identity of the Proposed Owner by reviewing and inspecting an original (not a photocopy) unexpired passport.

   For Corporations, Businesses, Partnerships and Trusts: You **_must_** verify the identity of the Proposed Owner by reviewing and inspecting one of the following original (not photocopy) articles of incorporation, a government-issued business license, a partnership agreement or trust agreement. You must identify in writing the document that was reviewed and the date of that document.

### Section 2. 3ʳᵈ Party Payer Information

1. **Complete 3ʳᵈ Party Payer Information** if payment is coming from other than the policyowner, insured, or annuitant. All data is required.

### Section 3. Military Service Notification.

1. **Complete Notice to Military Service Members, form # 22774** if the Applicant (or Owner, if other than Applicant) is an active duty Service Member of the United States Armed Forces, or a dependent family member of a Service Member. **In FL, NV, VA, or VT, complete this form even if a Service Member is not on active duty.**

### Section 4. Signature

1. Provide your Agent or Licensed Service Associate (LSA) number along with the G.O. Code

2. Sign and date the document.

   Your signature is required to attest to the fact that all information provided on the form is true and correct to the best of your knowledge and belief.

**New York Life Insurance and Annuity Corporation**
**Lifetime Income Annuity and Fixed Period Annuity**
**Client Profile and Policy Disclosure Form**

 REQUIRED FORM

## 1. Owner Information

| Owner Name (First, M.I., Last) | Date of Birth | | | SS # or Tax ID # |
|---|---|---|---|---|
| | Month | Day | Year | |
| *BARBARA JEAN BROWN Living Trust* | 3 | 12 | 2010 | 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 |

### Owner Profile (Information should be provided for the owner and the owner's spouse or domestic partner.)

**1. What is your current annual income?**
Income: Include income from all sources, before taxes.           $ *203,235.00*

**2. What is your estimated current federal income tax bracket?**     ❏ 0 - 10%  ❏ 11 - 28%  ☑ Over 28%

**3. What is your estimated current net worth?**
Net Worth is the value of your assets minus your liabilities. For purposes of this
application: Do not include your primary residence as an asset. Do not include
mortgages on your primary residence as a liability.           $ *1,866,043.00*

**4. What is your estimated current liquid net worth?**
Liquid Net Worth is your net worth minus assets that may not be easily converted     $ *245,643.00*
to cash such as the value of real estate, personal property, automobile(s), or business
interests. For purposes of this application: Include only cash assets or assets easily
convertible to cash. While this may include retirement assets, you should consider
any applicable tax penalties or other charges, fees or restrictions before including
these types of assets. **(Your estimated liquid net worth may not be higher than
your estimated net worth.)**

**5. Which of the following assets do you currently own?**
(Check each box that applies)

☑ Bank Accounts/CDs        ☑ Mutual Funds
☑ Fixed Life Insurance*    ☑ Marketable Securities
❏ Variable Life Insurance  ☑ 401(k), 403(b), Keogh, etc.
☑ Fixed Annuities          ☑ IRAs
☑ Variable Annuities

*Do not include term insurance.

## 2. Joint Owner Information

| Joint Owner Name (First, M.I., Last) | Date of Birth | | | SS # or Tax ID # |
|---|---|---|---|---|
| | Month | Day | Year | |
| | | | | |

Relationship to Owner     ❏ Spouse     ❏ Other: _____

### Joint Owner Profile (Not required if the joint owner is the owner's spouse or domestic partner. Information should be provided for all other joint owners.)

**1. What is your current annual income?**
Income: Include income from all sources, before taxes.           $ _____

**2. What is your estimated current federal income tax bracket?**     ❏ 0 - 10%  ❏ 11 - 28%  ❏ Over 28%

**3. What is your estimated current net worth?**
Net Worth is the value of your assets minus your liabilities. For purposes of this     $ _____
application: Do not include your primary residence as an asset. Do not include
mortgages on your primary residence as a liability.

**4. What is your estimated current liquid net worth?**
Liquid Net Worth is your net worth minus assets that may not be easily converted     $ _____
to cash such as the value of real estate, personal property, automobile(s), or business
interests. For purposes of this application: Include only cash assets or assets easily
convertible to cash. While this may include retirement assets, you should consider
any applicable tax penalties or other charges, fees or restrictions before including
these types of assets. **(Your estimated liquid net worth may not be higher than
your estimated net worth.)**

**5. Which of the following assets do you currently own?**
(Check each box that applies)

❏ Bank Accounts/CDs        ❏ Mutual Funds
❏ Fixed Life Insurance*    ❏ Marketable Securities
❏ Variable Life Insurance  ❏ 401(k), 403(b), Keogh, etc.
❏ Fixed Annuities          ❏ IRAs
❏ Variable Annuities

*Do not include term insurance.

## 3. What Is The Owner's Primary Objective For Purchasing This Annuity?

**Lifetime Income Annuities**
☑ Immediate guaranteed lifetime income
☐ Other: _____

**Fixed Period Annuities**
☐ Immediate guaranteed income for a fixed period of years
☐ Other: _____

## 4. Source of Funds

(a) Are you using the proceeds from the redemption/surrender/sale of existing life insurance, annuities, mutual funds, or other securities to pay the premium on the proposed annuity? ☐ Yes ☐ No

(b) Please check all the applicable boxes below to identify the sources of funds used for this purchase and review the disclosure in section 5 or 6.

☐ Checking/Savings
☐ Income
☐ Sale of business or property
☐ Death Benefit Proceeds
☐ Inheritance/Gift

☐ Life Insurance*
☐ Annuities*
☑ Mutual Funds*
☐ Stocks or Bonds*
☐ Pension or Retirement Accounts (401(k), 403(b), TSA)*
☐ Other _____

***If you are using the proceeds from the redemption, surrender or liquidation of existing Life Insurance, Annuities, Mutual Funds, Stocks or Bonds to fund this investment, or if your Pension Plan or Retirement Accounts are held in one of these products, please complete the additional details below.** (You should consult with your insurance, tax or legal advisor to determine the impact of your existing product as a source of funds.)

☐ **Life Insurance** There may be a surrender charge on the life insurance policy from which I/we have taken a withdrawal or loan or that I/we have terminated or reduced. The surrender of a life insurance policy may result in taxable income. In addition, as a result of this withdrawal or loan, the protection afforded by the life insurance policy may be terminated or reduced.

| Issuing Company | Type | Policy Number | Purchase Date | Estimated Net Surrender Value | Estimated Surrender Charge |
|---|---|---|---|---|---|
| | ☐ Variable ☐ Fixed | | | $ | $ |
| | ☐ Variable ☐ Fixed | | | $ | $ |
| | ☐ Variable ☐ Fixed | | | $ | $ |

☐ **Annuities** There may be a surrender charge on the annuity being surrendered. The surrender of an annuity contract may result in taxable income. In addition, if the Owner is under age 59½, I may incur an additional 10% IRS-imposed penalty on any earnings taken in a distribution. (Not applicable to certain exchanges under Section 1035 of the Internal Revenue Code, Rollovers, or Transfers of existing annuities.)

| Issuing Company | Type | Policy Number | Purchase Date | Estimated Net Surrender Value | Estimated Surrender Charge |
|---|---|---|---|---|---|
| | ☐ Variable ☐ Fixed | | | $ | $ |
| | ☐ Variable ☐ Fixed | | | $ | $ |
| | ☐ Variable ☐ Fixed | | | $ | $ |

☑ **Mutual Funds** I am liquidating mutual fund shares to fund this purchase. The Purchase Date, referenced below, is the most recent Trade Date on which shares were purchased. I may be assessed a sales charge on the mutual fund redemption if the shares I am selling are subject to a back-end load (Contingent Deferred Sales Charge).

| Fund Family | Share Class | Account Number | Most Recent Purchase Date | Estimated Net Redemption Value | Estimated CDSC Amount |
|---|---|---|---|---|---|
| CARMAX INC ☑A | | | 10.1.02 | 5458.— | ∅ |
| CAP w LD. GROWTH INC | ☑A ☐B ☐C ☐No Load ☐Other ___ | | 8.14.07 | $ 13122.— | $ ∅ |
| OPP. ROTH NATMUN | ☑A ☐B ☐C ☐No Load ☐Other ___ | | 5.4.04 | $ 36143.— | $ ∅ |
| AM CAP. LIMIT | ☑A ☐B ☐C ☐No Load ☐Other ___ | | 12.14.04 | $ 442l.— | $ ∅ |
| SONIC CORP. ☑A | | | 3.17.98 | 34760.— | ∅ |

☐ **Stocks or Bonds** I am selling Stocks or Bonds to fund this purchase. This may result in taxable income.

| Issuing Company | Account Number | Purchase Date | Estimated Redemption Amount |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

18821 (05/2010)

(Page 14 of 130)

## 5. Lifetime Income Annuity Disclosures

I am applying to the New York Life Insurance and Annuity Corporation for a Lifetime Income Annuity, a single-premium immediate annuity that provides income payments for the life or joint lives of the Annuitant(s) in return for a one-time premium payment. I understand that the purchase of this annuity is irrevocable after the applicable free look period, and that I can never surrender or exchange the annuity because it has no cash value. I also understand that the Lifetime Income Annuity is available with various payout options, the material features of which are discussed below. By checking the box next to the payout option I have chosen, I am confirming that I have read the descriptions of the payout options on this disclosure form and that the option I have chosen is suitable for my financial needs and situation, including my liquidity needs.

I also understand that if the annuity is based on the life of two Annuitants, income payments will continue as long as either Annuitant is living, and that references below to the Annuitant mean both Annuitants.

I am applying for a Lifetime Income Annuity with the following payout option *(Note: you must check one – and only one – box and then **initial next to the checked box**)*:

☐ ____ **Life Only Income** provides income payments only as long as the Annuitant is alive. There will be no payments after the death of the Annuitant. I understand and agree that:
1. this payout option provides larger income payments than those available under other payout options because there are no payments of any kind after the death of the Annuitant, and
2. when the Annuitant dies, no matter how soon after the issuance of the annuity,
- there will be no more annuity income payments to any person, or to the estate of the annuity owner or Annuitant;
- no payments of any kind, including a death benefit, will be payable to any person, or the estate of the annuity owner or Annuitant; and
- no part of the single premium paid for this annuity will be refunded under any circumstances, even if the income benefits paid do not equal or exceed the single premium paid.

☑ *D.B.* **Life Income With Guaranteed Period** provides income payments for the longer of either the guaranteed period selected, or the life of the Annuitant. I understand and agree that:
1. the longer the guaranteed period I select, the smaller the income payments will be;
2. the sum of income payments received may be less than the single premium paid for this annuity depending on (a) when the Annuitant dies, (b) the age and gender of the Annuitant when the annuity is issued, and (c) the length of guaranteed period; and
3. if the Annuitant dies before the guaranteed period ends, annuity income payments will be paid to the beneficiary(ies) for the remainder of the guaranteed period only; and if the Annuitant dies after the guaranteed period ends, there will be no more annuity income payments or payments of any kind, including a death benefit, to any person, or the estate of the annuity owner or Annuitant.

☐ ____ **Life Income With Cash Refund** provides annuity income payments for as long as the Annuitant lives. I understand and agree that when the Annuitant dies:
1. if the sum of all annuity income payments made is less than the single premium payment paid for this annuity, my beneficiary(ies) will receive the difference in a lump sum; and
2. if the sum of all annuity income payments made is more than the single premium paid for this annuity, there will be no other annuity income payments or payments of any kind, including a death benefit, to any person, or the estate of the annuity owner or Annuitant.

☐ ____ **Life Income With Percent of Premium Death Benefit** provides both an income payment for as long as the Annuitant lives, and a lump sum death benefit for my beneficiary(ies). I understand and agree that:
1. the larger the lump sum death benefit I choose, the smaller the income payments will be;
2. depending on when the Annuitant dies, the sum of income payments and the lump sum death benefit may be less than the single premium paid for this annuity; and
3. when the Annuitant dies,
- there will be no more annuity income payments to any person, or the estate of the annuity owner or Annuitant, and
- the percentage of my premium payment (25% or 50%) that I choose at issue, will be paid to my beneficiary(ies) in a single sum as a death benefit.

(Page 16 of 130)

## 6. Fixed Period Annuity Disclosures

☐ I am applying to the New York Life Insurance and Annuity Corporation for a Fixed Period Income Annuity, a single-premium immediate annuity that provides income payments for a fixed number of years in return for a one-time premium payment. I understand that the purchase of this annuity is irrevocable after the applicable free look period, and that I can never surrender or exchange the annuity because it has no cash value. I am confirming that I understand the payout schedule and that it is suitable for my financial needs and situation.

## 7. Lifetime Income Annuity And Fixed Period Annuity Disclosures

Like other financial and insurance products, an immediate annuity may be deemed to be a countable asset by Medicaid if you apply for Medicaid assistance for nursing home or other long-term care services. You should consult an attorney to understand how Medicaid may treat this annuity for purposes of Medicaid eligibility.

## 8. State Required Acknowledgements/Disclosures

**Idaho Residents:** If the Owner(s) is age 65 or older **and** has decided to purchase a different annuity than was recommended, the Owner(s) must acknowledge the following by checking the box below and signing this form.

☐ I (We) have elected to purchase an annuity that is different from the annuity recommended to me.

**New Jersey Residents:** The sale and suitability of annuities is regulated by the New Jersey Department of Banking and Insurance. You may obtain assistance from the Department by contacting 1-609-292-7272 or 1-800-446-7467, or by visiting the Department's website at www.njdobi.org.

## 9. Signatures

I have read and understood each of the Disclosures marked above. I agree that all of the statements in this Client Profile and Policy Disclosure Form are true to the best of the knowledge and belief of those who made and recorded them.

| *Barbara J Brown* | *9-23-2010* | |
| --- | --- | --- |
| Owner Signature | Date signed | Joint Owner Signature |
| *Trustee* | | |

*Agents must have reasonable grounds for believing that any recommendation to buy, sell, or exchange an insurance or investment product is suitable for the customer(s). This determination is based on the facts disclosed by the customer.*

I believe this is a suitable transaction based on the information provided by the Owner(s). A copy of this form has been left with the Applicant/Owner.

| *Sara M. Cromwell* | *9/23/10* |
| --- | --- |
| Agent Signature | Date signed |

18821 (05/2010)

(Page 18 of 130)

**AGENT'S STATEMENT**

Not part of the Application

## SECTION A

| | | Yes | No |
|---|---|---|---|
| 1. As far as you know, does anyone intend to make a loan, now or in the future, against the cash value of any policy presently in force, because of the purchase of the policy applied for? If "Yes," give details in Question 8 below. ................................................................ | | ☐ | ☑ |
| 2. (a) By reason of this transaction, is replacement involved? .......................................... | | ☐ | ☑ |
| (b) Does the applicant have any existing life insurance or annuity policies? ...................... | | ☑ | ☐ |

3. How long have you known the Annuitant? _6 yrs_

4. Is the Annuitant a Relative? ☐ Yes ☑ No   If Yes, Relationship _____

## SECTION B – COMPLETE IF TRUST IS APPLICANT OR OWNER

5. Date of Trust _3/12/2010_

6. Date of last amendment, if any _3/12/2010_

7. Certified copy of Trust and latest amendment, if any  ☐ will be forwarded ☐ furnished with policy no. _____

8. Remarks, Additional Details: _____

## SECTION C

### COMPENSATION

Are you requesting advance commissions? *(If Applicable)*  ☑ Yes ☐ No

Only one option is allowed per policy. **You must choose Option 3 to count for L&A Expense Allowance and the trigger for the Life Persistency Bonus.**

9. Compensation Option selected:

| A. Lifetime Income Annuity only: | ☐ Option 1 | ☐ Option 2 | ☑ Option 3 | ☐ Option 4 |
|---|---|---|---|---|
| | *(FYC Only)* | *(FYC + Trail)* | *(FYC + Expense Allowance)* | *(Trail Only)* |

B. For Fixed Period Annuity only:  ☐ Option 3 *(FYC + Expense Allowance)*
**Options 1, 2, and 4 are not available for this product.**

**Remember that you are not allowed to change this option after this policy is issued.**

### DECLARATION ("I" refers to the Soliciting Agent)

I declare that:

(a) The application was secured by me personally, and that I have no understanding or agreement with any other person, directly or indirectly, as to commissions or compensation on any policy applied for, except as may be specified below; and

(b) I have not paid or allowed, and I agree that I will not hereafter pay or allow, either directly or indirectly, any compensation or commission other than below, or any rebate or premium in any manner whatsoever to the Applicant or to any other person.

(c) I have given my client a copy of the New York Life Privacy Notice.

(d) I have used only company approved sales material in connection with this application and copies of all sales material used were left with the applicant.

(e) I have asked each question in the parts of the application for which I am responsible exactly as set forth and recorded the answers exactly as made to me. All necessary signatures were obtained in my presence.

THE PREMIUM COLLECTED, IF ANY, IS ATTACHED TO THIS APPLICATION

Agent(s) sharing commission

| _Gina M. Cromwell_ | _051051_ | _100_ | _Gina M. Cromwell_ | _9/23/10_ |
|---|---|---|---|---|
| Print Agent's Name | Agent's No. | Share % | Signature (Soliciting Agent) | Date |

| | | | | |
|---|---|---|---|---|
| Print Agent's Name | Agent's No. | Share % | Signature (Optional) | |

| | | | | |
|---|---|---|---|---|
| Print Agent's Name | Agent's No. | Share % | Signature (Optional) | |

### REMEMBER TO:

☐ **FOR LIFETIME INCOME ANNUITY, ATTACH COPY OF PROOF OF AGE FOR EACH ANNUITANT** – REFER TO THE REQUIRED FORMS FOR LIFETIME INCOME ANNUITIES AND FIXED PERIOD ANNUITIES SECTION FOR ACCEPTABLE FORMS OF ID.

☐ FOR THE LIFETIME INCOME ANNUITY COMPLETE SECTIONS 12 AND 13 FOR NON-QUALIFIED PLANS **OR** SECTIONS 14 AND 15 FOR QUALIFIED PLANS.

☐ ENSURE THE CLIENT AND AGENT EACH SIGN SECTION 20 IN ALL NECESSARY PLACES. PLEASE PAY SPECIAL ATTENTION IF THERE IS A JOINT OWNER AND / OR JOINT ANNUITANT.

☐ ENSURE THE AGENT COMPLETES AND SIGNS THE AGENT'S STATEMENT.

☐ MAKE CHECKS PAYABLE TO NYLIAC.

18734 (03/2010)

**THIS PAGE INTENTIONALLY LEFT BLANK**

**AGENT'S STATEMENT**

Not part of the Application

REQUIRED FORM

## SECTION A

| | | Yes | No |
|---|---|---|---|
| 1. | As far as you know, does anyone intend to make a loan, now or in the future, against the cash value of any policy presently in force, because of the purchase of the policy applied for? If "Yes," give details in Question 7 below .......................... | ☐ | ☑ |

2. Is the Annuitant a Relative? ☐ Yes ☑ No   If Yes, Relationship _____

## SECTION B – COMPLETE IF TRUST IS APPLICANT OR OWNER

3. Date of Trust _3/12/10_   4. Date of last amendment, if any _3/12/10_   5. State in which trust was executed: _AR_

6. If the Owner is a grantor trust, please answer the following questions:
   a. Is the Trust a grantor trust for federal income tax purposes? (In general, a grantor trust is a trust whose income is taxable directly to the grantor/settlor of the trust.)
   ☐ Yes. Continue to Question b.   ☑ No
   b. Is the grantor(s) of the trust an individual?
   ☑ Yes. Continue to Question c.   ☐ No
   c. Please provide us with the following information regarding the individual grantor(s) of the trust. (If more than one grantor, please provide each additional grantor's information in Question 7, Remarks, Additional Details below.)

   Name: _BARBARA JEAN BROWN_   ☐ Male ☑ Female  Date of Birth: ▓▓▓▓**931** TIN: ▓▓▓**2683**
   _(mm/dd/yyyy)_

   Address _118 RIDGEWOOD RD_  _PRESCOTT_  _ARKANSAS_  _71857_
   Street        City        State    Zip Code

*Please note that: (1) the executor(trix) of the grantor's estate must notify us upon the death of any individual grantor; and (2) federal income tax laws generally require that we pay the death benefit under this contract upon the death of any individual grantor of a grantor trust.*

7. Remarks, Additional Details: _____

## SECTION C

**COMPENSATION**

Are you requesting advance commissions? *(If Applicable)* ☑ Yes ☐ No
Only one option is allowed per policy. **You must choose Option 3 to count for L&A Expense Allowance and the trigger for the Life Persistency Bonus.**
   Compensation Option selected: ☐ Option 1  ☐ Option 2  ☑ Option 3
   *(FYC Only)*   *(FYC + Trail)*   *(FYC + Expense Allowance + Annuity Persistency Bonus Plan)*
   **Remember that you are not allowed to change this option after this policy is issued.**

**DECLARATION**

I declare that:
(a) The application was secured by me personally, and that I have no understanding or agreement with any other person, directly or indirectly, as to commissions or compensation on any policy applied for, except as may be specified below; and
(b) I have not paid or allowed, and I agree that I will not hereafter pay or allow, either directly or indirectly, any compensation or commission other than below, or any rebate or premium in any manner whatsoever to the Applicant or to any other person.
(c) I have given my client a copy of the New York Life Privacy Notice.
(d) I have used only company approved sales material in connection with the application; and copies of all sales material used were left with the applicant.
(e) I have asked each question in the parts of the application for which I am responsible exactly as set forth and recorded the answers exactly as made to me. All necessary signatures were obtained in my presence.
THE PREMIUM COLLECTED, IF ANY, IS ATTACHED TO THIS APPLICATION

Agent(s) sharing commission

| _GINA M. CROMWELL_ | _05105I_ | _100_ | _Gina M. Cromwell_ | _9/23/10_ |
|---|---|---|---|---|
| Print Agent's Name | Agent's No. | Share % | Signature (Soliciting Agent) | Date |
| | | | | |
| Print Agent's Name | Agent's No. | Share % | Signature (Optional) | |
| | | | | |
| Print Agent's Name | Agent's No. | Share % | Signature (Optional) | |

18544A (09/2010)



Annuities

**NEW YORK LIFE INSURANCE COMPANY**
**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION**

## Direct Deposit Authorization

To have your payments sent directly to your bank account, complete this form and attach it to your application.

Immediate Annuity Policy Number (If known) _____

| | |
|---|---|
| Name of Financial Institution and Branch Name (if any) | _____ |
| Complete Address of Financial Institution | _____ |
| | _____ |
| Routing Number of Financial Institution | _____ |
| Account Number | _____ |
| Accountholder's Name | _____ |

Please Check One: ☐ Checking  ☐ Savings
(If the payments are to be deposited into a checking account, please attach a voided specimen check)

Please Note: The accountholder of the bank account must be an Owner of the Immediate Annuity or the Payee if other than an Owner. If the financial institution is a member of the Automatic Clearing House (ACH), the payments will be processed VIA Electronic Funds Transfer (EFT).

_____          _____
Policyowner's Signature                                    Date

Attach to the application, or

Mail to:
New York Life Insurance Company
(Name and Address of Applicable Service Center)

18555 (8/05)

**THIS PAGE INTENTIONALLY LEFT BLANK**

# ARKANSAS LIFE INSURANCE AND ANNUITY REPLACEMENT COMPARISON

| EXISTING LIFE POLICY OR ANNUITY CONTRACT | PROPOSED LIFE POLICY OR ANNUITY CONTRACT |
|---|---|
| **Existing Insurer Name** ☐ New York Life Insurance Company  ☐ New York Life Insurance and Annuity Corporation  ☐ NYLIFE Insurance Company of Arizona | ☐ New York Life Insurance Company  ☐ New York Life Insurance and Annuity Corporation  ☐ NYLIFE Insurance Company of Arizona |
| **Owner Name** | **Owner Name** |
| **Annuitant(s) or Insured(s) Name** *(if different from owner)* | **Annuitant(s) or Insured(s) Name** *(if different from owner)* |

## PRODUCT TYPE *(complete all applicable information)*

| | |
|---|---|
| ☐ Deferred Fixed Annuity  ☐ Deferred Variable Annuity  ☐ Deferred Indexed Annuity  ☐ Immediate Annuity | ☐ Deferred Fixed Annuity  ☐ Deferred Variable Annuity  ☐ Immediate Annuity |
| ☐ Whole Life  ☐ Universal Life  ☐ Term Life  ☐ Variable Life  ☐ Indexed Life  ☐ Endowment | ☐ Whole Life  ☐ Universal Life  ☐ Term Life  ☐ Variable Life |
| **Product Name** | **Product Name** |
| **Contract/Policy #** | **Application #** |

## PRODUCT FEATURES *(complete all applicable information)*

| | |
|---|---|
| **Annualized Premium Amount $** | **Proposed Annualized Premium Amount $** |
| **Current Contract/Policy Value $** | **Proposed Contract/Policy Value $** |
| **Current Surrender Value $** | **Proposed Surrender Value $** |
| **Death Benefit/Face Amount $** | **Proposed Death Benefit/Face Amount $** |
| **Current Interest Rate & Guarantee Period** | **Current Interest Rate & Guarantee Period** |
| **Guaranteed Minimum Accumulation/Interest Rate** | **Guaranteed Minimum Accumulation/Interest Rate** |
| **Surrender Charge Period Years Remaining** | **Surrender Charge Period In Years** |

### Surrender Charge Percentage By Year

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

### Surrender Charge Percentage by Year

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | |
|---|---|
| **Surrender Charge Free Withdrawals available? Yes ☐ No ☐** | **Surrender Charge Free Withdrawals available? Yes ☐ No ☐** |
| **If Yes, what Percentage? _____ %** | **If Yes, what Percentage? _____ %** |
| **List Withdrawal Options:** | **Withdrawal Options (check all that apply):** ☐ Surrender Charge Free Window  ☐ Annuitization  ☐ Required Minimum Distributions  ☐ Death Benefit |
| **Other Significant Policy or Contract Provisions** | **Other Significant Policy or Contract Provisions** |

## FOR ANNUITIES ONLY *(complete all applicable information)*

| | |
|---|---|
| **Initial Bonus Percentage or Amount** | **Initial Bonus Percentage or Amount** |
| **Potential Loss of Bonus if Annuity is Exchanged, Surrendered, or Funds Withdrawn?     Yes ☐ No ☐** | **Potential Loss of Bonus if Annuity is Exchanged, Surrendered, or Funds Withdrawn?     Yes ☐ No ☐** |
| **Annuity Settlement /Payout Option(s) $** | **Annuity Settlement /Payout Option(s) $** |

## SUBACCOUNT CHOICES (VARIABLE PRODUCTS ONLY)

| | |
|---|---|
| **Number of subaccounts _____ Can you make changes to subaccount allocations?   Yes ☐ No ☐** | **Number of subaccounts _____ Can you make changes to subaccount allocations?   Yes ☐ No ☐** |

I have received a copy of this completed form and have reviewed the information with my agent.

_____   _____   _____   _____
Owner                                                       Date        Joint Owner                          Date

I certify that the above provisions, and any other significant provisions, of the existing policy or contract and the proposed policy or contract were discussed with the applicant(s).   _____   _____
                                                                                                  Producer Signature                     Date

22853 (10/2009)

## Arkansas Life Insurance and Annuity Replacement Comparison Form Instructions – Form 22853

**NOTE: This form is not required for purchase of a Guaranteed Lifetime Income Annuity or Fixed Period Annuity where the purchase proceeds are from any existing annuity. If the proceeds are from a life insurance policy, the form must be completed.**

This form must be completed at or before time of application. **Both you and the owner of the new policy must sign the form.** A copy must be left with the owner and a copy submitted with the application. It is also recommended that you keep a copy for your records. If more than one product is being replaced or more than one new product is being purchased, complete a separate form for each additional policy.

Complete all applicable sections for both the existing and proposed policies and contracts. It is recommended that you request current information for the existing life insurance policy or annuity contract from the replaced company to ensure accurate disclosure about the proposed replacement. You may also obtain the information from the customer, an in-force illustration, an annual statement, policy or other contract summary document. If any information is unavailable or unknown, you may indicate Unknown.

### General Information
**(Complete all applicable information for the existing policy or contract and the proposed new policy or contract).**
- **Company Name** – write in the existing product company name or check the applicable New York Life Company for the existing/proposed coverage.
- **Owner Name** – write in the owner(s) name(s).
- **Annuitant(s) or Insured(s)** – write in the name(s) if different from the owner(s).
- **Product Type** – check the applicable product types.
- **Product Name** – provide the name of the product (e.g. New York Life Premier Variable Annuity).
- **Contract/Policy/Application number** – provide the actual policy/contract number or application number.

### Product Features
- **Annualized Premium** – for life policies provide the annual premium cost in dollars (e.g. if premiums are paid monthly, provide the total premium applicable for a 12 month period). For annuities provide the total amount of premium paid to date.
- **Contract/Policy Value** – indicate the current cash value for the existing policy/contract and the proposed cash value for the new policy/contract.
- **Surrender Value** – indicate the surrender value for the existing policy/contract and the proposed surrender value for the new policy/contract.
- **Death Benefit/Face Amount** – indicate the existing and the proposed face amounts or death benefits.
- **Current Interest Rate and Guarantee Period** – indicate the % amount and guarantee period.
- **Guaranteed Minimum Accumulation/Interest Rate** – indicate the guaranteed minimum % amount.
- **Surrender Charge Period Years Remaining** – for existing policy/contract enter the number of years remaining. If the policy/contract is beyond the surrender charge period, enter zero.
- **Surrender Charge Percentage by Year** – indicate the surrender charge percentage per year for the existing/proposed.
- **Surrender Free Withdrawals** – for both existing/proposed indicate YES or NO and indicate the annual free withdrawal percentage, if applicable. If none, enter zero.
- **List Withdrawal Options** – such as Surrender Charge Free Window, Annuitization, Required Minimum Distributions, Death Benefit or other options available.
- **Other Significant Policy or Contract Provisions** – for both existing/proposed indicate any other product features such as guaranteed death benefit, riders and applicable costs.

### For Annuities Only
- **Initial Bonus Percentage or Amount** – for both existing/proposed enter amount, if applicable. If none, enter zero.
- **Potential Loss of Bonus if Annuity is Exchanged, Surrendered, or Funds Withdrawn** – for both existing/proposed – check YES if a bonus or premium credit would be forfeited.
- **Annuity Settlement/Payout Option(s)** – indicate the available annuitization options (e.g. life with guaranteed period, life only, etc). For an immediate annuity indicate the payout amount/period.

### Subaccounts Choices (Variable Products Only)
- Provide the number of subaccounts available for the existing and proposed variable annuities and indicate YES or NO if changes can be made to subaccount allocations.

### Signatures
- The proposed owner and any joint owner of the new policy or contract must sign and date the form.
- Producer – the producer must sign and date the form.



**Annuities**

## Agreement for Exchange Form

This form along with an application, proper disclosure documents and state replacement forms (if applicable) may be used to process an exchange under Section 1035 of the Internal Revenue Code. To institute the transfer of funds to New York Life Insurance and Annuity Corporation ("NYLIAC"), complete this form, and we will initiate the transfer from your present financial institution.

This is a binding agreement between NYLIAC and the owner of the policy indicated below (the "Current Policy"). For purposes of this agreement the words "I", "my", "me" and "mine" refer to the owner of the Current Policy, the words "we" and "our" refer to NYLIAC and the word "Policy" refers to the NYLIAC policy. The Policyowner states that he/she has all rights and benefits under the Current Policy.

---

Please indicate the type of exchange to be processed: (Check One)
☐ Full (life/annuity to new or existing annuity) ¹    ☐ Partial (deferred annuity to new or existing annuity ¹ only) ²
If this is a Partial Section 1035 Exchange ², please indicate the dollar amount to be exchanged: $_____
The proceeds will be applied to: ☐ New Annuity Policy  ☐ Existing Annuity Policy Number ¹: _____

1. Full and partial exchanges into an existing annuity require that the existing annuity allow for additional premium payments.

2. A partial exchange of an annuity contract generally will be treated as tax-free only if no amounts are paid from either contract involved in the exchange for one year following the date that NYLIAC receives the premium. Taxpayers can take a distribution during this one-year period without causing the partial exchange to be treated as taxable only if the distribution is taken after the occurrence of certain events during the one-year period, most notably that the taxpayer turns age 59½, dies, or becomes disabled, divorced, or unemployed.  Other exceptions may also apply. **This is our understanding of the IRS's current interpretation of recent administrative guidance, which may change in the future.  You should consult your own tax advisor before exchanging your existing contract.**

---

Issuer Name: _____        Annuitant/Insured: _____

and Address: _____        Policyowner: _____

_____        Policy #: _____

---

The Current Policy/contract is: (Check One)
☐ Enclosed   ☐ Lost or destroyed **(I certify that if the policy/contract is lost or destroyed, that it has not been assigned.)**

---

I, the undersigned Policyowner of the Current Policy, hereby assign full/partial ownership rights under the Current Policy absolutely to NYLIAC. I understand that NYLIAC will fully/partially surrender the Current Policy and apply the proceeds to pay the premium for a new/existing Policy for which I have signed an application. I understand that NYLIAC has no responsibility other than to request proceeds of the Current Policy assigned and that in furnishing this form is participating in this transaction at my specific request. **I am aware that there may be a surrender charge on the Current Policy.**

I intend this assignment to be part of a tax-free exchange under Internal Revenue Code Section 1035. I understand that any tax obligations of this transaction are mine and I am not relying on NYLIAC (nor any of its agents/registered representatives or employees) for any tax or legal advice.

I agree that if NYLIAC, in its sole discretion, determines that it is unlikely to receive timely payment of the cash surrender values, NYLIAC may reassign ownership of the Current Policy back to me.

---

NYLIAC acknowledges receipt of the Current Policy and agrees that we will exercise no ownership rights under that policy except to request the full/partial surrender of its Accumulation Value. We will deposit the premium if the amount of the proceeds and the proposed Owner/Annuitant's age meet our policy rules. If not, we will return the proceeds to the issuer of the Current Policy. If the free-look provision of the NYLIAC policy is exercised, we will return the proceeds to the issuer of the Current Policy.

*Thomas Sorg*

Thomas Sorg – Corporate Vice President        Policyowner's Signature                Date
Authorized NYLIAC Officer

---

**Releasing Financial Institution:**
Do not withhold taxes.                    Make check payable to:
Include report of pre-and post-TEFRA contract cost basis.   **NYLIAC FBO of the Policyowner**
Please reference policy number on the check.

---

Variable products are distributed by NYLIFE Distributors.LLC, Member FINRA/SIPC and offered through properly licensed registered representatives.
51 Madison Avenue, New York, NY 10010

18263 (05/2009)

**THIS PAGE INTENTIONALLY LEFT BLANK**



Annuities

## NEW YORK LIFE INSURANCE COMPANY
## NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION

### ALL NYLIAC and NYLIC Insurance Contracts

### I.R.C. Section 72(h)
### Full Surrender Form

This form may be used only to request a full surrender of a NYLIC or NYLIAC non-qualified fixed or variable deferred annuity (or other insurance contract) and to agree to receive a NYLIAC Lifetime Income Annuity in lieu of the surrender proceeds.

**AGENT:** This form must be submitted to a NYLIAC Service Center (in Dallas, Texas or Cleveland, Ohio) with an application for a Lifetime Income Annuity. If the policy being surrendered is a variable product, the Dallas or Cleveland Service Center will correspond with the Variable Products Service Center to complete the transaction.

---

### Policy Owner Information and Authorization

**Policy Number:** _____

**Policy Owner:** _____    _____    _____
                  First Name and Middle Initial    Last Name (or full name if a non-person)    SSN or Tax ID Number

*If applicable:*
**Joint Owner:** _____    _____    _____
                  First Name and Middle Initial    Last Name (or full name if a non-person)    SSN or Tax ID Number

I, the policy owner or representative of the policy owner, wish to make a full surrender of the above-referenced policy and agree to receive a NYLIAC immediate income annuity in lieu of the surrender proceeds.

I understand and agree that:

- A full surrender may result in a surrender charge being deducted from the proceeds of my policy;

- My agreement to receive an immediate income annuity in lieu of the surrender proceeds is irrevocable;

- The immediate income annuity cannot be surrendered or exchanged because it has no cash value; and

- The effective date of this request will be the date it is processed by the NYLIAC Customer Service Office. The request will not be processed until all required information has been received.

Policy Owner's Signature (or if applicable, the representative of the Policy Owner):

X _____ Date: _____ Daytime Telephone: ( _____ ) - _____ - _____

Joint Owner's Signature (if applicable):

X _____ Date: _____ Daytime Telephone: ( _____ ) - _____ - _____

18827 (08/07)

THIS PAGE INTENTIONALLY LEFT BLANK



# Inherited Individual Retirement Annuity (Inherited IRA)
## Information Disclosure Statement
## Lifetime Income or Fixed Period Annuity

**The terms used in this disclosure statement have the same meaning as defined in the policy.**

Unless otherwise indicated, this information applies to both traditional and Roth Inherited IRAs.

**1. *What is an Inherited IRA?***
When the owner of an IRA or a participant in an eligible retirement plan (hereinafter referred to as the "Deceased Owner") dies and has named you as a beneficiary of the IRA or eligible retirement plan, you may direct that the death proceeds be transferred in a direct trustee-to-trustee transfer to purchase a new policy issued as an Inherited IRA. An eligible retirement plan includes a section 401(a) qualified retirement plan, a section 403(b) tax sheltered annuity, or an eligible governmental section 457 plan. If you are a beneficiary of an eligible retirement plan, you should confirm with the plan administrator that the plan allows direct rollovers by nonspouse beneficiaries. The Inherited IRA policy is subject to all of the fees and charges and all other provisions as outlined in the policy. In addition, special tax rules apply to the Inherited IRA. These special tax rules are described below.

**2. *Who is the Owner of an Inherited IRA?***
An Inherited IRA is established in the name of the Deceased Owner for the benefit of the Beneficiary (the Inherited IRA will be titled, for example, as Tom Smith as Beneficiary of John Smith, deceased). However, you are entitled to exercise all rights under the Inherited IRA, including the right to name a Beneficiary in the event of your death. You will be named as the Annuitant under the Inherited IRA (however, see Question 9).

**3. *What is the benefit of an Inherited IRA?***
An Inherited IRA allows you, the nonspouse beneficiary of the original IRA or eligible retirement plan, to receive distributions from the Inherited IRA over a period of years generally based upon your life expectancy. By receiving distributions from the Inherited IRA over a period of time rather than as a single sum, you can spread out the tax due on the original IRA's or eligible retirement plan's death proceeds. However, if your policy is issued as an **Inherited Roth IRA**, please see Questions 14 and 15.

**4. *Is there a minimum amount that I must withdraw from an Inherited IRA each year in order to avoid income tax penalties?***
Yes. There is a Required Minimum Distribution (RMD) generally based upon your life expectancy. The Annuity Income Payments generated by your Lifetime Income Annuity and Fixed Period Annuity will satisfy this requirement with respect to the funds transferred into this policy. RMDs with respect to any other IRAs or Inherited IRAs that you may own must be separately calculated and satisfied.

**5. *When must I take distributions of my RMD to avoid an IRS tax penalty?***
To satisfy the RMD requirements and avoid an IRS tax penalty, Annuity Income Payments under your Lifetime Income Annuity or Fixed Period Annuity policy must begin by December 31 of the year following the year in which the Deceased Owner died. Additionally, since the Lifetime Income Annuity and Fixed Period Annuity are immediate annuities, Annuity Income Payments must begin within 12 months of the Policy Date.

**6. *Can I withdraw more from the Inherited IRA each year than my RMD amount?***
Yes. You can withdraw more than your RMD amount each year, in accordance with the terms of your policy.

**7. *Is there an IRS 10% early withdrawal penalty on my withdrawals if I am under age 59½?***
No. There is no IRS early withdrawal penalty on any withdrawals you make from the Inherited IRA.

**8. *Will I have to pay taxes on Annuity Income Payments and any other withdrawals I receive from my Inherited IRA?***
Yes. Annuity Income Payments and other withdrawals made from your Inherited IRA are treated as ordinary income for the tax year in which the Annuity Income Payments or withdrawals are received. However, if your policy is issued as an **Inherited Roth IRA**, please see Questions 14 and 15.

**9.** *Will I be eligible to purchase this policy if I am not the measuring life for purposes of calculating RMDs?*
No. In order to purchase this policy, you must be the measuring life for purposes of the RMD rules. The measuring life determines the maximum period over which distributions from the Inherited IRA may be made. Generally, the designated beneficiary of the IRA or eligible retirement plan is the measuring life for RMD purposes. However, the following special rules apply if there are multiple beneficiaries, or if a trust is the beneficiary, of the IRA or eligible retirement plan. Please consult your tax advisor regarding the application of these rules to your particular circumstances.

**Multiple Beneficiaries**. If there are multiple individual beneficiaries named under an IRA or eligible retirement plan, the oldest beneficiary is generally the measuring life for purposes of the RMD rules. However, IRS regulations generally permit beneficiaries to establish separate accounts with respect to each beneficiary's share of the IRA or eligible retirement plan. Each beneficiary who properly and timely establishes a separate account may be treated as a measuring life for RMD purposes, and generally will be able to receive distributions over his or her own life expectancy.

**Trust Beneficiaries**. If a trust is named as the beneficiary of an IRA or eligible retirement plan, then the beneficiary of the trust may be treated as having been designated as a beneficiary of the IRA or eligible retirement plan if certain requirements are met. These requirements can be found in IRS Publication 590. However, if the trust has multiple beneficiaries, the separate account rules described above are <u>not</u> available to the beneficiaries of the trust. Therefore, if a trust with multiple trust beneficiaries is the beneficiary of an IRA or eligible retirement plan, and the trust satisfies all applicable requirements under IRS regulations, then only the oldest beneficiary of the trust would be eligible to purchase this policy.

**10.** *May a person other than an individual be treated as a designated beneficiary for purposes of the RMD rules?*
No, except for certain trusts (see Question 9), only individuals may be designated beneficiaries for purposes of the RMD rules. A person that is not an individual, such as the Deceased Owner's estate or a charity, may not be a designated beneficiary. If, as of September 30 of the year following the year in which the Deceased Owner dies, a person other than an individual is designated as a beneficiary, the Deceased Owner will be treated as having <u>no</u> designated beneficiary for purposes of the RMD rules, even if there are also individuals designated as beneficiaries. In this situation, you will not be eligible to purchase an Inherited IRA policy. Please consult your tax advisor regarding the application of these rules to your particular circumstances.

**11.** *Can I name Beneficiaries of my Inherited IRA?*
Yes. You have a right to name Beneficiaries of your Inherited IRA.

**12.** *Can I make additional contributions to my Inherited IRA?*
No. You cannot make additional contributions, including rollover contributions, to your Inherited IRA.

**13.** *Can I rollover distributions from my Inherited IRA?*
No. You cannot rollover distributions from your Inherited IRA.

**14.** *Are there additional special rules that apply if this policy is issued as an Inherited Roth IRA?*
Yes. If your policy is issued as an Inherited Roth IRA, then the policy will only accept, as a single contribution, death proceeds from the Roth IRA of the specified Deceased Owner for the benefit of the specified designated beneficiary. The Deceased Owner must have made his/her initial contribution to the Roth IRA in a year which is at least five years before the year in which Annuity Income Payments commence under this policy. In addition, Annuity Income Payments under this policy must commence by December 31 of the year following the year of the Deceased Owner's death.

**15.** *Will I have to pay tax on Annuity Income Payments and any other withdrawals I receive from my Inherited Roth IRA policy?*
No. Annuity Income Payments and any other withdrawals you receive from your Inherited Roth IRA policy are qualified distributions, which are not subject to tax.

Form **W-4P**

Department of the Treasury
Internal Revenue Service

### Withholding Certificate for
### Pension or Annuity Payments

OMB No. 1545-0074

**2010**

**Purpose.** Form W-4P is for U.S. citizens, resident aliens, or their estates who are recipients of pensions, annuities (including commercial annuities), and certain other deferred compensation. Use Form W-4P to tell payers the correct amount of federal income tax to withhold from your payment(s). You also may use Form W-4P to choose (a) not to have any federal income tax withheld from the payment (except for eligible rollover distributions, or payments to U.S. citizens delivered outside the United States or its possessions) or (b) to have an additional amount of tax withheld.

Your options depend on whether the payment is periodic, nonperiodic, or an eligible rollover distribution, as explained on

pages 3 and 4. Your previously filed Form W-4P will remain in effect if you do not file a Form W-4P for 2010.

**What do I need to do?** Complete lines **A** through **G** of the **Personal Allowances Worksheet.** Use the additional worksheets on page 2 to further adjust your withholding allowances for itemized deductions, adjustments to income, any additional standard deduction, certain credits, or multiple pensions/more-than-one-income situations. If you do not want any federal income tax withheld (see *Purpose* above), you can skip the worksheets and go directly to the Form W-4P below.

**Sign this form.** Form W-4P is not valid unless you sign it.

---

#### Personal Allowances Worksheet (Keep for your records.)

**A**  Enter "1" for **yourself** if no one else can claim you as a dependent . . . . . . . . . . . . . . . **A** _____

**B**  Enter "1" if: 
- You are single and have only one pension; or
- You are married, have only one pension, and your spouse has no income subject to withholding; or
- Your income from a second pension or a job, or your spouse's pension or wages (or the total of all) is $1,500 or less.

. . . . . . **B** _____

**C**  Enter "1" for your **spouse.** But, you may choose to enter "-0-" if you are married and have either a spouse who has income subject to withholding or you have more than one source of income subject to withholding. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . . . . . . . . . . **C** _____

**D**  Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . . . **D** _____

**E**  Enter "1" if you will file as **head of household** on your tax return . . . . . . . . . . . . **E** _____

**F**  **Child Tax Credit** (including additional child tax credit). See Pub. 972, Child Tax Credit, for more information.
- If your total income will be less than $61,000 ($90,000 if married), enter "2" for each eligible child; then **less** "1" if you have three or more eligible children.
- If your total income will be between $61,000 and $84,000 ($90,000 and $119,000 if married), enter "1" for each eligible child plus "1" **additional** if you have six or more eligible children . . . . . . . . . . **F** _____

**G**  Add lines A through F and enter total here. (**Note.** *This may be different from the number of exemptions you claim on your tax return.*) . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ **G** _____

For accuracy, complete all worksheets that apply.
- If you plan to **itemize or claim adjustments to income** and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2.
- If you have more than one source of income subject to withholding or a spouse with income subject to withholding **and** your combined income from all sources exceeds $18,000 ($32,000 if married), see the **Multiple Pensions/More-Than-One-Income Worksheet** on page 2 to avoid having too little tax withheld.
- If **neither** of the above situations applies, **stop here** and enter the number from line G on line 2 of Form W-4P below.

---------- **Cut here and give Form W-4P to the payer of your pension or annuity. Keep the top part for your records.** ----------

Form **W-4P**

Department of the Treasury
Internal Revenue Service

### Withholding Certificate for
### Pension or Annuity Payments

▶ For Privacy Act and Paperwork Reduction Act Notice, see page 4.

OMB No. 1545-0074

**2010**

Type or print your first name and middle initial.   **B.B**   Last name
BARBARA Jean Brown   |   Brown

Your social security number
████ 2683

Home address (number and street or rural route)
11 B RIDGEWOOD DR.

Claim or identification number (if any) of your pension or annuity contract

City or town, state, and ZIP code
PRESCOTT, ARKANSAS   71857

**Complete the following applicable lines.**

**1**  Check here if you **do not want** any federal income tax withheld from your pension or annuity. (Do not complete lines 2 or 3.) ▶ ☐

**2**  Total number of allowances and marital status you are claiming for withholding from each **periodic** pension or annuity payment. (You may also designate an additional dollar amount on line 3.) . . . . . . . . . . |_____ (Enter number of allowances)

**Marital status:** ☐ Single  ☑ Married  ☐ Married, but withhold at higher "Single" rate

**3**  Additional amount, if any, you want withheld from each pension or annuity payment. (**Note.** *For periodic payments, you cannot enter an amount here without entering the number (including zero) of allowances on line 2.*) . . . ▶ $ -0-

**Your signature** ▶ *Barbara J. Brown*   **Date** ▶ 9-23-2010

Cat. No. 10225T

Form **W-4P** (2010)

**THIS PAGE INTENTIONALLY LEFT BLANK**

Form W-4P (2010)                                                                            Page **2**

## Deductions and Adjustments Worksheet

**Note.** *Use this worksheet only if you plan to itemize deductions or claim certain credits or adjustments to income.*

| | | |
|---|---|---|
| 1 | Enter an estimate of your 2010 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes, medical expenses in excess of 7.5% of your income, and miscellaneous deductions . . . . . . . . . . . . . . . . . . . . . . . | **1** $ _____ |
| 2 | Enter: { $11,400 if married filing jointly or qualifying widow(er)   $ 8,400 if head of household   $ 5,700 if single or married filing separately } . . . . . . . . . | **2** $ _____ |
| 3 | **Subtract** line 2 from line 1. If zero or less, enter "-0-" . . . . . . . . . . . . . | **3** $ _____ |
| 4 | Enter an estimate of your 2010 adjustments to income and any additional standard deduction. (See Pub. 919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** $ _____ |
| 5 | **Add** lines 3 and 4 and enter the total. (Include any credit amounts from *Worksheet 6* in Pub. 919.) . | **5** $ _____ |
| 6 | Enter an estimate of your 2010 income not subject to withholding (such as dividends or interest) . . | **6** $ _____ |
| 7 | **Subtract** line 6 from line 5. If zero or less, enter "-0-" . . . . . . . . . . . . . | **7** $ _____ |
| 8 | **Divide** the amount on line 7 by $3,650 and enter the result here. Drop any fraction. . . . . . . | **8** _____ |
| 9 | Enter the number from the **Personal Allowances Worksheet,** line G, page 1 . . . . . . . . | **9** _____ |
| 10 | **Add** lines 8 and 9 and enter the total here. If you use the **Multiple Pensions/More-Than-One-Income Worksheet,** also enter this total on line 1 below. Otherwise, **stop here** and enter this total on Form W-4P, line 2, page 1 . . . . . . . . . . . . . . . . . . . . . . . . . | **10** _____ |

## Multiple Pensions/More-Than-One-Income Worksheet

**Note.** *Complete only if the instructions under line G, page 1, direct you here. This applies if you (and your spouse if married filing a joint return) have more than one source of income subject to withholding (such as more than one pension, or a pension and a job, or you have a pension and your spouse works).*

| | | |
|---|---|---|
| 1 | Enter the number from line G, page 1 (or from line 10 above if you used the **Deductions and Adjustments Worksheet**) . . . . . . . . . . . . . . . . . . . . . . . | **1** _____ |
| 2 | Find the number in Table 1 below that applies to the **LOWEST** paying pension or job and enter it here. **However,** if you are married filing jointly and the amount from the highest paying pension or job is $65,000 or less, do not enter more than "3." . . . . . . . . . . . . . . . | **2** _____ |
| 3 | If line 1 is **more than or equal to** line 2, subtract line 2 from line 1. Enter the result here (if zero, enter "-0-") and on Form W-4P, line 2, page 1. **Do not** use the rest of this worksheet . . . . . . | **3** _____ |

**Note.** *If line 1 is **less than** line 2, enter "-0-" on Form W-4P, line 2, page 1. Complete lines 4–9 below to figure the additional withholding amount necessary to avoid a year-end tax bill.*

| | | |
|---|---|---|
| 4 | Enter the number from line 2 of this worksheet . . . . . . . . . . . | **4** _____ | |
| 5 | Enter the number from line 1 of this worksheet . . . . . . . . . . . | **5** _____ | |
| 6 | **Subtract** line 5 from line 4 . . . . . . . . . . . . . . . . . . . | | **6** _____ |
| 7 | Find the amount in Table 2 below that applies to the **HIGHEST** paying pension or job and enter it here | | **7** $ _____ |
| 8 | **Multiply** line 7 by line 6 and enter the result here. This is the additional annual withholding needed . | | **8** $ _____ |
| 9 | **Divide** line 8 by the number of pay periods remaining in 2010. For example, divide by 12 if you are paid every month and you complete this form in December 2009. Enter the result here and on Form W-4P, line 3, page 1. This is the additional amount to be withheld from each payment . . . . . . . . | | **9** $ _____ |

| Table 1 | | | | Table 2 | | | |
|---|---|---|---|---|---|---|---|
| **Married Filing Jointly** | | **All Others** | | **Married Filing Jointly** | | **All Others** | |
| If wages from **LOWEST** paying pension or job are— | Enter on line 2 above | If wages from **LOWEST** paying pension or job are— | Enter on line 2 above | If wages from **HIGHEST** paying pension or job are— | Enter on line 7 above | If wages from **HIGHEST** paying pension or job are— | Enter on line 7 above |
| $0 - $7,000 | 0 | $0 - $6,000 | 0 | $0 - $65,000 | $550 | $0 - $35,000 | $550 |
| 7,001 - 10,000 | 1 | 6,001 - 12,000 | 1 | 65,001 - 120,000 | 910 | 35,001 - 90,000 | 910 |
| 10,001 - 16,000 | 2 | 12,001 - 19,000 | 2 | 120,001 - 185,000 | 1,020 | 90,001 - 165,000 | 1,020 |
| 16,001 - 22,000 | 3 | 19,001 - 26,000 | 3 | 185,001 - 330,000 | 1,200 | 165,001 - 370,000 | 1,200 |
| 22,001 - 27,000 | 4 | 26,001 - 35,000 | 4 | 330,001 and over | 1,280 | 370,001 and over | 1,280 |
| 27,001 - 35,000 | 5 | 35,001 - 50,000 | 5 | | | | |
| 35,001 - 44,000 | 6 | 50,001 - 65,000 | 6 | | | | |
| 44,001 - 50,000 | 7 | 65,001 - 80,000 | 7 | | | | |
| 50,001 - 55,000 | 8 | 80,001 - 90,000 | 8 | | | | |
| 55,001 - 65,000 | 9 | 90,001 - 120,000 | 9 | | | | |
| 65,001 - 72,000 | 10 | 120,001 and over | 10 | | | | |
| 72,001 - 85,000 | 11 | | | | | | |
| 85,001 - 105,000 | 12 | | | | | | |
| 105,001 - 115,000 | 13 | | | | | | |
| 115,001 - 130,000 | 14 | | | | | | |
| 130,001 and over | 15 | | | | | | |

(Page 36 of 130)

**THIS PAGE INTENTIONALLY LEFT BLANK**

# Additional Instructions

*Section references are to the Internal Revenue Code.*

**When should I complete the form?** Complete Form W-4P and give it to the payer as soon as possible. Get Pub. 919, How Do I Adjust My Tax Withholding, to see how the dollar amount you are having withheld compares to your projected total federal income tax for 2010. You may also use the IRS Withholding Calculator on the IRS website at *www.irs.gov/individuals* for help in determining how many withholding allowances to claim on your Form W-4P.

**Multiple pensions/more than one income.** To figure the number of allowances that you may claim, combine allowances and income subject to withholding from all sources on one worksheet. You may file a Form W-4P with each pension payer, but do not claim the same allowances more than once. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4P for the highest source of income subject to withholding and zero allowances are claimed on the others.

**Other income.** If you have a large amount of income from other sources not subject to withholding (such as interest, dividends, or capital gains), consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Call 1-800-TAX-FORM (1-800-829-3676) to get Form 1040-ES and Pub. 505, Tax Withholding and Estimated Tax. You can also get forms and publications from the IRS website at *www.irs.gov.*

If you have income from wages, see Pub. 919 to find out if you should adjust your withholding on Form W-4 or Form W-4P.

**Note.** Social security and railroad retirement payments may be includible in income. See Form W-4V, Voluntary Withholding Request, for information on voluntary withholding from these payments.

## Withholding From Pensions and Annuities

Generally, federal income tax withholding applies to the taxable part of payments made from pension, profit-sharing, stock bonus, annuity, and certain deferred compensation plans; from individual retirement arrangements (IRAs); and from commercial annuities. The method and rate of withholding depends on (a) the kind of payment you receive, (b) whether the payments are delivered outside the United States or its commonwealths and possessions, and (c) whether the recipient is a nonresident alien individual, a nonresident alien beneficiary, or a foreign estate. Qualified distributions from a Roth IRA are nontaxable and, therefore, not subject to withholding. See page 4 for special withholding rules that apply to payments outside the United States and payments to foreign persons.

Because your tax situation may change from year to year, you may want to refigure your withholding each year. You can change the amount to be withheld by using lines 2 and 3 of Form W-4P.

**Choosing not to have income tax withheld.** You (or in the event of death, your beneficiary or estate) can choose not to have federal income tax withheld from your payments by using line 1 of Form W-4P. For an estate, the election to have no income tax withheld may be made by the executor or personal representative of the decedent. Enter the estate's employer identification number (EIN) in the area reserved for "Your social security number" on Form W-4P.

You may not make this choice for eligible rollover distributions. See *Eligible rollover distribution—20% withholding* on page 4.

**Caution.** There are penalties for not paying enough federal income tax during the year, either through withholding or estimated tax payments. New retirees, especially, should see Pub. 505. It explains your estimated tax requirements and describes penalties in detail. You may be able to avoid quarterly estimated tax payments by having enough tax withheld from your pension or annuity using Form W-4P.

**Periodic payments.** Withholding from periodic payments of a pension or annuity is figured in the same manner as withholding from wages. Periodic payments are made in installments at regular intervals over a period of more than 1 year. They may be paid annually, quarterly, monthly, etc.

If you want federal income tax to be withheld, you must designate the number of withholding allowances on line 2 of Form W-4P and indicate your marital status by checking the appropriate box. Under current law, you cannot designate a specific dollar amount to be withheld. However, you can designate an additional amount to be withheld on line 3.

If you do not want any federal income tax withheld from your periodic payments, check the box on line 1 of Form W-4P and submit the form to your payer. However, see *Payments to Foreign Persons and Payments Outside the United States* on page 4.

**Caution.** If you do not submit Form W-4P to your payer, the payer must withhold on periodic payments as if you are married claiming three withholding allowances. Generally, this means that tax will be withheld if your pension or annuity is at least $2,080 a month.

If you submit a Form W-4P that does not contain your correct taxpayer identification number (TIN), the payer must withhold as if you are single claiming zero withholding allowances even if you choose not to have federal income tax withheld.

There are some kinds of periodic payments for which you cannot use Form W-4P because they are already defined as wages subject to federal income tax withholding. These payments include retirement pay for service in the U.S. Armed Forces and payments from certain nonqualified deferred compensation plans and deferred compensation plans of exempt organizations described in section 457. Your payer should be able to tell you whether Form W-4P applies.

For periodic payments, your Form W-4P stays in effect until you change or revoke it. Your payer must notify you each year of your right to choose not to have federal income tax withheld (if permitted) or to change your choice.

**Nonperiodic payments—10% withholding.** Your payer must withhold at a flat 10% rate from nonperiodic payments (but see *Eligible rollover distribution—20% withholding* on page 4) **unless** you choose not to have federal income tax withheld. Distributions from an IRA that are payable on demand are treated as nonperiodic payments. You can choose not to have federal income tax withheld from a nonperiodic payment (if permitted) by submitting Form W-4P (containing your correct TIN) to your payer and checking the box on line 1. Generally, your choice not to have federal income tax withheld will apply to any later payment from the same plan. You cannot use line 2 for nonperiodic payments. But you may use line 3 to specify an additional amount that you want withheld.

**Caution.** If you submit a Form W-4P that does not contain your correct TIN, the payer cannot honor your request not to have income tax withheld and must withhold 10% of the payment for federal income tax.

**Eligible rollover distribution—20% withholding.**
Distributions you receive from qualified pension or annuity plans (for example, 401(k) pension plans, and section 457(b) plans maintained by a governmental employer) or tax-sheltered annuities that are eligible to be rolled over tax free to an IRA or qualified plan are subject to a flat 20% federal withholding rate. The 20% withholding rate is required, and you cannot choose not to have income tax withheld from eligible rollover distributions. Do not give Form W-4P to your payer unless you want an additional amount withheld. Then, complete line 3 of Form W-4P and submit the form to your payer.

**Note.** The payer will not withhold federal income tax if the entire distribution is transferred by the plan administrator in a direct rollover to a traditional IRA, qualified pension plan, governmental section 457(b) plan (if allowed by the plan), section 403(b) contract, or tax-sheltered annuity.

Distributions that are (a) required by law, (b) one of a specified series of equal payments, or (c) qualifying "hardship" distributions are **not** "eligible rollover distributions" and are not subject to the mandatory 20% federal income tax withholding. See Pub. 505 for details. See also Nonperiodic payments—10% withholding on page 3.

## Changing Your "No Withholding" Choice

**Periodic payments.** If you previously chose not to have federal income tax withheld and you now want withholding, complete another Form W-4P and submit it to your payer. If you want federal income tax withheld at the rate set by law (married with three allowances), write "Revoked" next to the checkbox on line 1 of the form. If you want tax withheld at any different rate, complete line 2 on the form.

**Nonperiodic payments.** If you previously chose not to have federal income tax withheld and you now want withholding, write "Revoked" next to the checkbox on line 1 and submit Form W-4P to your payer.

## Payments to Foreign Persons and Payments Outside the United States

Unless you are a nonresident alien, withholding (in the manner described above) is required on any periodic or nonperiodic payments that are delivered to you outside the United States or its possessions. You cannot choose not to have federal income tax withheld on line 1 of Form W-4P. See Pub. 505 for details.

In the absence of a tax treaty exemption, nonresident aliens, nonresident alien beneficiaries, and foreign estates generally are subject to a 30% federal withholding tax under section 1441 on the taxable portion of a periodic or nonperiodic pension or annuity payment that is from U.S. sources. However, most tax treaties provide that private pensions and annuities are exempt from withholding and tax. Also, payments from certain pension plans are exempt from withholding even if no tax treaty applies. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities, and Pub. 519, U.S. Tax Guide for Aliens, for details. A foreign person should submit Form W-8BEN, Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding, to the payer before receiving any payments. The Form W-8BEN must contain the foreign person's TIN.

## Statement of Federal Income Tax Withheld From Your Pension or Annuity

By January 31 of next year, your payer will furnish a statement to you on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing the total amount of your pension or annuity payments and the total federal income tax withheld during the year. If you are a foreign person who has provided your payer with Form W-8BEN, your payer instead will furnish a statement to you on Form 1042-S, Foreign Person's U.S. Source Income Subject to Withholding, by March 15 of next year.

## Privacy Act and Paperwork Reduction Act Notice

We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to provide this information only if you want to (a) request federal income tax withholding from periodic pension or annuity payments based on your withholding allowances and marital status, (b) request additional federal income tax withholding from your pension or annuity, (c) choose not to have federal income tax withheld, when permitted, or (d) change or revoke a previous Form W-4P. To do any of the aforementioned, you are required by sections 3405(e) and 6109 and their regulations to provide the information requested on this form. Failure to provide this information may result in inaccurate withholding on your payment(s). Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.

# APPENDIX

## MAXIMUM ALLOWABLE SURVIVOR PERCENTAGE WORKSHEET

Step 1:   Enter the year of the first
payment:   (A) _____

Step 2:   Enter the IRA Owner's year
of birth:   (B) _____

Step 3:   Enter the non-spouse Joint
Annuitant's year of birth:   (C) _____

Step 4:   Subtract (B) from (A):   (D) _____

Step 5:   Subtract (C) from (A):   (E) _____

Step 6:   Subtract (E) from (D):   (F) _____

Step 7:   70 – (D)
If less than or equal to 0, enter 0
If greater than 0, enter the result:   (G) _____

Step 8:   Subtract (G) from (F):   (H) _____

Step 9:   Look up (H) on the table to find
the Maximum Allowable
Survivor Percentage:   (I) _____

| Excess of IRA Owner's Age Over Joint Annuitant's Age (Item H) | Maximum Allowable Survivor Percentage |
|---|---|
| 0-10 | 100% |
| 11 | 96% |
| 12 | 93% |
| 13 | 90% |
| 14 | 87% |
| 15 | 84% |
| 16 | 82% |
| 17 | 79% |
| 18 | 77% |
| 19 | 75% |
| 20 | 73% |
| 21 | 72% |
| 22 | 70% |
| 23 | 68% |
| 24 | 67% |
| 25 | 66% |
| 26 | 64% |
| 27 | 63% |
| 28 | 62% |
| 29 | 61% |
| 30 | 60% |
| 31 | 59% |
| 32 | 59% |
| 33 | 58% |
| 34 | 57% |
| 35 | 56% |
| 36 | 56% |
| 37 | 55% |
| 38 | 55% |
| 39 | 54% |
| 40 | 54% |
| 41 | 53% |
| 42 | 53% |
| 43 | 53% |
| 44 and greater | 52% |

## QUALIFIED PLANS ONLY
### IRS RESTRICTIONS ON POLICIES WITH GUARANTEED PERIOD

For tax-qualified plans, any Guaranteed Period elected must not exceed the IRA Owner's life expectancy in accordance with the Uniform Lifetime Table issued by the Internal Revenue Service. Per IRS Regulations, the **Maximum Guaranteed Period** you may choose is defined in the following chart:

| Maximum Allowable Guaranteed Periods Per IRS Tables Based on IRA Owner's Age | | | |
|---|---|---|---|
| Age | Single Life & Joint Life Maximum Guaranteed Period | Age | Single Life & Joint Life Maximum Guaranteed Period |
| Age 18 to Age 67 | 30 yrs | 78 | 20 yrs |
| 68 | 29 yrs | 79 | 19 yrs |
| 69 | 28 yrs | 80 | 18 yrs |
| 70 | 27 yrs | 81 – 82 | 17 yrs |
| 71 | 26 yrs | 83 | 16 yrs |
| 72 | 25 yrs | 84 | 15 yrs |
| 73 | 24 yrs | 85 – 86 | 14 yrs |
| 74 | 23 yrs | 87 | 13 yrs |
| 75 – 76 | 22 yrs | 88 – 89 | 12 yrs |
| 77 | 21 yrs | | |

**Please note: the length of Maximum Guaranteed Period shown above may not be available to you depending on the aggregate premium in relation to your financial Net Worth and/or other IRS guidelines. Please refer to the Suitability table guidelines to select the appropriate payout option. Please also see IMPORTANT NOTE in section 12.**

**For Joint-Life Plan with Guaranteed Period, the reduction, if applicable, applies after the end of the guaranteed period if the policy is in effect.**

## IRS RESTRICTIONS ON INHERITED IRAs WITH GUARANTEED PERIOD

For tax-qualified Inherited IRA plans, any Guaranteed Payment Period elected must not exceed the Annuitant's (deceased Owner's Beneficiary) life expectancy in accordance with the RMD Single Life Table issued by the Internal Revenue Service. Per IRS Regulations, the **Maximum Guaranteed Period** you may choose is defined in the following chart:

| Beneficiary's Age | Single Life Only Maximum Guaranteed Period | Beneficiary's Age | Single Life Only Maximum Guaranteed Period |
|---|---|---|---|
| Age 0 -54 | All Options | 69 - 70 | 17 yrs |
| 55 | 29 yrs | 71 | 16 yrs |
| 56 | 28 yrs | 72 | 15 yrs |
| 57 - 58 | 27 yrs | 73 - 74 | 14 yrs |
| 59 | 26 yrs | 75 | 13 yrs |
| 60 | 25 yrs | 76 - 77 | 12 yrs |
| 61 | 24 yrs | 78 | 11 yrs |
| 62 | 23 yrs | 79 - 80 | 10 yrs |
| 63 | 22 yrs | 81 - 82 | 9 yrs |
| 64 - 65 | 21 yrs | 83 - 84 | 8 yrs |
| 66 | 20 yrs | 85 - 86 | 7 yrs |
| 67 | 19 yrs | 87 - 88 | 6 yrs |
| 68 | 18 yrs | 89 | 5 yrs |



# New York Life Insurance and Annuity Corporation

## *Lifetime Income Annuity - Single Life*

*for*

### *Barbara Jean Brown*

*Barbara Jean Brown Trustee*

*9-23-2010*

| | |
|---|---|
| *Presented By:* | Gina M. Cromwell, ARPC |
| | NYLIAC |
| | 10810 Executive Center Drive |
| | Suite 301 |
| | Little Rock, AR 72211 |

| | | |
|---|---|---|
| *Contact At:* | *Office:* | (501)-223-1665 |
| | *Cellular:* | (501)-529-1460 |
| | *FAX:* | (501)-223-1690 |
| | *Email:* | gmcromwell@ft.newyorklife.com |

(Page 41 of 130)



# New York Life Insurance and Annuity Corporation

# Lifetime Income Annuity - Single Life

*Income Summary*

**Annuitant & Policy Information**

Name: **Barbara Jean Brown**
Date of Birth: **08/16/1931**
Sex: **Female**
State: **Arkansas**
Premium Tax: **0.00%**
Income Tax Rate: **28%**

Type of Funds: **Non-Qualified**
Payment Frequency: **Monthly**
Purchase Date: **09/28/2010**
Income Payment Start Date: **11/01/2010**
Cost Basis: **$95,695.00**

**Immediate Annuity Income Amounts**

| | Single Premium Amount | Monthly Income Amount Starting On 11/01/2010 | Tax Free Portion of Income | Total Amount of Guaranteed Payments | Lump Sum Death Benefit | Total Payments thru Age 100 [1] |
|---|---|---|---|---|---|---|
| Life Only | $95,695.00 | $776.17 | $776.17 | $0.00 | $0.00 | $204,909.00 |
| Life with  5 Years Certain | $95,695.00 | $752.31 | $752.31 | $45,138.00 | $0.00 | $198,610.00 |
| Life with  6 Years Certain | $95,695.00 | $735.70 | $735.70 | $52,970.00 | $0.00 | $194,225.00 |
| Life with  7 Years Certain | $95,695.00 | $729.34 | $710.38 | $61,264.00 | $0.00 | $192,546.00 |
| Life with  8 Years Certain | $95,695.00 | $717.02 | $688.34 | $68,833.00 | $0.00 | $189,293.00 |
| Life with  9 Years Certain | $95,695.00 | $700.30 | $658.98 | $75,632.00 | $0.00 | $184,879.00 |
| Life with 10 Years Certain | $95,695.00 | $680.07 | $627.70 | $81,608.00 | $0.00 | $179,538.00 |
| Life with 11 Years Certain | $95,695.00 | $659.57 | $594.27 | $87,063.00 | $0.00 | $174,126.00 |
| Life with 12 Years Certain | $95,695.00 | $638.95 | $567.39 | $92,008.00 | $0.00 | $168,683.00 |
| Life with 13 Years Certain ^ | $95,695.00 | $618.54 | $534.42 | $96,492.00 | $0.00 | $163,295.00 |
| Life with 14 Years Certain | $95,695.00 | $598.51 | $510.53 | $100,549.00 | $0.00 | $158,007.00 |
| Life with 15 Years Certain | $95,695.00 | $579.02 | $494.48 | $104,223.00 | $0.00 | $152,861.00 |
| Life with 16 Years Certain | $95,695.00 | $560.17 | $470.54 | $107,552.00 | $0.00 | $147,885.00 |
| Life with 17 Years Certain | $95,695.00 | $542.09 | $446.68 | $110,586.00 | $0.00 | $143,112.00 |
| Life with 18 Years Certain | $95,695.00 | $524.83 | $430.89 | $113,363.00 | $0.00 | $138,555.00 |
| Life with 19 Years Certain | $95,695.00 | $508.46 | $414.90 | $115,928.00 | $0.00 | $134,233.00 |
| Life with 20 Years Certain | $95,695.00 | $493.17 | $390.59 | $118,360.00 | $0.00 | $130,197.00 |
| Life with 21 Years Certain | $95,695.00 | $480.59 | $374.86 | $121,108.00 | $0.00 | $126,876.00 |
| Life with 22 Years Certain | $95,695.00 | $468.80 | $358.63 | $123,763.00 | $0.00 | $123,763.00 |
| Life with 23 Years Certain | $95,695.00 | $457.78 | $350.66 | $126,347.00 | $0.00 | $120,854.00 |

§ Under the Life with Cash Refund income alternative, income payments to the annuitant plus the lump sum death benefit to the beneficiaries will total at least $ 95,695.00.
^This Life with Period Certain payment option is the shortest certain period that guarantees a return of premium paid.  Payment options offering longer certain periods are guaranteed to provide more than the premium paid.

This Illustration is not a guarantee of future benefits and is for informational purposes only.  Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.

(Page 43 of 130)



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity - Single Life

*Income Summary (Continued)*

*Immediate
Annuity
Income
Amounts*

| | Single Premium Amount | Monthly Income Amount Starting On 11/01/2010 | Tax Free Portion of Income | Total Amount of Guaranteed Payments | Lump Sum Death Benefit | Total Payments thru Age 100 [1] |
|---|---|---|---|---|---|---|
| Life with 24 Years Certain | $95,695.00 | $447.49 | $334.72 | $128,877.00 | $0.00 | $118,137.00 |
| Life with 25 Years Certain | $95,695.00 | $437.90 | $318.79 | $131,370.00 | $0.00 | $115,606.00 |
| Life with 26 Years Certain | $95,695.00 | $428.95 | $310.99 | $133,832.00 | $0.00 | $113,243.00 |
| Life with 27 Years Certain | $95,695.00 | $420.62 | $294.85 | $136,280.00 | $0.00 | $111,044.00 |
| Life with 28 Years Certain | $95,695.00 | $412.85 | $286.93 | $138,717.00 | $0.00 | $108,992.00 |
| Life with 29 Years Certain | $95,695.00 | $405.62 | $279.07 | $141,155.00 | $0.00 | $107,084.00 |
| Life with 30 Years Certain | $95,695.00 | $398.87 | $271.23 | $143,593.00 | $0.00 | $105,302.00 |
| Life with Cash Refund | $95,695.00 | $585.35 | $510.42 | § | § | $154,532.00 |
| Life w/25% of Prem. DB | $95,695.00 | $630.45 | $598.30 | $0.00 | $23,923.00 | $166,439.00 |
| Life w/50% of Prem. DB | $95,695.00 | $484.73 | $398.93 | $0.00 | $47,847.00 | $127,969.00 |

§ Under the Life with Cash Refund income alternative, income payments to the annuitant plus the lump sum death benefit to the beneficiaries will total at least $95,695.00.
^This Life with Period Certain payment option is the shortest certain period that guarantees a return of premium paid. Payment options offering longer certain periods are guaranteed to provide more than the premium paid.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.

(Page 45 of 130)



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity – Single Life

### *Explanations*

#### (Form 20282)

The accompanying illustration is not part of the policy and does not constitute a contract. The income payable under your policy may differ from the illustrated amounts depending on the payment option and payment frequency you select, the date the Company receives your premium, and your income start date. The income payable may also differ in the event of a change in prices.

Calculated income amounts reflect the deduction of any applicable state premium taxes.

Under the terms of the contract, a pay-out option, once selected, is irrevocable after the free-look period has ended. The contract cannot be surrendered.

An exclusion ratio determines the portion of each income payment that is not subject to federal income tax. The estimated tax-free portion of the payment is based on the Adjusted Investment in the contract and the Expected Return. The Adjusted Investment in the Contract is the cost of the annuity (cost basis) less the value of any refund attributable to any chosen period certain guarantee. The Expected Return is the total amount of all payments to life expectancy. After the Investment in the Contract has been paid out tax-free, the payments become fully taxable.

If the source of the premium is qualified funds and the annuity is intended to satisfy the Internal Revenue Service's (IRS) Required Minimum Distribution rules, the guaranteed period chosen cannot exceed the life expectancy of the annuitant, or, if a joint and survivor annuity, the joint life expectancies of the annuitants. Life Expectancy is based on annuity tables prescribed by the IRS.

If the source of the premium is a qualified employer retirement plan and some portion of the premium consists of employee contributions, a special "simplified method" must be used to determine the non-taxable portion of each annuity payment. The amounts shown in this illustration do not reflect this special rule detailed in IRC Section 72 (d)(1).

If you die before the income payments begin, your beneficiary will only receive payments as provided under the terms of the policy. *Life Only policies do not provide for any payments after the death of the annuitant.*

Your agent represents, provides services on behalf of and is compensated by New York Life Insurance and Annuity Corporation.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D, Prepared on Tuesday, September 21, 2010.



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity - Single Life

*Footnotes*

**(Form 20282)**

1.  The amounts shown are for illustrative purposes only and are not a guarantee of the amount the annuitant will receive. In a single life policy, this is the projected sum of all future payments if the annuitant lives thru age 100. In a joint life policy, this is the projected sum of all future payments if the younger annuitant lives thru age 100. Payments will continue beyond age 101 if the annuitant is alive.

The illustrated payment options are subject to suitability review and may not be available.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.



# New York Life Insurance and Annuity Corporation

# Lifetime Income Annuity - Single Life

*Withdrawal Rider Disclosure Statement*

*for*

*Non-Qualified Policies with a Life with Cash Refund or Life with Period Certain Payment Option*

A withdrawal rider is available for all non-qualified policies with a Life with Cash Refund or Life with Period Certain payment option. This withdrawal rider allows for a one-time, lump sum withdrawal from your Policy equal to an amount up to 100% of the present value of the remaining Annuity Benefit payments payable during the Guaranteed Period. This amount is determined by discounting the selected percentage of the future payments for the remainder of the Guaranteed Period to the Withdrawal Effective Date using the interest rates that are, or will be, shown on the Policy Data Page of the contract, plus an Interest Rate Change Adjustment. The Annuity Benefit payments are the periodic income benefit payable under the terms of the Policy, as shown, or will be shown, on the Policy Data Page. The Guaranteed Period is, or will be, shown on the Policy Data Page for which the Annuity Benefit is guaranteed to continue even if an Annuitant dies. For Life Annuity with Cash Refund plans, the Guaranteed Period is determined by dividing the Premium that is, or will be, shown on the Policy Data Page by the annualized Annuity Benefit.

The withdrawal is not 100% of the original premium; rather, it is the present value of the remaining guaranteed payments left on the policy at the time of withdrawal, which can be lower than the original premium. The withdrawal amount is also based on the percentage withdrawal selected by the owner, the interest rates on the policy data page plus the Interest Rate Change Adjustment.

The Interest Rate Change Adjustment, which can either increase or decrease the resulting cash withdrawal amount, is based on the change in the 10-Year Constant Maturity Treasury (CMT) rate from the time the policy is purchased to the time the Owner elects to receive the cash withdrawal. The 10-Year CMT rate is the 10-Year CMT Series published in the Federal Reserve Statistical Release H.15.

The cash withdrawal amount is based on the percentage of Annuity Benefits available and selected for withdrawal; that percentage does not result in a cash withdrawal amount equal to a corresponding percentage of the premium paid for the policy. The cash withdrawal amount will not be available if it is less than $2,500. The withdrawal amounts shown in this illustration are for illustrative purposes only and are not a guarantee of the amount the Owner will receive. The illustration shows two scenarios – one assumes no change in the 10-Year CMT rate and the other assumes a 2% increase in the 10-Year CMT rate.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity - Single Life

*Withdrawal Rider Disclosure Statement (Continued)*
*for*
*Non-Qualified Policies with a Life with Cash Refund or Life with Period Certain Payment Option*

The cash withdrawal may be taken only <u>once</u> and only if the Owner is at least age 59½ at the time the cash withdrawal is taken. After the cash withdrawal is taken, future income payments will be lower than they would have been had the cash withdrawal not been taken.

The federal income tax treatment of an immediate annuity that contains a commutation feature (i.e., a feature that permits the lump sum withdrawal of a discounted value of future payments) is uncertain. New York Life Insurance and Annuity Corporation (the "Corporation"), or alternatively, New York Life Insurance Company (the "Company"), will be reporting lump sum withdrawals made in connection with the commutation feature as being *fully taxable*. The Internal Revenue Service may determine that the taxable amount of the annuity payments and withdrawals received for any year could be different than the amount reported by the Corporation or Company. In addition, the exercise of the commutation feature may:

- Result in the retroactive imposition of a 10% penalty tax (plus interest) on any annuity payments received before the Owner attained age 59½. Annuity payments made prior to age 59½ generally may be subject to a 10% penalty tax if the series of payments is modified (other than by reason of death or disability) before the longer of five years from the date of the first payment or age 59½. The 10% penalty tax on such annuity payments is in addition to the ordinary income tax on the taxable amount of the lump sum withdrawal.

- For non-qualified policies, extend the period over which an Owner may recover the investment in the contract, and may limit the Owner's ability to fully recover the investment in the contract over the annuity payment period because of the reduction or elimination of future annuity payments.

The Owner should consult with his or her own tax advisor prior to exercising any commutation feature under an immediate annuity.

Finally, making a withdrawal from an immediate annuity purchased with non-qualified funds could negatively affect the Owner's eligibility for Medicaid long-term care benefits. The Owner should consult an attorney to understand how such a withdrawal may impact eligibility for Medicaid long-term care benefits in the future.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity - Single Life

*Withdrawal Rider Disclosure Statement*
*for*
*Qualified Policies*
*and*

*Non-Qualified Policies with a Life Only or Life with Percent Of Premium Death Benefit Payment Option*

A withdrawal rider is available for tax-qualified policies and for non-qualified policies with a Life Only or Life with Percent of Premium Death Benefit payment option. This withdrawal rider allows for a one-time, lump sum withdrawal from your Policy equal to 30% of the Present Value of Future Expected Payments. The Present Value of Future Expected Payments is equal to Future Expected Payments discounted to the Withdrawal Effective Date using discount rates equal to the interest rates that are, or will be, shown on the Policy Data Page, plus an Interest Rate Change Adjustment. The Future Expected Payments are the remaining payments expected to be made, based on the life expectancy of any surviving annuitants as of the Policy Date. The life expectancy is, or will be, shown on the Policy Data Page of the contract.

The Interest Rate Change Adjustment, which can either increase or decrease the resulting cash withdrawal amount, is based on the change in the 10-Year Constant Maturity Treasury (CMT) rate from the time the policy is purchased to the time the Owner elects to receive the cash withdrawal. The 10-Year Treasury rate is the 10-Year CMT Series published in the Federal Reserve Statistical Release H.15.

The cash withdrawal amount does not equal 30% of the premium paid for the policy. It is the present value of 30% of the expected remaining payments based on the life expectancy of the annuitant(s) of the policy. The cash withdrawal amount will not be available if it is less than $2,500.

The withdrawal amounts, if shown in this illustration, are for illustrative purposes only and are not a guarantee of the amount the Owner will receive. The illustration shows two scenarios -- one assumes no change in the 10-Year CMT rate and the other assumes a 2% increase in the 10-Year CMT rate.

The cash withdrawal may be taken only <u>once</u> and only if the Owner is at least age 59½ at the time the cash withdrawal is taken. After the cash withdrawal is taken, future income payments will be 30% lower than they would have been had the cash withdrawal not been taken.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.



# New York Life Insurance and Annuity Corporation

## Lifetime Income Annuity – Single Life

*Withdrawal Rider Disclosure Statement (Continued)*
*for*
*Qualified Policies*
*and*

*Non-Qualified Policies with a Life Only or Life with Percent Of Premium Death Benefit Payment Option*

The federal income tax treatment of an immediate annuity that contains a commutation feature (i.e., a feature that permits the lump sum withdrawal of a discounted value of future payments) is uncertain. New York Life Insurance and Annuity Corporation (the "Corporation"), or alternatively, New York Life Insurance Company (the "Company"), will be reporting lump sum withdrawals made in connection with the commutation feature as being *fully taxable.* The Internal Revenue Service may determine that the taxable amount of the annuity payments and/or withdrawals received for any year could be different than the amount reported by the Corporation or Company. In addition, the exercise of the commutation feature may:

- Result in the retroactive imposition of a 10% penalty tax (plus interest) on any annuity payments received before the Owner attained age 59½. Annuity payments made prior to age 59½ generally may be subject to a 10% penalty tax if the series of payments is modified (other than by reason of death or disability) before the longer of five years from the date of the first payment or age 59½. The 10% penalty tax on such annuity payments is in addition to the ordinary income tax on the taxable amount of the lump sum withdrawal.

- For non-qualified policies, extend the period over which an Owner may recover the investment in the contract, and may limit the Owner's ability to fully recover the investment in the contract over the annuity payment period because of the reduction or elimination of future annuity payments.

The Owner should consult with his or her own tax advisor prior to exercising any commutation feature under an immediate annuity.

Finally, making a withdrawal from an immediate annuity purchased with non-qualified funds could negatively affect the Owner's eligibility for Medicaid long-term care benefits. The Owner should consult an attorney to understand how such a withdrawal may impact eligibility for Medicaid long-term care benefits in the future.

This Illustration is not a guarantee of future benefits and is for informational purposes only. Not complete unless accompanied by Form 20282.
Field Technology Illustration System v2010.3.1D. Prepared on Tuesday, September 21, 2010.

(Page 58 of 130)



(Page 60 of 130)

SECOND RESTATEMENT OF THE
BARBARA JEAN BROWN FAMILY TRUST

This Agreement, made this 12th day of March, 2010, by and between BARBARA JEAN BROWN of the State of Arkansas (hereinafter called "Grantor") and BARBARA JEAN BROWN (hereinafter called "Trustee").

W I T N E S S E T H :

WHEREAS, I have heretofore executed the BARBARA JEAN BROWN FAMILY TRUST dated the 9th day of March, 1998; and

WHEREAS, I desire to restate said Trust in its entirety, so as to provide that the following terms and provisions will be in complete substitution for the original Trust Agreement;

WHEREAS, I desire to provide for management of my assets in the event of my disability, and further, to provide for an orderly transfer of my assets in the event of my death, so as to minimize the inconvenience to my family;

NOW, THEREFORE, the parties agree as follows:

ARTICLE ONE
TRUST ESTATE AND ADDITIONS THERETO

This Trust shall be known as the BARBARA JEAN BROWN FAMILY TRUST. Concurrent with execution of this Trust, I have transferred Ten Dollars ($10.00) to the Trustee, receipt which is hereby acknowledged by the ·Trustee, by my execution hereof.   This property, together with any other property that may later become subject to this Trust, shall constitute the Trust Estate, and shall be held, administered and distributed by the Trustee as provided herein.   I shall have the right at any time to add to this Trust other property.

ARTICLE TWO
TRUSTEE

A.   Initial Trustee:   The Trustee of this Trust shall be BARBARA JEAN BROWN.

(Page 62 of 130)

B.   Successor Trustee:  In the event that BARBARA JEAN BROWN should be unable or unwilling to serve as Trustee, then in that event the following nominees, in the order named hereinafter, shall serve as  Successor Trustee, to-wit:

1.   SHARON KAY BRITTON and KEN BRITTON as Co-Trustees;

2.   In the event that KEN BRITTON shall be unable or unwilling to serve as Co-Trustee then SHARON KAY BRITTON and PAULA JEAN BROWN shall be authorized to serve as Co-Trustees;

3.   In the event that SHARON KAY BRITTON shall be unable or unwilling to serve as Co-Trustee than PAULA JEAN BROWN shall serve as Alternate Co-Trustee with KEN BRITTON;

4.   In the event neither SHARON KAY BRITTON or PAULA JEAN BROWN shall be unable or unwilling to serve as Co-Trustees, than WILLIAM HERMAN BROWN shall serve as Alternate Co-Trustee.

Further, in the event a majority of said nominees should elect at any time following my death or disability, they (or the survivor of them in the event of the death or disability of any of them) shall be authorized to appoint a Successor Trustee, as they shall mutually agree.

## ARTICLE THREE
## AMENDMENT AND REVOCATION

I shall have the right at any time to amend any of the provisions of this Trust Agreement, or of any Amendment thereto, by an agreement in writing executed by me and delivered to the Trustee, and to revoke this Trust in whole or in part by an instrument in writing executed by me and delivered to the Trustee. In the event I revoke this Trust in whole or in part, the Trustee shall redeliver to me, such assets as I direct.

2

## ARTICLE FOUR
### LIVING TRUST: DISTRIBUTION OF PRINCIPAL AND INCOME

A.    Distributions to BARBARA JEAN BROWN:  The Trustee shall
pay to me, or for my benefit, so much or all of the net income (and
so much of the principal) of the Trust as I direct, from time to
time.

B.    Right of Withdrawal:  I may, at any time and from time to
time during the existence of said Trust, withdraw the entire or any
specified portion of the principal and accumulated income.

C.    My Incompetency:  In the event of my incompetency or
disability, the Trustee shall be authorized to continue to pay to,
or expend for my benefit, such amounts of income and principal as
the Trustee, in its sole discretion, shall deem appropriate to
provide for my health, maintenance and support, in accordance with
my standard of living.

## ARTICLE FIVE
### DIVISION OF TRUST ESTATE UPON MY DEATH

Upon my death, the Trustee shall pay over and distribute the
remaining trust assets as follows:

A.    Debts, Estate Taxes and Expenses (To Be Paid From the
Residuary of the Estate, Without Apportionment):  The Trustee shall
first pay all of my reasonable funeral expense, last illness
expense, administration expense, and such other debts as the
Trustee shall deem reasonable.  Further, the Trustee shall pay all
of my federal or state estate or inheritance taxes, which shall be
deemed to be paid from the residuary of my trust estate, without
apportionment.

B.    License Rights:  My Trustee shall distribute free of
trust, all rights, title and interest as a Licensee with Sonic
Industries, Inc. equally to my children, WILLIAM HERMAN BROWN and
PAULA JEAN BROWN.    If WILLIAM HERMAN BROWN or PAULA JEAN BROWN
is not then living, my Trustee shall distribute free of trust, all
rights, title and interest as a Licensee with Sonic Industries,
Inc. to my child then living named above.

C.    Division of Balance of Trust Among Beneficiaries:  All
the rest, residue and remainder of trust assets shall be paid over
and distributed as follows:

3

(Page 66 of 130)

1.  My husband HERMAN BROWN and I have certain assets owned in Joint Tenancy Right of Survivorship; it is my intent these become his sole and separate property upon my death (by way of explanation I am gifting the balance of my estate to my children by reason of the fact that HERMAN has expressed a preference that my assets pass in this manner as he does not believe he has any financial need).

2.  Gift of Caddo Enterprises, Inc. Stock:  Currently I own 35% of the outstanding stock of Caddo Enterprises, Inc..  Upon my death I direct my remaining shares be divided as follows:

    i.   To my son WILLIAM HERMAN BROWN, a gift of shares (representing 6% of the outstanding stock) so to increase his percentage of ownership to 26% of the outstanding stock.

    ii.  To my daughter PAULA JEAN BROWN, a gift of shares (representing 11% of the outstanding stock) so as to increase her percentage ownership to 26% of the outstanding stock (by way of explanation it is my intent that my children WILLIAM HERMAN BROWN and PAUL JEAN BROWN together have controlling interest in said corporation and all provisions of this Trust shall be construed accordingly.

    iii. To my daughter SHARON KAY BRITTON, a gift of shares (representing 6% of the outstanding stock).

    iv.  To my daughter JUDY DIANN BROWN, a gift of shares (representing 6% of the outstanding stock).

    v.   To my grandson ROBERT WILLIAM BROWN, a gift of shares (representing 6% of the outstanding stock) in care of his father as Trustee of the Trust created hereinafter.

4

3.    <u>Gift of R M B Enterprises, Inc. Stock</u>:   Currently I own 51% of the outstanding stock of R M B Enterprises (being the entity that controls my Nashville Sonic Drive-In).  Upon my death I direct the stock to be divided as follows:

  i.   To my son WILLIAM HERMAN BROWN a gift of shares (representing 13.25% of outstanding stock) so as to increase his percentage of ownership to 25.5%.

  ii.  To my daughter PAULA JEAN BROWN a gift of shares (representing 13.25% of the outstanding stock) so as to increase her percentage ownership to 25.5% of the outstanding stock (by way of explanation it is my intent that my children WILLIAM HERMAN BROWN and PAUL JEAN BROWN together have controlling interest in said corporation and all provisions of this Trust shall be construed accordingly).

  iii. To my daughter SHARON KAY BRITTON a gift of shares (representing 9.5% of the outstanding stock).

  iv.  To my daughter JUDY DIANN BROWN a gift of shares (representing 9.5% of the outstanding stock).

  v.   To my granddaughter SAMANTHA BROWN a gift of shares (representing 6% of the outstanding stock) in care of his father as Trustee of the Trust created hereinafter.

D.    <u>Division of Balance of Trust Among Beneficiaries</u>:   All the rest, residue and remainder of the trust assets shall be paid over and distributed in fee simple and free of trust unto my children, SHARON KAY BRITTON, JUDY DIANN BROWN, WILLIAM HERMAN BROWN, PAULA JEAN BROWN in equal shares.

5

(Page 70 of 130)

E.   Prior Death of Beneficiary:   The descendants of any deceased beneficiary shall take the said beneficiary's share, per stirpes.   If any deceased beneficiary shall not leave any descendants, then said share shall be divided among and between my then living descendants, per stirpes.

F.   Adjustment for Loans and/or Gifts and/or Jointly Held Property:   Notwithstanding anything to the contrary herein, the Trustee shall adjust the distributions as set forth herein, in order to take into account loans and/or gifts I have made for the benefit of my family (as more particularly set forth in a separate schedule that I will attach hereto and keep a part hereof). Further, the Trustee shall adjust the distributions herein, by reason of receipt of jointly held or survivorship assets by the beneficiaries herein.   Such adjustments, whether it be for loans and/or gifts and/or jointly held property or survivorship assets, shall be in the manner set forth in accordance with the formulas in Exhibit "1" attached hereto and made a part hereof.

ARTICLE SIX
CONTINUATION FOR GRANDCHILDREN
OR OTHER BENEFICIARIES UNDER AGE FORTY

If any grandchild (or other beneficiary herein) is entitled to distributions who shall not have attained the age of FORTY, then the share of such beneficiary shall be retained in trust subject to the following terms and conditions:

A.   Trustee:   In the event my son WILLIAM HERMAN BROWN should survive my I direct that he serve as Trustee for the share of his children herein.   In the event my son WILLIAM HERMAN BROWN should be unable or unwilling to serve I direct my Trustees named in Article Two hereinabove serve as Trustee of the Trust Shares created herein.   Further said nominees shall be authorized from time to time to appoint an Alternate Trustee for the respective Shares of my respective grandchildren as they deem to be in the best interest of my grandchildren.

B.   Division Into Separate Trust Shares:   The Trustee shall create a separate trust share for each said beneficiary and transfer into said separate trust share the respective distribution that each beneficiary is to receive under the terms hereof.

6

(Page 72 of 130)

C.   Distributions:  So long as a share of this Trust is held in trust for the benefit of said beneficiary, the Trustee, in its sole discretion, shall distribute to or for the benefit of such beneficiary, so much of the trust income and principal, from said beneficiary's respective share of this Trust, as shall be necessary to provide for any of the following:

1.   The health, education, maintenance and support of such beneficiary.

2.   To provide adequate financial assistance to assist said beneficiary in obtaining a college, vocational and/or post-graduate education (taking into account other resources reasonably available to provide for such educational assistance).

D.   Right of Beneficiary to Withdraw Principal From Trust in Installments Upon Attaining Certain Ages:   The share of said respective beneficiaries hereunder shall be retained in trust and distributed to him or her in fee simple and free of trust, one-third when he or she attains the age of thirty (30), one-half when he or she attains the age of thirty-five (35), and the balance when he or she attains the age of forty (40).  In the event of the death of the beneficiary prior to the distribution of said beneficiary's remaining share hereunder, said beneficiary's then remaining share shall be paid over and distributed as follows:

1.   If said beneficiary shall have any descendants, to his or her descendants on a per stirpes basis.

2.   If said beneficiary shall have no descendants, to his or her brothers and sisters on a per stirpes basis.

3.   If none of said beneficiaries survive, to my descendants on a per stirpes basis.

### ARTICLE SEVEN
### POWERS AND TRUST ADMINISTRATION

A.   Sale of Trust Assets: The Trustee is authorized to sell any property, real or personal, constituting a part of this Trust, at such terms and conditions, as the Trustee deems best.

7

B.   Powers and Trust Administration:   The provisions of Exhibit "1" attached hereto and made a part hereof shall govern the administration of all Trusts established under this instrument; and shall be deemed to be incorporated herein as a part of this document, for all purposes.

ARTICLE EIGHT
DISPOSITION OF REAL ESTATE

A.   Statement of Intent:   Upon my death, any real property (including real estate held in corporations or entities) shall be co-owned by my children; but in the event that any of my children should elect to sell their respective fractional interest of any of said tracts of real estate, then such sale should take place in the following manner:

B.   First Option Rights To Children:   Within ninety (90) days from the date of notification by any of my children of their wish to sell their fractional interest of any of my real property, my remaining children shall have the option to purchase my real property (or any parcel thereof) as owned by me (or this Trust) at the time of my death, at its fair market value, as of the date of my death (however with no fractional interest or minority interest discounts being applicable for purposes of valuation it being my intent that any purchase be at fair market value without fractional interest discounts).

C.   First Right of Refusal To Children:   If at anytime after my death, my Trustees herein, or my children should elect to sell any parcel of said real property, than the Trustee and/or my children are directed to market said real property in whatever manner they deem best (however, nothing herein shall require my children to cause the property to be sold, if they shall unanimously agree). Any of my children shall have the first option to purchase any parcel of said real property at the same terms and conditions of any bona fide purchaser. Said child exercising this option shall be required to exercise it within ten (10) days after being notified by certified mail of this right, following receipt of said offer by the Trustee.

D.   Disposition of Farm:   Notwithstanding anything to the contrary hereinabove in the event any of my children wish to sell their fractional interest in my timber farm in Howard County, I direct that my son WILLIAM HERMAN BROWN have the first option to purchase said property at fair market value in the manner set forth hereinabove.

8

ARTICLE NINE
INCONTESTABILITY

Should any of the beneficiaries under this Trust, as amended, or under my Last Will and Testament, oppose the Probate of my Last Will and Testament, or in anywise, either directly or indirectly, contest or aid in contesting my Last Will and Testament, or this Trust Agreement, or any of the provisions thereof, or any amendment thereto, or the distribution of my estate under said instruments, then and in that event, I annul any bequest made to such beneficiaries and I annul any rights that such beneficiaries have under this Trust Agreement, as amended, and it is my will that such beneficiaries be absolutely barred and cut off from any share in my estate or this Trust, and should any other person oppose the Probate of my Last Will and Testament, or this Trust, or in anywise, directly or indirectly, contest or aid in contesting said instruments or the provisions thereof, or the distributions herein, it is my will that any such person shall be absolutely barred and cut off from any share in my estate, whether passing under the terms of this Trust, or otherwise.

ARTICLE TEN
GUIDES TO CONSTRUCTION

A.   Composition of My Immediate Family:  As of the signing of this instrument:

  1.   I am married to my beloved HERMAN BROWN;

  2.   My children are as follows:

    SHARON KAY BRITTON,
    JUDY DIANN BROWN,
    WILLIAM HERMAN BROWN,
    PAULA JEAN BROWN.

IN WITNESS WHEREOF, the Grantor and Initial Trustee have signed, sealed and acknowledged this agreement.



BARBARA JEAN BROWN, Grantor
and Initial Trustee

STATE OF ARKANSAS      )
                       )
COUNTY OF GARLAND      )

On this day personally appeared before the undersigned, a Notary Public within and for the County and State aforesaid, duly qualified, commissioned and acting, BARBARA JEAN BROWN, to me well known as the Grantor and Initial Trustee who signed the foregoing instrument and stated that she had executed the same for the consideration and purposes therein mentioned and set forth.

WITNESS my hand and seal as such Notary Public on this 12th day of March, 2010.

NOTARY PUBLIC

My Commission Expires:

SHELLY DVORAK
Garland County
My Commission Expires
August 10, 2015

10    W:\clients\Brown Barbara_cf\2nd Restate.frm CF\sd

# AMENDMENT AND RESTATEMENT OF THE BARBARA JEAN BROWN TRUST OF MARCH 9, 1998.

**Amended and Restated this 8th day of June 2006.**

Prepared by:
Raymond E. Bornhoft
Bornhoft Law Firm, PLLC
5 N. West Avenue
Fayetteville, AR  72701
Ph#(479) 587-8990
Fax#(479) 443-3765
email: ray.bornhoft@sbcglobal.net

(Page 82 of 130)

# THE BARBARA JEAN BROWN
# TRUST OF MARCH 9, 1998.

## TABLE OF CONTENTS

PART ONE:  DEFINITIONS
- 1.1.   Trustee.
- 1.2.   Husband.
- 1.3.   Children and Descendants.
- 1.4.   Per Stirpes.
- 1.5.   Trust Property.

PART TWO:  OPERATION OF TRUST DURING MY LIFETIME
- 2.1.   Disposition of Income and Principal.
- 2.2.   Amendment and Revocation.
- 2.3.   Gifts.
- 2.4.   Use of Personal Residence
- 2.5.   Early Disposition of Personal Property.
- 2.6.   Death of Insured After Revocation But Before Change of Beneficiary.

PART THREE:  OPERATION OF TRUST ON MY DEATH
- 3.1.   Disposition of Tangible Personal Property upon Death of Grantor
- 3.2.   Specific Bequest Upon Death of Grantor.
- 3.3.   Division into Shares Upon Death of Grantor.
- 3.4.   Distribution of Shares.
- 3.5.   Deferred Distributions.
- 3.6.   Spendthrift Clause.
- 3.7.   Distribution in Absence of Descendants

PART FOUR:  TRUSTEE'S POWERS AND AUTHORITY
- 4.1.   Fiduciary Powers.
- 4.2.   Payment of Taxes and Debts.
- 4.3.   Application of Trust Property.
- 4.3.   Accounting.
- 4.4.   Purchases from and Loans to My Estate.
- 4.5.   Applicable Law.
- 4.6.   Perpetuities Clause.

PART FIVE:  INSURANCE PROVISIONS
- 5.1.   Premiums.
- 5.2.   Rights Reserved.
- 5.3.   Proceeds.
- 5.4.   Payment by Insurer.

## AMENDMENT AND RESTATEMENT OF
## THE BARBARA JEAN BROWN
## TRUST OF MARCH 9, 1998.

**THIS AMENDMENT AND RESTATEMENT** of The Barbara Jean Brown Trust of March 9, 1998, is made this 8th day of June, 2006, executed by Barbara Jean Brown, hereinafter referred to as Grantor and Trustee.

**WHEREAS**, the Grantor and the Trustee entered into a trust agreement known as The Barbara Jean Brown Trust of March 9, 1998, and

**WHEREAS**, Article Four, paragraph c. of the Trust Agreement provides that "I shall have the absolute right to amend or revoke my trust, in whole or in part, at any time. Any amendment or revocation must be delivered to my Trustee in writing. This right to amend or revoke my trust is personal to me, and may not be exercised by any legal representative or agent acting on my behalf" and

**WHEREAS**, the Trustee has received notice of my intention and desire to amend and restate the Trust Agreement known as The Barbara Jean Brown Trust of March 9, 1998, and the Trustee is agreeable to the amendment and restatement of the Trust Agreement contained herein and the entire Trust Agreement known as The Barbara Jean Brown Trust of March 9, 1998, is amended and restated as follows,

**NOW, THEREFORE, IT IS AGREED:**

**THIS AMENDMENT AND RESTATEMENT OF TRUST DECLARATION** dated the 8th day of June, 2006 is made by Barbara Jean Brown (hereafter called both the "grantor" and the "trustee", as applicable).

## THE BARBARA JEAN BROWN
## TRUST OF MARCH 9, 1998,

I, Barbara Jean Brown, hereby amend and restate The Barbara Jean Brown Trust of March 9, 1998, as set forth on this 8th day of June 2006.

### PART ONE: DEFINITIONS

**1.1.   Trustee.**

**A.** Barbara Jean Brown shall serve as trustee of this trust. Upon the resignation, death or inability of Barbara Jean Brown to continue serving, the co-trustees of this trust shall be my children, Paula Jean Brown and William Herman Brown. Upon the death, resignation or inability of my child, William Herman Brown, the successor co-trustees shall be my children, Paula Jean Brown and Sharon Kay Britton. Upon the death, resignation or inability of my child, Paula Jean Brown, the successor co-trustees shall be my children, William Herman Brown and Sharon Kay Britton. Upon the death, resignation or inability of a successor co-trustee named above, and only one remaining successor co-trustee is able to serve, such co-trustee shall continue serving as the sole trustee. If all of the above named trustees are unable to serve due to death, resignation or inability, a majority in interest of the beneficiaries then entitled to receive income from such separate trust or trusts hereunder may, without liability to any present or future beneficiary of any trust created hereunder, approve the accounts of and give a full and complete release and discharge to any resigned trustee hereunder and upon approval of the accounts of a resigned trustee, shall appoint any bank or trust company having a combined capital and surplus of not less than ten million dollars ($10,000,000.00) wherever located, as successor trustee.  Such persons having the right without the concurrence of any remainderman or other party in interest to determine on behalf of all beneficiaries the propriety of giving any such approval, release and discharge,

2

notwithstanding that their interests may possibly be or become adverse to those of other beneficiaries. Such approval, release and discharge shall have the same effect as a final decree of a court of competent jurisdiction. The legal representative of the Estate, Attorney in Fact, parent or guardian of any beneficiary under disability shall receive notice for and may act on behalf of such beneficiary under this section. The trustees shall be referred to herein collectively as "the trustee."

B. No trustee shall be obligated to furnish a bond or to examine the accounts and actions of any previous trustee, nor shall any trustee be responsible in any way for any acts or omissions of any previous trustee.

C. The determination of an individual trustee's inability to continue serving as the trustee shall be determined by a written certification or certifications of two persons duly licensed to practice medicine, one of the persons being the trustee's personal physician, such writing will provide that each of them has examined the trustee and determined that the trustee is incapable of acting as trustee. A determination of an individual trustee's inability to continue serving, shall be deemed a resignation by the individual trustee as of the date of that determination that the trustee is incapable of acting as trustee.

D. Any person or corporation dealing with any successor trustee may rely solely on its statement of authority without further evidence thereof. The successor trustee's receipt shall be effective to release any person or corporation delivering property to the successor trustee and shall be binding upon every beneficiary hereof.

E. Any trustee of this trust may resign at any time by giving written notice to the Grantor, if living, or, if not to the adult income beneficiaries of this trust, without stating or giving any reason for his, her, or its resignation. Such persons having the right without

3

Case 4:21-cv-00490-O   Document 1-3   Filed 04/01/21   Page 91 of 131   PageID 210

the concurrence of any remainderman or other party in interest to determine on behalf of all beneficiaries the propriety of giving any such approval, release and discharge, notwithstanding that their interests may possibly be or become adverse to those of other beneficiaries. Such approval, release and discharge shall have the same effect as a final decree of a court of competent jurisdiction. The legal representative of the Estate, Attorney in Fact, parent or guardian of any beneficiary under disability shall receive notice for and may act on behalf of such beneficiary under this section. A resignation shall be effective upon acceptance of the trust by the successor trustee. A trustee may resign by giving written notice to the Grantor, if living, or, if not to the adult income beneficiaries of this trust. Upon resignation of the trustee, the vacancy shall be filled by the above named successor trustee. Any person, bank, or trust company entitled to become a successor trustee under the provisions of this Section shall become such a trustee by executing a written affidavit accepting the duties of trusteeship with respect to the original of this instrument and all then effective amendments and restatements to this instrument. After a successor becomes trustee, the trustee who is being succeeded (or, if the trustee being succeeded is an individual who is deceased or incompetent, his or her personal representative, conservator, or guardian, as the case may be) shall promptly transfer and deliver to the successor trustee all trust property then in his, her, or its possession or control.

    **1.2.**   **Marital Status.** My husband is Herman Brown. Both my husband and I are United States citizens

    **1.3.**   **Children and Descendants.** I have four children, namely: Sharon Kay Britton, William Herman Brown, Judy Diann Brown and Paula Jean Brown. My child,

(Page 92 of 130)

William Herman Brown, has two children, each child being my grandchild, namely: Robert William Brown and Samantha Jo Brown. All references to "children" or "descendants" shall also include children or descendants born after the date of this trust and persons, and descendants of persons, who have been adopted according to law. A child in gestation who is later born alive shall be regarded as a child in being during the period of gestation in determining whether any person has died without leaving descendants surviving him or her and in determining, on the termination of any trust hereunder, whether such child is entitled to share in the disposition of the then remaining principal and undistributed income of such trust. For other purposes, such child's rights shall accrue from the date of his or her birth.

    **1.4.**    **Per Stirpes.**  The term "per stirpes" means in equal shares among my living children and the descendants of any deceased child of mine, the latter taking their parent's share by right of representation.

    **1.5.**    **Trust Property.**  I have transferred to the trustee the assets, which shall be referred to hereinafter as the "trust property" and shall be held as set forth herein. I reserve the right for myself and other persons to increase the trust in the future by:

        **(1)** Delivering additional property to the trustee,

        **(2)** Having the proceeds of insurance policies made payable to the trustee, or

        **(3)** Making a bequest or devise by Will.

### PART TWO: OPERATION OF TRUST DURING MY LIFETIME

    **2.1.**    **Disposition of Income and Principal.**  During my lifetime, there shall be paid to me or applied for my benefit such amounts out of the income and/or principal of the trust as I direct or as may be necessary for my health, support or general welfare. In the

5

.

event that I am adjudicated to be incompetent or in the event that I am not adjudicated incompetent, but by reason of illness or mental or physical disability, in the opinion of my successor trustee, unable to properly handle my own affairs, then and in that event the trustee may during my lifetime, in addition to the payments of income and principal for my benefit, pay to or apply for the benefit of my husband, such sums from the net income and from the principal of this trust as in its sole discretion shall be necessary or advisable from time to time for the medical care, education, support and maintenance in reasonable comfort of my husband, taking into consideration to the extent the trustee deems advisable, any other income or resources of my husband known to the trustee.

2.2.    **Amendment and Revocation.**   I reserve the right during my lifetime to amend or revoke this trust in whole or in part at any time upon written notice to the trustee. In case of revocation, the trust property shall be conveyed to me.  Upon my death, however, this right of amendment and revocation shall lapse.

2.3.    **Gifts.**   Should any gift be made by me or any trustee hereunder to any person, such gift shall be deemed first made to me as beneficiary and then to the donee, notwithstanding the fact that the property may come directly from the trust.

2.4.    **Use of Personal Residence.**   The trustee shall permit grantor to occupy, rent free, any residence constituting a part of the assets of this trust and shall pay the real estate taxes, maintenance expenses, insurance premiums, and mortgage indebtedness with respect to the residence.

2.5.    **Early Disposition of Personal Property.**   In the event the trustee should determine that the grantor is unable to continue to make use of the tangible personal property held by this trust, due to mental or physical infirmity, after consulting with our

6

Case 4:21-cv-00490-O   Document 1-3   Filed 04/01/21   Page 97 of 131   PageID 216

physician, the trustee may proceed to make distributions of any such tangible personal property to the beneficiaries designated to receive such property following my death under the provisions of this trust agreement. The authority given the trustee under this paragraph is given solely for the purpose of avoiding the expenses necessary to maintain, insure, store and pay taxes on the tangible personal property of grantor which is not likely to be used by grantor during the remainder of her lifetime. The trustee's discretions in this regard shall not be subject to question by a beneficiary or any other person.

2.6.     **Death of Insured After Revocation But Before Change of Beneficiary.** If (1) a life insurance policy or a retirement plan that pays a death benefit is part of the trust estate at the time the trust is revoked in its entirety, or is in the part of the trust estate that is revoked at the time the trust is partially revoked, and (2) the person whose life is insured under the insurance policy or on whose death the death benefit is payable dies after the revocation but before a change of beneficiary of the insurance policy or retirement plan becomes effective with the company or with the trustee of the plan, the proceeds of the policy or plan that are received by the trustee may be paid to the personal representative of the estate of the insured. The receipt of the personal representative shall fully and completely acquit and discharge the trustee from any liability.

## PART THREE: OPERATION OF TRUST ON MY DEATH

3.1.     **Disposition of Tangible Personal Property upon Death of Grantor.** I reserve the right to dispose of tangible personal property by attaching or associating with this trust, subsequent to its execution, a written, dated statement and list signed and in my handwriting, designating the beneficiaries of items of tangible personal property. The rest, residue and remainder of my tangible personal property shall be distributed to my husband,

Herman Brown, if living. If my husband, Herman Brown, is not then living, the rest, residue and remainder shall be distributed amongst my then living children and grandchildren as they may agree. If they fail to agree within ninety (90) days of the my death, then this property shall be distributed by a selection process to be established and supervised by the trustee. All of my children and grandchildren wishing to participate in the selection process shall draw a number to determine the order in which each shall select. The selection process shall then begin and shall continue in a series of rounds until all items desired to be selected have been selected. In the selection process, sets of items shall be kept together as best as possible with the trustee having the sole decision as to what constitutes sets of items. If there are items remaining after such selection process, the trustee shall dispose of such items in the manner the trustee deems best, which may include sale, gift to charity or discarding. The proceeds of any sale shall be shall be distributed equally amongst my then living children and grandchildren.

### 3.2. Specific Bequests Upon Death of Grantor.

A.    My trustee shall distribute free of trust, all rights, title and interest as a Licensee with Sonic Industries, Inc. equally to my children, William Herman Brown and Paula Jean Brown. If William Herman Brown or Paula Jean Brown is not then living, my trustee shall distribute free of trust, all rights, title and interest as a Licensee with Sonic Industries, Inc. to my child then living named above.

B.    My trustee shall distribute free of trust, six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and thirteen and three quarters (13.75) shares of R M B Enterprises, Inc. an Arkansas Corporation to my child, William Herman Brown, if living.

C.    My trustee shall distribute free of trust, six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and five and one half (5.50) shares of R M B Enterprises, Inc. an Arkansas Corporation to my daughter-in-law, Roberta Brown, if living and married to William Herman Brown at the time of my death. If my daughter-in-law, Roberta Brown, is living and has not remarried after my child's death my trustee shall distribute free of trust six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and five and one half (5.50) shares of R M B Enterprises, Inc. an Arkansas Corporation to Roberta Brown. If Roberta Brown is not living, or not married to William Herman Brown at the time of my death, or has remarried after my child William Herman Brown's death, my trustee shall distribute free of trust six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and five and one half (5.50) shares of R M B Enterprises, Inc. an Arkansas Corporation to descendants of my child, William Herman Brown, per stirpes.

D.    My trustee shall distribute free of trust, eleven (11) shares of Caddo Enterprises, Inc., an Arkansas Corporation and thirteen and three quarters (13.75) shares of R M B Enterprises, Inc. an Arkansas Corporation to my child, Paula Jean Brown, if living.

E.    My trustee shall distribute free of trust, six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and nine (9) shares of R M B Enterprises, Inc. an Arkansas Corporation to my child. Sharon Kay Britton, if living.

F.    My trustee shall distribute free of trust, six (6) shares of Caddo Enterprises, Inc., an Arkansas Corporation and nine (9) shares of R M B Enterprises, Inc. an Arkansas Corporation to my child, Judy Diann Brown, if living.

9

**3.3.** **Division into Shares Upon Death of Grantor.** Upon my death the remainder of the trust, property shall be divided into as many equal shares, as there are then living children of mine and deceased children of mine who have then living issue. Each then living child of mine shall be the beneficiary of one share, and the then living descendants, per stirpes, of each deceased child of mine shall be the beneficiary of one share.

**3.4.** **Distribution of Shares.** The trustee shall distribute each share to the respective beneficiary (or beneficiaries, per stirpes) as soon as practicable.

**3.5.** **Deferred Distribution.** Subject to the Perpetuities Clause herein, whenever any trust property would otherwise vest in absolute ownership in a person other than a child of mine, the trustee shall:

**A.** Hold the property, or any part thereof, in a separate trust for the benefit of such person until he or she attains the Required Age (as defined below).

**B.** Pay or apply all or any part of the net income and/or the principal of the trust to or for the care, maintenance, support, or education of such minor. Undistributed income shall be added to principal at least annually.

**C.** Distribute to such minor the principal, together with all accumulated income, when he or she shall attain the Required Age.

If such person dies before the distribution of the trust property, the balance shall be distributed in the following manner:

**1.** The share or portion thereof shall be paid to any one or more of such person's creditors and in such proportions as such person shall appoint by specific reference hereto in his or her valid Last Will and Testament, except that the amount of trust property

(Page 104 of 130)

subject to this general power of appointment shall be limited to the excess of the undistributed property over the amount thereof which is subject to unused GST exemption provided by §2631(a) of the Internal Revenue Code, as amended, determined immediately before such person's death.

        2.  Any portion of the share not distributed under the immediately preceding subparagraph 1 shall be distributed to such person's descendants, per stirpes, or if none, to his or her brothers and sisters or their descendants by right of representation; or if such deceased beneficiary has no surviving brothers or sisters or descendants of either, then to my then living descendants, per stirpes, except that any such distribution to a person for whom property is being held in trust hereunder shall be made by adding the distribution to such person's trust share.

The term "Required Age" shall mean thirty (30) years of age if the person is living at the date when this trust becomes irrevocable and shall mean twenty-one (21) years of age if the person was born after this trust became irrevocable.

    **3.6.**   **Spendthrift Clause.**  To the extent permitted by law, no beneficiary of the trust other than the grantor shall have the power to dispose of or to charge by way of anticipation any interest given, and all sums payable to any beneficiary shall be free and clear of his or her debts, contracts, disposition, pledges and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof.

    **3.7.**   **Distribution in Absence of Descendants.**  If there are no living descendants of mine at the time of termination of the trusts herein all of the property contained in the trusts shall be distributed to my heirs determined as if I had died intestate as an Arkansas resident on the date of distribution.

Case 4:21-cv-00490-O   Document 1-3   Filed 04/01/21   Page 107 of 131   PageID 226

## PART FOUR:  TRUSTEE'S POWERS AND AUTHORITY

**4.1.**    **Fiduciary Powers.**   Except as otherwise expressly required herein, the trustee shall have the powers and discretions set forth in the Arkansas Trust Code, as amended, with respect to each trust created hereunder, in extension and not by way of limitation of the powers, authority and discretion vested by law, all of which may be exercised without authorization by any court.  Further, the trustee shall have the power to make gifts of cash or property, or the income therefrom, in trust or outright, to family members, spouses of family members and contributions to charitable organizations including the creation of charitable pledges, and the completion of any charitable pledges I may have made; to make payments for the college and post-graduate tuition or medical care of any descendant of mine, and to pay any transfer taxes that may arise by reason of such gifts; provided, however, that any gifts my trustee may make to or for the benefit of such trustee, either directly or indirectly, shall be limited to gifts that qualify for the federal gift tax annual exclusion amount in any one calendar year, and this annual right shall be non-cumulative and shall lapse at the end of each calendar year.  Any gifts made under the foregoing power to descendants of mine shall be made equally to all of the descendants of the same generation and class.  For example, and not by way of limitation, if a gift is made to one grandchild of mine, a similar gift of the same amount is to be made to each then living grandchild of mine.  During my lifetime, I hereby waive all trustee duties and provisions contained within the Arkansas Trust Code requiring the trustee to provide Qualified Beneficiaries with Accountings of this trust or any trusts contained herein or to provide Notice to Qualified Beneficiaries of this trust or any trusts contained herein.

**4.2.**   **Payment of Taxes and Debts.**

**A.**  In the trustee's discretion, there may be paid out of trust assets the following items which would otherwise be payable out of my probate estate:

    **(1)**   Taxes.

    **(2)**   Funeral, last illness, and administration expenses.

    **(3)**   Debts and other proper charges against a probate estate.

**4.3.**   **Application of Trust Property.**  No person dealing with the trustee shall be obligated to see to the application of any money, or any other property paid or delivered to the trustee, or to inquire into the trustee's authority or power or into the expedience or propriety of any transaction consummated by the trustee.

**4.4.**   **Accounting.**  After my death, the trustee shall render at least annually to each adult beneficiary of any trust created hereunder who received (or in the trustee's discretion might have received) trust income or principal during the year a statement showing in detail receipts, disbursements, and distributions of both principal and income, but only if the adult beneficiary delivers a written request to the trustee for such a statement.

**4.5.**   **Purchases from and Loans to My Estate.**  The trustee is authorized (i) to purchase at a fair price assets of my estate and to retain such assets as an investment, and (ii) to make loans out of the trust estate to my personal representatives on such terms as the trustee deems advisable.

**4.6.**   **Applicable Law.**  This trust shall be construed under the laws of the State of Arkansas.

**4.7.**   **Perpetuities Clause.**  Notwithstanding any provision herein to the contrary, every trust created herein (or share or portion thereof) shall terminate in any event within

twenty-one (21) years after the death of the last survivor among a group composed of myself, my children and all of my descendants who may be living at such time as this instrument may become irrevocable, whether by my death, amendment or otherwise. Upon such termination, each beneficiary for whom any property hereunder is primarily held in trust shall receive such respective property outright free of trust.

**4.8.   S Corporation Stock**   If any shares of a corporation which is an S Corporation is allocated to a trust created by this trust declaration, the trustee is authorized to establish a separate trust for which there will be a sole Current Income Beneficiary as that phrase is used in §1361(d) of the Code if such action is desirable to continue the S Corporation status of the corporation and if the trustee believes in good faith that the election provided by §1361(d)(2) of the Code will be effectively exercised by the Current Income Beneficiary (or his or her legal representative).   Each such separate trust shall be designated by the name of the S Corporation whose stock is held in trust with the words "Trust S". Each Trust S shall be administered in accordance with the same provisions contained in the trust to which the stock originally was allocated; provided, however, to the extent inconsistent with the provisions of that original trust, the provisions of this Section 4.8. shall control the administration of each Trust S created.

**(1) Current Income Beneficiary.**   Each Trust S shall have only one Current Income Beneficiary.   The Current Income Beneficiary of a Trust S shall be the person who then has a present right to received income distributions from the trust to which the S Corporation stock originally was allocated by other provisions of this trust declaration. If more than one person has a present right to receive income distributions from the trust to which the S Corporation stock originally was allocated, the trustee shall determine and

14

(Page 112 of 130)

select the Current Income Beneficiary in the following order: Grantor's issue taken on a per stirpes basis. In addition, if more than one person has a present right to receive income distributions from the trust to which the S Corporation stock originally was allocated, the trustee may establish a separate trust for each such person if such action is consistent with the standards of the preceding sentence.

**(2) Distributions.**

**(a) Income.** The trustee of each Trust S shall distribute all of the net income to the Current Income Beneficiary at least annually.

**(b) Principal.** Distributions of principal shall be governed by the terms of the trust to which the S Corporation stock originally was allocated, but for so long as the trust is a Trust S within the scope of this Section 4.8., principal distributions may be made only to the Current Income Beneficiary. In any event, however, the trustee, in its sole discretion, may make distributions to the Current Income Beneficiary of such amounts of principal as the trustee deems appropriate to provide for taxes on income or capital gain taxed to, but not distributed to, the Current Income Beneficiary.

**(3) Termination.**

**(a) Beneficiary Living.** If any Trust S is terminated during the lifetime of the Current Income Beneficiary, all of the then remaining principal and undistributed income of that trust shall be distributed to the Current Income Beneficiary. Notwithstanding the foregoing sentence, if at any time after a Trust S is established, the trust ceases to be a Qualified Subchapter S Trust, but is not otherwise terminated, then the assets contained in the trust shall be held as a part of the trust to which such S Corporation stock originally was allocated, to be administered as a part thereof.

**(b) Beneficiary Deceased.** Unless distributed earlier pursuant to another provision of this trust declaration, each Trust S shall terminate on the death of the Current Income Beneficiary whose name designates such trust, at which time the trustee shall administer or distribute any property in that Trust S in accordance with the provisions that would have been applicable to the administration of such property if the Trust S had never been created. If, upon application of those provisions that would have been applicable if the Trust S had never been created, (i) S Corporation stock would remain in trust under the terms of this trust declaration, (ii) the trustee determines to continue the S Corporation status of the corporation, and (iii) if the trustee believes in good faith that the election provided by §1361(d)(2) of the Code will be effectively exercised by the then Current Income Beneficiary (or his or her legal representative), then the stock of each such S Corporation shall be held in a separate trust to be administered in accordance with this Section 4.8., with such electing beneficiary becoming the Current Income Beneficiary of such trust.

**S Corporation.** Wherever used in this trust declaration, the term "S Corporation" shall mean a corporation, which is an S corporation within the meaning of §1361(a) of the Code.

## PART FIVE: INSURANCE PROVISIONS

**5.1.** **Premiums.** The Trustee is not obligated to pay any premiums or assessments upon any policies of insurance held under this agreement or to keep informed with respect to the payment thereof. The Trustee's responsibility in reference thereto during our lifetime shall be the safekeeping of such policies.

Case 4:21-cv-00490-O   Document 1-3   Filed 04/01/21   Page 117 of 131   PageID 236

**5.2.** __Rights Reserved.__  I reserve the right by individual act alone, without the consent or approval of the Trustee to sell, assign or hypothecate any policies of insurance upon my life made payable to the Trustee hereunder, to exercise any option or privilege granted by such policies, including, but without limitation of the generality of the foregoing, the right to change the beneficiary of such policies, and to receive all payments, dividends, surrender values, benefits or privileges of any kind which may accrue on account of such policies during my lifetime.  Furthermore, the Trustee agrees to deliver to me on my written request any such policies deposited with the Trustee hereunder.

**5.3.** __Proceeds.__  The Trustee's best efforts shall be used to collect the proceeds of any policies of insurance which are made payable to the Trustee hereunder when any of such policies shall, to the knowledge of the Trustee, have matured, but the Trustee shall not be required to take legal proceedings until indemnified.

**5.4.** __Payment by Insurer.__  Payment to the Trustee hereunder by any insurer under any insurance policy subject to this trust and receipt therefore by the then Trustee shall constitute a full discharge of such insurer as to all liability and responsibility with regard to such policy; and no insurer need inquire into or take notice of the application of any payment so made to the Trustee hereunder.

**IN WITNESS WHEREOF**, I have executed this agreement on the 8th day of June, 2006.

GRANTOR:

**Barbara Jean Brown**

TRUSTEE:

**Barbara Jean Brown**

## ACKNOWLEDGMENT

**State of Arkansas** )

)ss..

**County of Hempstead** )

Before me, the undersigned, a Notary Public duly commissioned and acting in and for the said County and State, on this day personally appeared Barbara Jean Brown, known to me to be the person whose name is subscribed to the foregoing instrument, and stated that she executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this 8th day of June, 2006.

_____
Notary Public

My Commission Expires:

6/29/2015
(S E A L)

DONNA G. GARLINGTON
Hempstead County
My Commission Expires
June 29, 2015

(Page 122 of 130)



**NEW YORK LIFE**
Annuities

## Inherited Individual Retirement Annuity/Account (IRA) Information/Transfer Form

Unless otherwise indicated, this information applies to both traditional and Roth Inherited IRAs.

This form, along with a policy application, an Inherited IRA Information Disclosure Statement, and if required, a state replacement form, must be used to establish an Inherited IRA and to either transfer funds from another financial institution to New York Life Insurance and Annuity Corporation (NYLIAC), or to transfer funds from a traditional IRA issued by NYLIAC.

(Note: *If there are any undistributed Required Minimum Distributions ("RMDs") with respect to the transferring traditional IRA or Eligible Retirement Plan\* for the year in which the transfer occurs or any prior year, such amounts are not eligible to be transferred into this Inherited traditional IRA. You should consult your tax advisor and request such RMD information from the transferring IRA provider or plan administrator.*)

\*An Eligible Retirement Plan includes a section 401(a) qualified plan, a section 403(b) tax sheltered annuity, or an eligible governmental section 457 plan.

**The transaction is:**

A. _____ A direct transfer of funds by a beneficiary (including a trust\*\*) from a decedent's traditional IRA or Eligible Retirement Plan to establish a NYLIAC Inherited IRA. *(Note: If the decedent died before the date on which distributions were required to begin from the IRA or Eligible Retirement Plan, the Inherited IRA must be established by, and the first RMD is due by, December 31st of the year following the year of death.)*

B. _____ A direct transfer of funds from an existing Inherited IRA to establish a NYLIAC Inherited IRA.

C. _____ A direct transfer of funds by a beneficiary (including a trust\*\*) from a decedent's Roth IRA to establish a NYLIAC Inherited Roth IRA.

If RMDs under the NYLIAC Inherited IRA policy are required to be determined based on another person's life expectancy, please complete Section III.B. This may be required if there are multiple beneficiaries and separate accounts have not been timely established, or if the beneficiary is a qualifying trust. For more information, *see the Inherited IRA Information Disclosure Statement (Q&A 9 for immediate annuities and Q&As 12 and 13 for deferred annuities).*

\*\*<u>Trust Beneficiaries</u>: A trust named as a beneficiary under an IRA or Eligible Retirement Plan can establish an Inherited IRA if certain requirements are satisfied. For more information, *see the Inherited IRA Information Disclosure Statement, (Q&A 9 for immediate annuities and Q&A 13 for deferred annuities).*

**Note:** To receive your RMD, please complete a NYLIAC withdrawal form.

### I. Present Financial Institution Information

Name of Financial Institution _____

Mailing Street Address _____

City, State, Zip Code _____

Phone Number _____

### II. Required information about the Decedent's IRA or Eligible Retirement Plan

Name _____

Date of death _____     Date of birth _____

IRA contract/account number(s) _____

_____

Inherited IRA contract/account number (if applicable) _____

For Inherited Roth IRA, give year in which Deceased Owner made his/her first contribution to the Roth IRA: _____

Eligible Retirement Plan account/contract number(s) (if applicable) _____

_____

Variable products are distributed by NYLIFE Distributors LLC, Member FINRA/SIPC and offered through properly licensed registered representatives.
51 Madison Avenue, New York, NY 10010

## III. Required information about the Applicant/Annuitant for the Inherited IRA

A.   Name _____

Date of Birth _____   Taxpayer I.D. Number _____

B.   Date of Birth* used to determine RMDs _____

*Please provide this information only if RMDs are required to be based on another beneficiary's age. *See the Inherited IRA Information Disclosure Statement (Q&A 9 for immediate annuities and Q&As 12 & 13 for deferred annuities).*

## IV. TRANSFER REQUEST

I hereby request the transfer of the funds in the above contract(s)/account(s) to NYLIAC. (Check appropriate box).

❑ Full Transfer   ❑ Partial Transfer $_____

I, the undersigned, request that you directly transfer the amount specified above to NYLIAC. Please do not withhold any amount for taxes from the funds. It is my intention that this redemption and payment shall not constitute either actual or constructive receipt of income for federal income tax purposes, and would therefore qualify as a direct transfer of assets. There will be no initial sales charge on the annuity purchased, but the deferred annuity contracts may contain a surrender charge. I request that my name does not appear as a joint payee on the check nor shall any endorsement thereon be necessary for transfer or deposit. I request that the funds be made payable to NYLIAC. I hereby certify that I have satisfied all applicable requirements under the Internal Revenue Code ("IRC") and related Treasury Regulations for establishing and transferring funds into this Inherited IRA policy, and that, if this transfer is being made from an Eligible Retirement Plan, such Eligible Retirement Plan permits direct rollovers of distributions by nonspouse beneficiaries. I understand that I am solely responsible for the tax consequences of this transfer, including but not limited to, compliance with the required minimum distribution rules applicable to Inherited IRAs. I further understand that NYLIAC, its agents and employees may not provide tax or legal advice.


_____       _____
Applicant/Annuitant Signature                                              Date


## Acceptance of Transfer

As the issuer of an Inherited Individual Retirement Annuity as described in IRC Section 408(b), or IRC Section 408A(b), as applicable, NYLIAC agrees to accept the funds. When we receive the funds, we will issue the new policy provided that the amount and the proposed annuitant's age meet our policy issuance rules. If not, we will return the funds to the financial institution.

*Thomas Sorg*

_____
Thomas Sorg – Corporate Vice President
Authorized NYLIAC/NYL Officer


## To the Transferring Financial Institution

As the issuer, trustee, or custodian of the current policy or account, you are authorized and directed to transfer the amount specified above. **Please make check payable to:**


**NYLIAC for the benefit of** _____ ,


**beneficiary of** _____ .

Please send the check to the address provided in the cover letter.

Variable products are distributed by NYLIFE Distributors LLC, Member FINRA/SIPC and offered through properly licensed registered representatives.
51 Madison Avenue, New York, NY 10010



Annuities

## Qualified Transfer/Direct Rollover

This form along with an application, proper disclosure documents, and state replacement forms, if applicable, may be used to process an IRA transfer, Roth IRA transfer, SIMPLE IRA transfer, or direct rollover of tax-qualified funds into a New York Life Insurance and Annuity Corporation (NYLIAC) annuity. For Inherited IRAs or Inherited Roth IRAs, use the Inherited Individual Retirement Annuity/Account (IRA) Information/Transfer Form 18752.

Annuity transfers and rollovers can have significant effects on the taxability and legal status of the amount involved. In particular, some previously issued section 403(b) Tax Sheltered Annuity contracts may be subject to special relief from new income tax regulations, which might be lost if the contract is transferred after September 24, 2007. Owners should consult with their own tax or legal advisors prior to submitting this form.

---

This transaction qualifies as a: (✓ the appropriate box)
☐ **IRA Transfer**   ☐ **Pension Direct Rollover into an IRA**   ☐ **403(b) Direct Rollover into an IRA**
☐ **457 Direct Rollover into an IRA**   ☐ **401(k) Direct Rollover into an IRA**
☐ **403(b) Transfer**  Note: Requires an information sharing agreement between NYLIAC and the employer sponsoring the 403(b) plan to which the contract relates and/or other documentation to aid compliance with tax and/or ERISA rules.
   **Note – The TSA Annuity Group Form number 18600 is required. Employer signature is also required – see below.**

☐ **SIMPLE IRA Transfer**
   First date that employer contributions were deposited into any SIMPLE IRA on your behalf: _____

☐ **Roth IRA Transfer**
   Please Note: Transfers to a Roth IRA are allowed only from another Roth IRA, not from other tax-qualified accounts, such as a traditional IRA or a Simplified Employee Pension (SEP) IRA. Other forms may be required when applying for a Roth IRA. If this transfer is from another Financial Institution's Roth IRA to a Roth IRA funded by a NYLIAC annuity, please check (✓) one:
   ☐ **Contributory Roth IRA Transfer**       **Year of Initial Contribution:** _____
   ☐ **Conversion Roth IRA Transfer**        **Year of Original Conversion:** _____
   Roth IRA Cost Basis $ _____

---

The proceeds for the above transaction will be applied to: (✓ the appropriate box)
☐ **New Annuity Policy**      ☐ **Existing Annuity Policy Number** _____

---

**For Lifetime Income Annuities and Fixed Period Annuities only:** The Internal Revenue Code provides that a Roth IRA is not subject to the required minimum distribution ("RMD") rules during the life of the Roth IRA owner, but is subject to the RMD rules after the owner/annuitant's death. Accordingly, NYLIAC's Lifetime Income Annuity or Fixed Period Annuity, issued as a Roth IRA, provides that any amounts payable to a beneficiary after the owner/annuitant's death must be made in accordance with the RMD rules, notwithstanding any inconsistent provision in the contract. This may affect the amount otherwise payable to a beneficiary.

If, at the time of the owner/annuitant's death, the remaining guaranteed period under a Life with Period Certain (Period Certain for a Fixed Period Annuity) is longer than the beneficiary's life expectancy (determined under the IRS Single Life Table), NYLIAC will commute all of the future guaranteed payments. This commuted value will be calculated as specified in the policy.

Beneficiary Name _____ Date of Birth _____ (Used for RMD testing)
MM/DD/YYYY

Beneficiary Name _____ Date of Birth _____ (Used for RMD testing)
MM/DD/YYYY

**Policy owner acknowledgement required:** *(Please check the box and initial)*
☐ _____ *(owner initial)* I acknowledge that: (1) the first contribution to a Roth IRA established in my name was made at least five (5) calendar years prior to the calendar year in which I will begin to receive income payments under this policy, and (2) I have or will have attained age 59 ½ prior to the date that income payments begin under this policy.

---

**Present Financial Institution Information**   ☐ **Annuity** ☐ **Mutual Fund** ☐ **Bank/Credit Union Account** ☐ **Other**

| Name of Financial Institution | Policy/Account Owner |
| --- | --- |
| Mailing Address | Annuitant |
| City          State          Zip Code | Current Policy/Contract Number(s) |
| Phone Number | |

I hereby request the transfer of the policy/contract number(s) listed above to NYLIAC (✓ the appropriate box).

☐ **Full Transfer/Liquidation**

☐ **Partial Transfer/Liquidation $**_____ **/# of shares** _____

☐ **All funds in my policy/contract(s)/account(s) which are not subject to surrender or back-end sales charges.**

☐ **Transfer the funds immediately**

☐ **Transfer the funds upon maturity: Date** _____

The current policy/contract is: (✓ the appropriate box).   ☐ **enclosed**   ☐ **lost or destroyed**

**I certify that if the policy/contract is lost or destroyed, it has not been assigned or pledged as collateral.**

I, the undersigned Owner of the above named contract/account(s), request that you directly transfer or liquidate the amount specified above to NYLIAC. Please do not withhold any amount for taxes from the proceeds. It is my intention that this redemption and payment shall not constitute either actual or constructive receipt of income for federal income tax purposes, and would therefore qualify as a transfer/rollover of tax-qualified assets under applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"). I am aware that there may be a surrender charge/early withdrawal fee on the annuity/account I surrender/liquidate. There will be no initial sales charge on the annuity purchased, but the deferred annuity contracts may contain a surrender charge. I request that my name not appear as a joint payee on the check nor shall any endorsement thereon be necessary for transfer or deposit. I request that the check be made payable to New York Life Insurance and Annuity Corporation, for my benefit. I certify that (i) I have taken any necessary Required Minimum Distributions prior to the transfer of these funds and (ii) this transfer will satisfy applicable Code requirements for the requested tax free transfers/rollovers (as indicated above) under applicable Code requirements.

_____     _____
Owner's Signature                                                           Date

Signature(s) Guaranteed
for mutual fund transfers:


(Stamp and Signature)


**Complete for 403(b) Transfers:**

This transfer is for a Non-Erisa plan and proceeds do not contain employer contributions.

Either the Employer or the Third Party Administrator must sign:

On Behalf of the Employer, I approve the creation or the addition of new group members pursuant to the terms of the plan.

Employer Name _____

Signature _____ Date _____

Print Name _____ Title _____

Is a Third Party Administrator (TPA) being utilized for this plan? ☐ Yes ☐ No      (If so, complete information below)

TPA Name _____

TPA Address_____

Plan Administrator Signature _____ Date _____

Print Name _____ Title _____

**Acceptance of Transfer**

As the issuer of an Individual Retirement Annuity, as defined in Section 408(b) of the Internal Revenue Code, a Roth IRA as defined in Section 408A(b) of the Code, a SIMPLE IRA as defined in Section 408(p) of the Code, or a Tax Sheltered Annuity, as defined in Section 403(b) of the Code, NYLIAC agrees to accept the funds. When we receive the check, we will (a) issue the new policy, provided that the amount and the proposed annuitant's age meet our policy issuance rules or (b) apply the proceeds to the above numbered policy, provided that the amount meets our additional premium rules. If not, we will return the current policy proceeds to the Financial Institution.

_____     _____
Thomas C. Sorg – Corporate Vice President                          Date
Authorized NYLIAC Officer

**To the Transferring Financial Institution**

As the issuer, trustee, or custodian of the current policy or account, you are authorized and directed to transfer the amount specified above. Please make check payable to New York Life Insurance and Annuity Corporation **for the benefit of the owner. Please reference the new policy number on the check.**



Annuities

## Certificate of Deposit/Mutual Fund Redemption and Transfer Form

**Dear Financial Institution:**

This form certifies that New York Life Insurance and Annuity Corporation (NYLIAC)/New York Life Insurance Company (NYL) has received or will receive an annuity application from the policyowner for a **"non tax-qualified"** plan in accordance with IRS regulations.

We are prepared to accept the transfer of funds from the below referenced account(s) in accordance with the instructions from the policyowner.

Please make your check payable to NYLIAC/NYL for the benefit of the policyowner.

**1. Certificate of Deposit Transfer**
Name and Address
of Present Financial Institution _____

Certificate Owner(s) _____

☐ Liquidate 100% of Certificate No. _____ on maturity date _____
Liquidate 100% of Certificate No. _____ on maturity date _____

☐ Liquidate $ _____ from Certificate No. _____ on maturity date _____
Liquidate $ _____ from Certificate No. _____ on maturity date _____

**2. Mutual Fund Redemption and Transfer**
Name and Address of       *EDWARD JONES*
Mutual Fund Company    *201 PROGRESS PKWY, MARYLAND HEIGHTS, MO 63043*

Account Owner(s) *BARBARA JEAN BROWN LIVING TRUST*

☑ Redeem *100 % /ALL* shares of Account No. ▮▮▮▮▮▮▮▮▮▮ _____
Redeem _____ shares of Account No. _____

☐ Redeem $ _____ from Account No. _____
Redeem $ _____ from Account No. _____

**I understand that:**
1. There may be a surrender charge or early withdrawal fee on the account which I am liquidating.
2. There will be no initial sales charge on the annuity purchased but the contracts contain a surrender charge.
3. I may incur capital gains on any profit from the mutual fund liquidation, thus reducing my invested capital to the extent of any applicable taxes.
4. As a result of the exchange, all earnings will accrue on a tax-deferred basis until such time that I access the account. If I am under 59½, I may incur an additional 10% IRS imposed penalty on any earnings taken in a distribution.
5. The annuity applied for is not backed by any bank or insured by the FDIC.

**AUTHORIZATION**
I/We hereby name NYLIAC/NYL, through its duly authorized officers, as lawful agent and attorney-in-fact for me/us for the purpose of transferring the above referenced funds to NYLIAC/NYL. Once transferred, these funds will be applied to an annuity policy issued to me/us. Revocation or modification of this authorization is possible only by written notice signed by me/us. Such notice must be received by NYLIAC/NYL and the appropriate company prior to the maturity date or redemption date in order to effectively revoke or modify this authorization.

**Apply the proceeds to (complete one):** ☐ A New Policy   ☐ Existing Policy Number _____

_____        Date _____
Signature of Owner

_____        Date _____
Signature of Joint Owner

Signature(s) Guaranteed
(for mutual fund transfers)
                              (Stamp and Signature)

**ACCEPTANCE**
**NYLIAC/NYL will accept any and all funds that discharge the obligation listed above.**

*Thomas Sorg*
_____
Thomas Sorg – Corporate Vice President
Authorized NYLIAC/NYL Officer

18520F (9/03)

**THIS PAGE INTENTIONALLY LEFT BLANK**

 **ORIGINAL**

Annuities

| **Certificate of Deposit/Mutual Fund Redemption and Transfer Form** |

**Attention Policyowner: Before completing this form, you should contact the present financial institution to determine if they have any special requirements/paperwork for liquidation.**

**Dear Financial Institution:**

The certificate/account owner(s) identified below (the "Policyowner(s)") have authorized a transfer of funds to New York Life Insurance and Annuity Corporation (NYLIAC) for the purpose of paying a premium for a **"non-tax-qualified"** annuity by NYLIAC. NYLIAC is prepared to accept the transfer of funds from the below referenced certificate(s)/account(s) in accordance with the instructions from the Policyowner(s).

Please make your check payable to NYLIAC for the benefit of the Policyowner(s).

---

**1. Certificate of Deposit Transfer**
Name and Address
of Present Financial Institution _____

Certificate Owner(s) _____

☐ Liquidate 100% of Certificate No. _____ on maturity date _____
   Liquidate 100% of Certificate No. _____ on maturity date _____

☐ Liquidate $ _____ from Certificate No. _____ on maturity date _____
   Liquidate $ _____ from Certificate No. _____ on maturity date _____

---

**2. Mutual Fund Redemption and Transfer**
Name and Address of        *EDWARD JONES*
Mutual Fund Company        *201 PROGRESS PKWY, MARYLAND HEIGHTS, MO. 63043*

Account Owner(s) *BARBARA JEAN BROWN LIVING TRUST*

☑ Redeem *100% / ALL* shares of Account No. ███████████████
☐ Redeem _____ shares of Account No. _____

☐ Redeem $ _____ from Account No. _____
   Redeem $ _____ from Account No. _____

---

**I understand that:**
1. There may be a surrender charge or early withdrawal fee on the account which I am liquidating.
2. There will be no initial sales charge on the annuity purchased but the contracts contain a surrender charge.
3. I may incur capital gains on any profit from the mutual fund liquidation, thus reducing my invested capital to the extent of any applicable taxes.
4. As a result of the exchange, all earnings will accrue on a tax-deferred basis until such time that I access the account. If I am under 59½, I may incur an additional 10% IRS imposed penalty on any earnings taken in a distribution.
5. The annuity applied for is not backed by any bank or insured by the FDIC.

**AUTHORIZATION**
I/We hereby name NYLIAC, through its duly authorized officers, as lawful agent and attorney-in-fact for me/us for the purpose of transferring the above referenced funds to NYLIAC. Once transferred, these funds will be applied to an annuity policy issued to me/us. Revocation or modification of this authorization is possible only by written notice signed by me/us. Such notice must be received by NYLIAC and the appropriate company prior to the maturity date or redemption date in order to effectively revoke or modify this authorization.

Apply the proceeds to (complete one):  ☑ A New Policy      ☐ Existing Policy Number _____

*Barbara J. Brown Trustee*                                Date *9 23 2010*
Signature of Owner

_____                          Date _____
Signature of Joint Owner

| Signature(s) Guaranteed
(for mutual fund transfers)
                          (Stamp and Signature) |

**ACCEPTANCE**
**NYLIAC will accept any and all funds that discharge the obligation listed above.**

*Thomas Sorg*

Thomas Sorg – Corporate Vice President
Authorized NYLIAC Officer

18520F (07/2010)